07 - 2 3 7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Case No. _____ –CIV.( _____0 7 - 2 3 7_____ )

Filed on _____

_____
                                                        )
Pamela Carvel, Executrix, Ancillary Administrator )
        Agnes Carvel Estate, London, England     )
                        Plaintiff                )
                                                 )
v.                                               )
                                                 )
Carvel Corp.                                     )
        a Delaware corporation                   )
                Defendant.                       )
_____)

2007 MAY -2 PM 1: 55

## **COMPLAINT  FOR PAYMENT OF RENT**

Pamela Carvel, appearing *pro se*
Delaware Ancillary Administrator
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax  1 954 524 1909

# TABLE OF CONTENTS

| | |
|---|---|
| COMPLAINT  FOR PAYMENT OF RENT | PAGE 1 |
| FEDERAL JURISDICTION & VENUE | PAGE 2 |
| PARTIES | PAGE 3 |
| BRIEF BACKGROUND | PAGE 4 |
| DEFECTS IN CARVEL CORP. ASSERTIONS | PAGE 8 |
| CONCLUSION | PAGE 11 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Case No. _____ –CIV.(_____)

| | |
|---|---|
| Agnes Carvel Estate, London, England by Pamela Carvel, Executrix, Plaintiff | ) ) ) ) |
| v. | ) ) |
| Carvel Corp. a Delaware corporation Defendant. | ) ) ) ) |

## COMPLAINT FOR PAYMENT OF RENT

Plaintiff Agnes Carvel Estate ("Estate") of London, England by Pamela Carvel, personal representative and Delaware Ancillary Administrator, in the above styled cause sues Defendant Carvel Corp., a Delaware corporation, for unpaid rent and interest thereon under a lease between Carvel Corp.'s wholly owned subsidiary Franchise Stores Realty (Lessee) and Thomas and Agnes Carvel (Lessor), dated April 23, 1987 through April 30, 2007 (A-1). Pamela Carvel is compelled to appear *pro se* after having spent all her disposable resources defending Agnes' against the fraudulent conversion and obstruction of Agnes Carvel's assets. By this

1

lawsuit the Estate seeks an order directing Carvel Corp. to pay the Agnes Carvel Estate the sum of **$550,618.34** for unpaid rent since 2001. The Estate also seeks annual interest on the unpaid balance of **$260,831.70** at the rate of 10.75% (on information and belief the applicable statutory rate).

## FEDERAL JURISDICTION & VENUE

1.     District Court has jurisdiction under 28 *U.S.C.* 1331 for civil actions arising under the Constitution and laws of the United States; and also under 28 U.S.C. 1332 for diversity of citizenship.

2.     District court has subject matter jurisdiction (*28 U.S.C. 1332 (a)(2)* and *(c)(2)*) for matter of an English foreign creditor's claim in excess of $75,000, and between citizens of a State and a foreign state. Carvel Corp. is a citizen of Delaware (*28 U.S.C 1332(c)(1)).*

3.     If the Defendant's default in the payment of rent to Plaintiff is not fully remedied by payment to the Estate, then there exist questions of U.S. Constitutional law including (but not limited to) possible criminal intent and/or conspiracy to defraud; to steal and/or fraudulent convert Agnes Carvel's property; to transport stolen property of across state lines by mail or by wire; and deny Agnes Carvel, her Estate and her fiduciary fundamental, substantive and material rights to equal treatment, due process, and

2

protection from violations of civil rights. (*U.S. Constitutional Amendments* I, V, XIV; 18 *U.S.C.* Sec. 241, 242, 2314, 2315, ch. 95, 96; 42 *U.S.C.* Sec.1983, 1985(3)).

4.      Delaware is the correct venue because the Defendant is a citizen of Delaware and because the possible crimes that defrauded Agnes Carvel also defrauded the Estate's ancillary administration in Delaware and defrauded Delaware creditors and contract obligations owed by Agnes Carvel (12 *Del. C.* 3802(b)).

## PARTIES

5.      Plaintiff, Agnes Carvel Estate by its Delaware Ancillary Administrator Pamela Carvel, it a citizen of the United Kingdom, having a mailing address:  Agnes Carvel Estate, 28 Old Brompton Road, Suite 158, London SW7 3SS England, United Kingdom.   Plaintiff is defined as a foreign citizen (*28 U.S.C. 1332 (c)(2)*).

6.      Defendant, Carvel Corp. was a Delaware corporation at the commencement of the lease and on information and belief remains a Delaware corporation, having a mailing address: Carvel Corp. 175 Capital Blvd., Suite 400, Rocky Hill, CT 06067-3914. On information and belief, Carvel Corp. lawyer is Thomas Spillman, Smith, Gambell & Russell, LLP,

3

Suite 3100, Promenade 11, 1230 Peachtree Street, N.E., Atlanta, Georgia 30309-3592.

7.     There is intentional interference with a business relationship and intentional obstruction of the rights of Agnes Carvel, the Estate, the Estate's Delaware ancillary administration, the Estate's fiduciary Pamela Carvel, and an attempt to prevent the Estate's pursuit of substantial Delaware claims to Agnes' assets, so that strangers may divert and profit. This oppression of the rights, and the ability of Pamela Carvel to perform her fiduciary obligations, acts across state lines and may result in the identification of intentional criminal acts in violation of Federal laws involving additional parities who may be identified by discovery.    The Estate reserves the right to amend this complaint as necessary to include others.

## BRIEF BACKGROUND

8.     Agnes Carvel and her husband Thomas Carvel were owners and operators of the first "Carvel" ice cream store, located in New York.    In 1987, they jointly leased the store premises to Carvel Corp. through its wholly owned leasing subsidiary Franchise Stores Realty, with a subsequent sub-lease to another "Carvel" franchise operator (A-1).

4

9.    Agnes Carvel acquired sole surviving ownership of the property and the lease by the death of her husband Tom on October 21, 1990. After the death of Thomas Carvel and the sale of Carvel Corp. (November 21, 1989), the rent payments by Carvel Corp. were increasingly delinquent.

10.    In 1994, on the advice of her attorneys, Agnes Carvel promised by deed and lease assignment to contribute value of the Carvel store property and its income to Realities (pursuant to the *Delaware Business Trust Act*, 1994) of which Agnes was a beneficial owner. The Estate acknowledges Agnes' continuing obligation to the trust (12 *Del. C.* 3802(b)). The purpose of the trust was protection for Agnes from **personal** threats by her New York adversaries who intended to take Agnes' property and cause Agnes' death from stress.

11.    The purpose was also to preserve Agnes' assets away from predators for the benefit of Agnes, and to protect Pamela who was paying Agnes medical, living and business expenses after Agnes was denied all income from her husband's estate for 8 years. The Carvels wished to protect themselves and their property for the charitable purposes the Carvels' intended.

12.     Upon Agnes' death on August 4, 1998, Agnes had no assets. The Estate had no assets.  Any claims that would be defended or pursued on Agnes' and her estate's behalf had to be financed by cash advances to the Estate from Pamela Carvel as Agnes' executor and personal representative. Agnes' adversaries could have walked away with what they had diverted from Agnes, but Agnes' adversaries' avarice consumed them.  The adversaries sought to devour every possible asset Agnes sought to protect from them.

13.     Agnes' adversaries (who are strangers, not family) obstructed all possible financial resources, thereby violating the Constitutional rights of Agnes, the Estate and Pamela as a fiduciary entitled to equal treatment as all other fiduciaries in the Carvels' estates and trusts.

14.     Agnes and Pamela (a member of the Association of Certified Fraud Examiniers in the U.S. and U.K.) assisted the F.B.I. and New York State Attorney Generals Abrams and Spitzer with investigations into frauds by Agnes' adversaries.   Three convictions for financial felonies resulted, along with the forced ouster of two alleged foundation managers for charity fraud, but not before the duo installed their cronies to continue opposing Agnes by abusing Agnes' restricted gifts intended only for charitable

purposes. Such behavior that is repugnant to public policy was the reason Agnes sough to protect her property in Delaware, away from the New York fraudsters.

15.    Demands on Carvel Corp. to pay rent, to pay rent increases and to make other lease payments were unsatisfactory, failed to gain compliance, or were ignored totally (A-33,85,87).

16.    Carvel Corp. now alleges a third party was paid the rent amounts due Agnes Carvel under the lease (A-34); however, Carvel Corp. refuses to provide proof of such current payments or proof of payment prior to any alleged change. Carvel Corp. stopped paying the correct rent due and then stopped paying entirely in 2001, long before any alleged change in 2003.

17.    On information and belief, Carvel Corp. has not paid the full amount of rent due Agnes Carvel. The Estate does not waive its right to seek complete discovery over the entire term of the lease to determine complete compliance and payment, and to identify intentional interference with the lease contract.

18.    The Estate asserts Agnes Carvel's rights under paragraph 19 and 27 to enforce the terms of the Lease for such defaults:

"19.   No requirements whatsoever of this letting shall be deemed or waived or varied, nor shall the Lessor's acceptance of any payment hereunder with knowledge of any default, or Lessor's failure or delay to take advantage of any default, constitute a waiver of the Lessor's right by virtue thereof or a waiver of any subsequent or continued breach of any requirement of this letting.

and

"27. The parties understand and agree that any and all remedies provided herein for defaults in the Lease are in addition to and not in substitution for any and all remedies available to the respective parties herein at law and equity."

19.     Nothing contained herein constitutes a waiver of any other claims derived from Agnes Carvel's to the ownership of said leased property or ownership of the proceeds of the sale of such property; or waiver of assertions of fraud by the actions in Westchester County Surrogate's Court; or waiver of the monetary damages available to the Estate from a determination of a criminal enterprise and conspiracy to defraud.

## DEFECTS IN CARVEL CORP. ASSERTIONS

20.     The Lease in question belonged to Agnes Carvel as surviving owner outside probate.  It does not comprise any part of the "principal" of Thomas Carvel's estate that Agnes Carvel was intended to inherit, but was wholly denied.

21.     Carvel Corp. alleged (A-34) that an "Agreement" contract decision, dated April 1, 2002 (A-8) by Westchester County Surrogate's

Court in New York, altered Agnes Carvel's control of the Lease contract;

however, the "Agreement" requires Agnes Carvel have unrestricted disposal

of all income for the "Agreement" to be valid and to avoid fraudulent

elections of the marital and QTIP deductions (see Decision pages 4-5; A-

11,12). The "Agreement" draftsman, an alleged estate tax expert, testified:

> "Newman further opined that **the Agreement placed no restriction on the disposition of income and did not prevent either Thomas or Agnes from gifting <u>or otherwise disposing of any or all of their income</u>** [Tr.630]. According to Newman, this was important to preserve the marital deduction for estate tax purposes since the Carvels' wills each provided a marital trust for the survivor. The use of the marital deduction would save the Carvels many millions of dollars of Federal estate taxes." (emphasis added)

22.    The "Agreement" decision, therefore, does not cover rent, i.e.

"income" to Agnes Carvel.    The "Agreement" does not prohibit Agnes

Carvel from disposing of "any or all" of that income during her lifetime or

by the directions created in her lifetime that are memorialized in Agnes'

uncontested Will as probated in London, England.

23.    The value of the property and the lease income are subject to

inclusion in Agnes Carvel's estate for tax purposes. Anyone who holds

Agnes Carvel's property and income to the detriment of Agnes and the

Estate's creditors seeks to fraudulently convert those assets away from the

Estate, away from the Delaware ancillary administration, and away from tax compliance.

24.    The "Agreement" decision demands (page 22; A-29) that pursuant to New York's *Surrogate's Court Procedure Act* 2215(3):

> "3.  If any creditor or person interested has received estate assets in excess of the amount determined on the settlement of the account to be due him the court is authorized to direct in the decree repayment by him of the excess to the fiduciary of the estate or otherwise as justice shall require and the exercise of such power by the court heretofore is confirmed."

25.    Pursuant to the "Agreement" decision, nothing more than the remainder of the "principal" of Agnes Carvel's estate is subject to the "Agreement" contract. Any principal or income distributed to alleged remaindermen that is in excess of a mere remainder amount must be returned to the Estate. The remainder amount cannot be determined until the Estate, including the Delaware ancillary administration, is closed.

26.    The rental sums in question are not contained in or the subject of any judicial accounting before the Westchester Surrogate. Delaware obligations to creditors and contracts take priority of payment from Agnes' assets before any remainder amount may be determined (12 *Del. C.* 2105).

27.    The "Agreement" decision does not relieve Carvel Corp. from payment of rent to the Estate as stated by Carvel Corp.'s lawyer (A-34);

10

however, failure to pay Agnes' income to the Estate, or conversion of Agnes' income by another, creates an intentional breach and voids the "Agreement" contract.

28.    The New York foreign order was not filed as a judgment in Delaware (10 *Del. C.* 4772, 4782).    Additionally, the New York decision was obtained by default against Realities, a Delaware Business Trust, and other Delaware creditors.

29.    The New York decision was obtained by fraud upon the named beneficiaries of Agnes' estate, without jurisdiction over them, without notice to them, and without participation by them or by the Carvel Foundation in Florida, that was created by Agnes Carvel as the named charitable remainder beneficiary of her uncontested Will probated in London, England.  The Will prohibits inheritance by anyone who harmed or litigated against Agnes in her lifetime, such as Agnes' adversaries.

30.    A foreign judgment obtained by default or fraud (among other) is not enforceable in Delaware (10 *Del.C.* 4804; ; 6 *Del. C.* ch. 13).

## CONCLUSION

31.    Enforcement of the demand for payment of rental income owed Agnes Carvel through her Estate is not effected by the New York

11

"Agreement" decision. The Agreement decision requires that Agnes have <u>unrestricted disposal of any and all her income for the Agreement to be valid,</u> and for tax fraud to be avoided. Rent is income.

32.    Carvel Corp. defaulted on the Lease <u>before</u> any other alleged changes took place. If Carvel Corp. withheld Agnes' income, or paid Agnes' income to other parties, fraudulent conversion of Agnes' property occurred.

33.    There exist questions of U.S. Constitutional law including (but not limited to) possible criminal intent and/or conspiracy to defraud; to steal and/or fraudulent convert Agnes Carvel's property; to transportation of stolen property of across state lines by mail or by wire; and deny Agnes Carvel, her Estate and her fiduciary fundamental, substantive and material rights to equal treatment, due process, and protection from violations of civil rights

12

WHEREFORE, the Agnes Carvel Estate seeks an order of this court,

1)    directing Carvel Corp. to pay **$811,450.04** to the Estate for rent and annual interest on the unpaid balance;

2)    for discovery of all documents related to the Lease to ascertain the extent of possible fraud against Agnes Carvel, the Estate and Delaware creditors;

3)    such other and further relief as the court deems appropriate.


Signed this 25 day of April 2007

*Pamela Carvel*

Agnes Carvel Estate
by Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax  1 954 524 1909

13

07 - 237

**ORIGINAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Case No. _____ –CIV.(____ 0 7 - 2 3 7 ____ )

Filed on _____

|   |   |
|---|---|
| Pamela Carvel, Executrix, Ancillary Administrator ) | |
| Agnes Carvel Estate, London, England ) | |
| Plaintiff ) | |
| v. ) | |
| ) | |
| Carvel Corp. ) | |
| a Delaware corporation ) | |
| Defendant. ) | |

2007 MAY -2 PM 1:55

DISTRICT OF DELAWARE

## COMPLAINT FOR PAYMENT OF RENT

Pamela Carvel, appearing *pro se*
Delaware Ancillary Administrator
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax 1 954 524 1909

# APPENDIX

*PRIMELEASE*
*#508*

## LEASE

| | | | |
|---|---|---|---|
| STREET: | 95 S. Central Avenue | COUNTY: | Westchester |
| CITY: | Hartsdale | STATE: | New York |

THIS LEASE made the 23rd day of April, 1987, by and between THOMAS and AGNES CARVEL, Winding Farm Road, Ardsley, New York 10502, hereinafter called the LESSOR and FRANCHISE STORES REALTY CORP. of 201 Saw Mill River Road, Yonkers, New York 10701, hereinafter called the LESSEE.

### W I T N E S S E T H:

WHEREAS, for many years there has been established and presently exists a building occupied and engaged in the retail sale of CARVEL products, under the CARVEL name and trademarks, which has been accepted and known as the original CARVEL STORE, and

WHEREAS, the Lessee herein is desirous of leasing and renting from the Lessor and the Lessor is desirous of letting and renting to the Lessee, the premises hereinafter described for the continued occupancy as a CARVEL STORE, for the sale of CARVEL products and for other uses, under certain terms and conditions as hereinafter set forth.

NOW THEREFORE, in consideration of the mutual terms and conditions contained herein, the parties herein mutually agree as follows:

### PREMISES:

1. In consideration of the rents hereinafter reserved and all of the mutual terms, provisions and conditions contained in the Lease, Lessor hereby leases and demises to the Lessee and Lessee hereby hires, leases and takes from Lessor the following described premises together with building referred to as Carvel Store #508, more particularly described as follows:

All that parcel of land, together with building situated thereon on the westerly side of South Central Avenue, Hartsdale, New York known as 90-95 South Central Avenue, Hartsdale, New York; said site also being referred to as Section 30, Sheet 23, Lots 33 & 34, Block 8231 on the Tax Records of the Town of Greenburgh, in the County of Westchester, State of New York.

### TERM & USE:

2. The term of this Lease shall commence upon the date of execution by both parties and terminate on the 30th day of April, 2007, to be used and occupied for the maintenance and operation of a retail CARVEL STORE for the manufacture and sale of CARVEL products and for any other lawful purpose approved by Lessor.

### RENT:

3. Throughout the entire term of this Lease, Lessee agrees to pay to the Lessor an annual rent in lawful tender of the United States, payable in equal monthly installments in advance on the first day of each month at the office of Lessor, or such other place as the Lessor may designate, as set forth below:

From May 1st, 1987 to April 30th, 1988, the sum of Forty-One Thousand Five Hundred Thirty-One Dollars and 64/100 ($41,531.64) per annum, ($3,460.97 per month).

From May 1st, 1988 to April 30th, 2007 the rent shall be adjusted annually on April 1st of each and every year by a percentage of increase (but in no event less than 5%) of the Consumer Price Index, All Urban Consumers U.S. City Average for "All Items" (1967=100) as published by the Bureau of Labor Statistics of the United States Department of Labor over the base period. The term base period shall refer to the Index published for April 1987, as compared to the CPI for the month of April 1988, and each yearly CPI

for that year over the preceding year, multiplied by the base rent for that year.

In the event said Consumer Price Index shall cease to use the same basis of calculation or if a change is made in the terms or number of items contained in said Price Index after April 1987, or said Price Index shall be discontinued, then Lessor shall have the right and option to designate a substitute index or formula and such substituted index shall have the same effect as if it had been originally designated herein. Any monies due hereunder shall be considered rent and paid monthly by Lessee to Lessor at the same time base rent is paid. The purpose of this paragraph is to increase the annual rental by the amount of increase (but in no event less than 5%) each year in the CPI. Should there be no increase in the CPI in any given year, the rental shall be nevertheless increased by a minimum of (5%) percent each year for the term of this Lease.

## SUBLET:

4. The parties hereto acknowledge and agree that Franchise Stores Realty Corp. may sublet all or any portion of the leased premises, (including the existing building which is presently subdivided), for the operation of a CARVEL STORE or for any other lawful business purpose, subject to the approval of the Lessor. Any sub-lease of the Lessee shall be subordinate to this Lease.

## FUTURE CONSTRUCTION:

5. It is understood and agreed that the Lessor (or its designee) shall have the right to remove the present building at the demised premises and construct in its place a new building(s), single or multi-units, at the sole cost and expense of the Lessor (or its designee), or make any changes, improvements or additions to the existing building (at Lessor's [or its designee's] cost and expense) for the purpose of constructing or creating a new multi-tenant building and/or taxpayer, providing that:

(a) Lessor (or its designee) gives to the Lessee a 60 day notice in writing of its intention to do any of the foregoing;

(b) Lessee's rents will abate during such work by the Lessor (or its designee) including taxes, common area maintenance and utilities charges;

(c) The CARVEL STORE will be rebuilt to the then-standards for a CARVEL STORE at the Lessor's (or its designee's ) expense, (if building should be demolished) within eight (8) months from the date of construction, unless through no fault of the Lessor, construction is extended beyond that time;

(d) The CARVEL STORE, in the event of extension, addition or construction of a multi-unit building on the property, (without demolition of existing building), shall be located in such new improvement, in space no less than space now leased and with comparable access and adequate visibility;
(e) This Lease shall remain in full force and effect subject to the above conditions, and further:

(i) That subsequent to the reopening as a multi-tenant improvement, extension or addition: all taxes, insurance, maintenance or other additional rental charges shall be apportioned equitably among the several tenants, based on the square footage of their leased space as apportioned to the square footage of the entire building;

(ii) Lessee shall be charged for the foregoing items in (i) as well as common area charges for the cleaning, snow removal and maintenance of all of the common areas, including parking lot, (if Lessor shall elect to perform such maintenance) which shall be paid in equal monthly installments on the 1st day of each month in advance as additional rent and Lessee's share shall be calculated according to the percentage of the store space leased by Lessee as apportioned to the total square footage of the entire building.

## RENEGOTIATION:

6. It is understood that should the Lessor (or its assignees) exercise the provisions in Paragraph 5 above then the rental provision of this Lease may be renegotiated to compensate for such new building or construction that

2

A-2

may be provided to Lessee.  However, any existing sub-leases of the Lessee shall not be affected by said renegotiation.

CARE OF PREMISES:—

7.  The Lessee, at its own expense agrees to keep the building, plate glass, walks, parking area and sidewalks at the demised premises in good order, condition and repair, making all interior and exterior repairs and replacements to the same as and when required and keeping the sidewalks, walks and parking area in good condition and repair and free and clear of snow, ice and rubbish during the entire term of this Lease.  Lessee, at its own expense shall be responsible for structural repairs and exterior repairs and replacements.

The Lessee, at its own expense, will bond or otherwise remove from record, mechanic's liens filed with respect to the demised premises or any part thereof, for any and all work or materials furnished to the Lessee during the term of this letting, within thirty (30) days next following the filing of such liens against the demised premises.  Should the Lessee fail to comply with any requirements on the Lessee's part to be performed, as herein contained, within the time specified for such compliance, the same shall be a default and Lessor may thereafter at its option, but without obligation, take whatever action may be appropriate to cure the default and all costs and expenses incurred by Lessor in curing any such default shall constitute additional rent for this letting and be payable by Lessee on demand of Lessor.

GOVERNMENTAL REQUIREMENTS:

8.  The Lessee agrees that he shall comply with the requirements of all governmental requirements which shall impose any duty upon the occupants of the demised premises.

COVENANT ON MORTGAGE:

9.  This Lease shall be subject to and subordinate to any and all mortgages now on or hereafter placed upon or affecting the demised premises and to any and all renewals, modifications, consolidations and extensions thereof.  The Lessee agrees, from time to time and within ten (10) days of demand, to execute and deliver to Lessor or its designee any and all instruments requested to evidence such subordination, without obligation or expense to the Lessor.

FIRE INSURANCE:

10.  During the entire term of the Lease the Lessee, at its own cost and expense, will insure the demised premises and any existing buildings and improvements thereon with fire, extended coverage, vandalism and malicious mischief, ("all risk insurance"), which shall be in an amount equal to the replacement value of the buildings and improvements, exclusive of foundations and excavations as such value may be from time to time.

In the event of the total destruction of the building or improvements, (or both), upon the demised premises, by reason of fire, the elements or other casualty not caused by the willful act or omission, or negligence of the Lessee, or any of its employees or agents, this letting shall not terminate, but there shall be an abatement of rent for such period of time as the premises are not usable by Lessee for its business purposes as the result of such damage or destruction and Lessor shall have the option to terminate this Lease within twenty (20) days of such loss or damage.  If that option is exercised, written notice to that effect shall be sent to Lessee by Lessor and this Lease shall thereupon expire as if the date of exercise of said option by Lessor was the date set forth in Paragraph "2" of this Lease as the expiration date of the Lease term.

All sums payable by Lessee under the Lease to such date shall be paid within five (5) days next following said Notice and Lessee shall promptly vacate the premises.  Lessor or its designee shall be solely entitled to any insurance proceeds payable by reason of such destruction of or damage to the premises.  In the event Lessor does not elect to terminate said Lease or in the event of only partial damage to the premises, Lessor, or its designee shall be solely entitled to any insurance proceeds payable by reason of such destruction of or damage to the premises.  In the event Lessor does not elect to terminate this Lease or in the event of only partial damage to the

. 3

premises, Lessor or its designee shall collect the insurance proceeds and Lessor or its designee shall cause the demised premises to be repaired or reconstructed making the insurance proceeds available for that purpose and there shall be an abatement of rent until Lessor or its designee tenders the premises to Lessee. It is understood that any excess of insurance proceeds remaining after construction shall belong to the Lessor or its designee. In the event of the complete destruction or partial damage to the premises by reason of Lessee's willful act or omission or negligence, or that of its agents, employees or servants there shall be no abatement of rent and Lessee shall be liable for the complete repair and replacements of such damage or destruction and Lessor shall have the option to terminate the Lease within ninety (90) days next following the occurrence of such damage or loss.

## COVENANT ON LIABILITY INSURANCE:

11.  From the date of delivery of the premises and during the term of this Lease, Lessee, will, at its own cost and expense, maintain property damage insurance with minimum limits of $50,000. and public liability insurance in an amount not less than $500,000. for injuries to any one person and not less than $1,000,000. for injuries to more than one person arising out of any one accident or occurrance. Lessee shall provide plate glass insurance.

All such coverage shall be obtained from companies satisfactory to the Lessor and in the names of Lessor, Lessee and any mortgagee of the premises as their respective interest may appear. Copies of all such policies or certificates therefor shall be delivered to the Lessor herein together with proof of payment of premium within twenty (20) days before the expiration of any such coverage during the time of this Lease. The foregoing insurance coverage shall also be provided by Lessee during any period of construction, remodeling, repair, alterations or improvements at the demised premises.

## CURE OF DEFAULT:

12.  If the Lessee defaults in compliance with any term or condition on its part to be performed under this Lease, and said default continues for fourteen (14) days, as to any installment of rent, additional rent or any other sum herein provided for, or for ten (10) days as to all other defaults, Lessor, at its option, may and without obligation, terminate this Lease by written notice to that effect sent to Lessee and all rights hereby granted to the Lessee shall be terminated and cancelled upon Lessor's dispatch of said notice.

In the event of any such termination of the Lease, or in the event of any abandonment of the premises by Lessee, Lessor may re-enter the demised premises without notice, by force, summary proceedings or otherwise, without liability for itself, its employees, representatives or agents and either enjoy the same for its own account or relet or seek to relet the same as agent for Lessee on the same or any other terms, conditions, or covenants as it may, in its sole discretion, determine to be desirable; and in such latter event, Lessee shall remain liable to pay all rent and additional rent provided in the Lease until the expiration of the term of this Lease, which the termination and abandonment occurred, plus any and all costs, expenses and attorney's fees incurred by Lessor in re-entering and re-taking possession of the premises, preparing the same for reletting and obtaining a new tenant for the same, but minus any sums paid by and subsequent tenant from time to time during the period.

All sums collected by Lessor upon the foregoing liability shall first be applied in reimbursement of the said costs, expenses and attorney's fees referred to, and then applied to satisfaction in whole or in part, as the case may be, of the rent or additional rent referred to, and, in the event of any deficiency, the Lessee shall make payment of such sum hereunder within five (5) days of Lessor's demand for same.

Lessee hereby waives for itself and all those claiming under it, all rights, now or hereinafter existing to redeem the premises after termination of the Lessee's rights of occupancy by order or judgment or any Court or after the issuance of a warrant to dispossess and also waives all right to trial by jury in any summary proceedings hereinafter instituted by Lessor against Lessee with respect to the demised premises or this Lease. This paragraph of the Lease shall survive any termination of the Lease, as well as all of the foregoing paragraphs in this clause of this Lease.

4

A-4

**PAYMENT OF TAXES:**

13.  The Lessee agrees to pay, as additional rent, commencing with the date of the commencement of rent, as hereinbefore provided, whenever and as soon as the amount thereof may be ascertained and payable, but in no event more than thirty (30) days thereafter, all taxes, charges and assessments whatsoever, extraordinary as well as ordinary, which shall be due or payable or levied or imposed upon the demised premises during the term and any renewal term herein granted.  In the event that such taxes, charges or assessments are imposed upon the demised premises for a fiscal period, same shall be apportioned for the first year of the term of this Lease if imposed at such time and payable by the Lessee herein for the period during said year that the Lessee shall have possession of the demised premises.

**TRIPLE NET LEASE:**

14.  The annual rentals provided for in this Lease shall be absolutely net to the Lessor.  It is the intention of the parties hereto that all expenses, costs, and obligations of every kind and nature whatsoever relating to the leased premises shall be paid by Lessee; including but not limited to all taxes, assessments, insurance, maintenance, repairs and replacements to the structure and land on which said structure is located both exterior and interior.

**UTILITIES:**

15.  Lessee shall pay for all services and utilities consumed at, on or upon the premises before the same shall become delinquent.  All utilities shall be placed and connected in the name of the Lessee prior to the Lessee taking occupancy and Lessee shall post any and all deposits required by any utility company.  Said utilities and services shall include, but not be limited to oil, water, gas, electricity, sewers, etc.

**CONDEMNATION:**

16.  The parties hereto agree that should the land and improvements thereon or any part thereof be taken or condemned by competent authority for public or quasi-public use, the term of this Lease shall, at the Lessor's option, terminate end cease from the date when possession of the part so taken shall be required for the use and purpose for which it had been taken.  The Lessor shall be solely entitled to any and all awards made available with respect to said taking.

**FOR SALE & TO LET SIGNS:**

17.  During the last three (3) months of the term of this Lease Lessor may display "To Let" end/or "For Sale" or other signs upon premises it may elect to install and may freely exhibit the premises to any prospective tenant or purchaser.

**BANKRUPTCY:**

18.  If the Lessee during the term hereby granted, files or suffers the filing of any petition in bankruptcy or makes an assignment for the benefit of creditors, at the option of the Lessor, this Lease shall be deemed breached by Lessee as to a material condition, and Lessor shall be entitled to terminate Lessee's rights under the Lease forthwith.

**WAIVER OF REQUIREMENTS:**

19.  No requirements whatsoever of this letting shall be deemed or waived or varied, nor shall the Lessor's acceptance of any payment hereunder with knowledge of any default, or Lessor's failure or delay to take advantage of any default, constitute a waiver of the Lessor's right by virtue thereof or a waiver of any subsequent or continued breach of any requirement of this letting.

**NOTICES:**

20.  All notices to be given under this letting shall be in writing end shall be either served personally or sent by certified or registered mail, return receipt requested to the address of the parties as heretofore written.

5

A-5

**BROKERAGE COMMISSION:**

21. The parties agree that no broker brought about this lease.

**ASSIGNMENT:**

22. Notwithstanding anything to the contrary herein stated, this Lease may not be assigned without the written consent of the Lessor.

**PEACEFUL ENJOYMENT:**

23. Lessor covenants and agrees with Lessee that upon Lessee paying said rent and performing all the terms, conditions an covenants of this Lease aforesaid on Lessee's part to be observed and performed, Lessee shall and may peaceably and quietly have, hold and enjoy the premises hereby demised for the term aforesaid, subject, however, to the terms of the Lease and of the ground Leases, if any underlying Leases, if any, and mortgages, if any hereinbefore mentioned.

**EXPIRATION OR TERMINATION:**

24. Upon the expiration or other termination of the term of this Lease, Lessee shall quit and surrender the demised premises to Lessor, together with all buildings and improvements thereon, broom clean, in good order and condition, ordinary wear and tear by the elements excepted. If the last day of the term of the Lease or any renewal thereof falls on Sunday, this Lease shall expire on the business day immediately following and Lessee should remove all his personal property from the premises on or before such day, but if Lessee fails to do so, Lessor may cause all of said property to be removed at the expense of the Lessee, and Lessee agrees to pay any and all costs and expenses incurred thereby. Lessee's obligation to observe or perform this covenant shall survive the expiration or other termination of this Lease. Should Lessee fail to vacate the premises as set forth above, then Lessee shall pay rent at twice the rate paid in the last month of the expired or termination term.

**LEASE ACCEPTANCE:**

25. This agreement contains all the oral and written agreements, representations and arrangements between the parties hereto. Any and all representations, warranties, or rights, which the respective parties hereto may have made or had under any previous contracts or oral arrangements, are hereby cancelled and terminated and no representations or warranties are made or implied other than as expressly set forth herein. The agreement shall not be binding upon the parties herein until and unless this agreement shall have been properly executed by the Lessee and Lessor herein and this agreement may not be changed except in writing signed by both of the parties herein.

**CONSTRUCTION OF LEASE:**

26. Words of any gender used in this Lease shall be held to include any other gender, and words in the singular number shall be held to include the plural, when the sense requires.

**CUMULATIVE REMEDIES:**

27. The parties understand and agree that any and all remedies provided herein for defaults in the Lease are in addition to and not in substitution for any and all remedies available to the respective parties herein at law and equity.

**SIGNS:**

28. Lessor permits and approves Lessee's installation, use and display of signs on or about demised premises per exhibits annexed to this Lease. Future signage will be subject to the Lessor's approval, which will not be unreasonably withheld.

**MARGINAL NOTES:**

29. The captions or marginal notes as to contents of particular paragraphs herein are inserted only for convenience, and are in no way to be construed as part of this Lease or as a limitation on the scope of the particular paragraphs to which they refer.

COMPETITIVE USE:

30.  The Lessor hereby agrees not to sell, rent, lease or permit the use of any part of its property within the vicinity of one thousand (1,000) feet from the premises herein letted in any direction for use in the sale of ice cream or similar products.

RECORDING:

31.  This Lease may not be recorded.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals this 23rd day of April, 1987.

WITNESS

LESSOR:

_____
THOMAS CARVEL

_____
AGNES CARVEL

LESSEE:

FRANCHISE STORES REALTY CORP.

BY: _____
Mildred Arcadipane, Secretary

(STATE OF NEW YORK     )
(COUNTY OF WESTCHESTER )  ss.:

On the 23RD day of April, 1987 before me personally came Thomas and Agnes Carvel, to me known and known to me to be the individuals described in and who executed the foregoing instrument and they duly acknowledged to me that they executed the same.

_____
SARGIS MIRZA
Notary Public, State of New York
No. 60-4645667
Qualified in Westchester County
Commission Expires March 30, 1989

(STATE OF NEW YORK     )
(COUNTY OF WESTCHESTER )  ss.:

On the 23RD day of April, 1987, before me personally came Mildred Arcadipane, to me known, who, being by me duly sworn, did depose and say that she resides at Yonkers, New York, that she is the Secretary of Franchise Stores Realty Corp., the corporation described in and which executed the foregoing instrument, that she knows the seal of said corporation, that it was so affixed by order of the Board of Directors of said corporation and that she signed her name thereto by like order.

_____
SARGIS MIRZA
Notary Public, State of New York
No. 60-4645667
Qualified in Westchester County
Commission Expires March 30, 1989

7

A-7

**SURROGATE'S COURT : WESTCHESTER COUNTY**
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

In the Matter of the Application of THE THOMAS AND
AGNES CARVEL FOUNDATION, as remainderman
under the Last Will and Testament of Thomas Carvel,
deceased, for a restraint on the transfer of certain
funds.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

In the Matter of the Application of THE THOMAS AND
AGNES CARVEL FOUNDATION, as remainderman
under the Last Will and Testament of THOMAS
CARVEL, deceased, for a restraint on the conveyance
or encumbrance of certain real property.
••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**DECISION AFTER TRIAL**

**File No. 3285/90**
**File No. 2165/98**

**SCARPINO - S**

 In these two proceedings consolidated for trial, the Thomas and Agnes Carvel

Foundation (the "Foundation") seeks a determination of its rights under an agreement (the

"Reciprocal Agreement" or "Agreement") executed by Thomas Carvel ("Thomas" or the

"decedent") and his wife Agnes Carvel ("Agnes") contemporaneously with the execution

of their mutual wills. By the terms of the Agreement, Thomas and Agnes each contracted

with the other not to make gratuitous transfers of property or in any way change the

provision of his or her will. The mutual wills each named the Foundation as residuary

beneficiary.

 The remaining co-executors of Thomas' estate support the Foundation's claims and

contend that the Agreement is valid and binding and, therefore, the Foundation is the

rightful beneficiary of Thomas' and Agnes' estates. The proceedings are opposed by

Leonard Ross, as Limited Ancillary Administrator of the estate of Agnes Carvel ("Ross")

and by Pamela Carvel ("Pamela") (collectively "respondents"). Pamela is, inter alia,

Thomas' niece and a former co-executor of Thomas' estate.

 The issues raised in these proceedings were tried before the Court in November

### ESTATE OF THOMAS CARVEL
**File No. 3285/90**
**File No. 2165/98**

2001. The Court makes the following Findings of Fact and Conclusions of Law:

### BACKGROUND

Thomas Carvel died on October 21, 1990. His will generally left all his assets to his wife Agnes in trust for life with the remainder payable, on Agnes' death, to The Thomas and Agnes Carvel Foundation. At the time of Thomas' death, Agnes had a "mirror image" will and was ostensibly bound by the Reciprocal Agreement she made with Thomas which precluded her from changing her will. These proceedings concern the validity of this Reciprocal Agreement and various subsequent transfers of assets made by Agnes and Thomas Carvel.

The first proceeding (the "Funds" proceeding) is brought by the Foundation against various entities holding funds to the possible credit of Agnes' estate. These funds include: (i) approximately $600,000, held by the Thomas Carvel Charitable Remainder Unitrust (the "Unitrust"), representing Agnes' final prorated unitrust distribution; (ii) approximately $2.4 million held in escrow subject to a determination of Agnes' claims against a Carvel entity known as Chain Locations of America, Inc. ("Chain")[1]; and (iii) monies or property that Agnes' estate would be entitled to receive from Thomas' estate. The latter would include accumulated and delayed income, Agnes' half interest in Chain, Agnes' claim to ownership

---

[1]The conflicting claims of ownership to the stock of Chain Locations of America, Inc. were recently tried before this Court, and a Decision After Trial was rendered on December 24, 2001.

-2-

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

of real property known as "Hedge Farm"[2] and other alleged entitlements.

The second proceeding, known as the Realties Proceeding, concerns the transfer of ownership of four parcels of real property located in New York and Florida (sometimes referred to as the "Realities properties"). Agnes succeeded to the ownership of these properties upon Thomas' death by right of survivorship. In 1995, Agnes transferred these properties to an entity identified only as "Realties." Thereafter, these properties were transferred by Realties to Lartrym Services, Inc. ("Lartrym")[3].

The Foundation contends that these transfers constitute a breach of the Agreement, that Realties and Lartrym are merely the alter ego of Pamela Carvel, and that the transfers to Lartrym were a sham. The Foundation seeks an award of legal and equitable title to the four properties, a full accounting of the proceeds of sale, if any, received by Realties for the conveyance of the properties to Lartrym, the imposition of a constructive trust for the benefit of the Foundation, and restitution.

The respondents have asserted a number of defenses to these proceedings including abandonment, breach, waiver, the statute of limitations, unclean hands, failure

---

[2]The conflicting claims of ownership to the Hedge Farm property were recently tried before this Court, and a Decision After Trial was rendered on March 20, 2002.

[3]Neither Realties nor Lartrym filed appearances or opposed the relief sought by the Foundation, and they are in default in these proceedings. However, "Realties, a Delaware Business Trust" ("Realties DBT") did make a special appearance and moved for an order dismissing the proceeding claiming lack of personal jurisdiction. The motion was denied by this Court's Decision dated March 29, 2002.

-3-

**A-10**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

of consideration, EPTL § 13.2.1 (b), over-reaching, and the parole evidence rule.

## THE FACTS

On February 13, 1988, Thomas and Agnes executed a series of estate planning documents consisting of separate, mutual, mirror image wills, three stock powers, and the Reciprocal Agreement. The wills named the Foundation as the ultimate beneficiary of their respective estates.

The Reciprocal Agreement was prepared by Lawrence Newman, Esq. In 1988, Mr. Newman was a partner in a large New York City law firm and head of that firm's trust and estates department. Mr. Newman was also a professor of trusts and estates at Columbia University Law School, author of "Post-Mortem Planning," and past Chair of the American Bar Association's Estate and Gift Tax Committee. Mr. Newman testified that he prepared a series of estate planning documents for Thomas and Agnes at the request of Herbert Roth, Esq., who represented Thomas and the Carvel Corporation. These documents included the wills, the stock powers, and the Agreement. Newman testified that the purpose of the Agreement was to carry out the Carvels' mutual estate plan by preventing the transfer of significant amounts of principal in any way different from the general plan [Tr.627-629]. In this regard, Newman explained that the benefit to the Carvels' was mutual in that each derived a benefit from knowing that their mutual estate plan would be carried out by the survivor [Tr.736]. Newman further opined that the Agreement placed no restriction on the disposition of income and did not prevent either Thomas or Agnes from

-4-

A-11

gifting or otherwise disposing of any or all of their income [Tr.630]. According to Newman, this was important to preserve the marital deduction for estate tax purposes since the Carvels' wills each provided a marital trust for the survivor. The use of the marital deduction would save the Carvels many millions of dollars of Federal estate taxes.

The estate planning documents, including the mirror image wills and the Agreement, were executed by Thomas and Agnes under the supervision of Eric Kaviar ("Kaviar"), another Carvel Corporation attorney. Kaviar was known well and favorably by the Carvels. Kaviar testified that he reviewed the documents with the Carvels and explained the import of the Agreement and the other documents to Agnes [Tr.524], i.e., "that the survivor of the two, would not change their will nor make gratuitous transfers" [Tr.507]. According to Kaviar, Agnes "understood what was going on...she understood what I was saying to her, and she understood what was happening at that time" [Tr. 525].

Thomas died on October 21, 1990. His will was admitted to probate and seven executors were appointed to administer his estate. In November 1990, Agnes made a new will which was essentially identical to her 1988 will. The 1990 will was executed because it was thought that her 1988 will had been lost.

In 1991, Newman's office prepared an inter-vivos trust agreement for Agnes (known as the "1991 Trust") to which Agnes transferred substantial assets. Newman testified that the 1991 Trust did not violate the Agreement since it was revocable by Agnes with the consent of the trustees and, therefore, did not constitute a gratuitous transfer [Tr.635-36].

-5-

**A-12**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

Regarding the transfers from Agnes to Realties, the deeds to the four properties, dated August 31, 1994, each identify the grantee as "Realties" residing at a Manhattan cooperative apartment owned by Pamela. When questioned about Realties at her deposition in 1998, Pamela testified that the entity was a "New York, Florida and Delaware" trust created in 1992 **[Tr.1270-73]**, and that she and Agnes were the trustees **[Tr.1314-18, 1375]**. Indeed, Pamela appeared in this proceeding by counsel in her capacity as "Trustee of Realties Trust" and later sought to dismiss the proceeding for lack of subject matter jurisdiction, claiming that the proceeding involved a dispute between two living persons, i.e., Realties and the Foundation. That motion was denied, and Pamela filed an Answer, again in her capacity as Trustee of Realties Trust.

Later, Pamela claimed that the grantee of the four properties was not a New York trust, but a different entity known as Realties, a Delaware Business Trust which had been created in August 1994 ("Realties DBT") **[Tr.1273, 1285-86]**. However, the Certificate of Trust for Realties DBT, filed with the Delaware Secretary of State, is dated May 1, 1995, and its Application for Federal Employer Identification, signed by "Pamela Carvel, Pres.", lists the "[d]ate business acquired" as May 2, 1995. The Certificate of Trust names Chain Locations of America, Inc., a Delaware Corporation ("Chain Delaware"), as the corporate trustee; however, Chain Delaware was not incorporated until October 11, 1994 - more than one month after Agnes transferred the properties to Realties.

Pamela testified that she prepared the trust instrument for Realties DBT. However,

-6-

**A-13**

**ESTATE OF THOMAS CARVEL**
File No. 3285/90
File No. 2165/98

she was not able to produce a copy, claiming it had been stolen. She also testified that
she does not know who the trustees of Realities DBT were, does not know whether she
or Agnes were beneficiaries, and does not know if the instrument names a remainderman
[Tr.1314-18, 1375; 1319-20; 1321-22; 1375].

The proof regarding Lartrym is equally obscure. Pamela testified that the four
properties were transferred from Realities to Lartrym to satisfy an antecedent loan of
approximately $2 million from Lartrym to Agnes. No documents evidencing the loan(s) or
security interests in the properties have been produced. Pamela claims that such
documents exist, but does not know where they are [Tr.1381, 1382, 1344]. Pamela's
testimony was uncertain, evasive, and inconsistent with other credible evidence adduced
at the trial.

Darryl Vernon, Esq. testified regarding his representation of Realities and Lartrym
in connection with the attempted sale of one of the properties. Vernon testified that he was
contacted by Pamela in October 1998 with instructions to prepare a contract for sale of the
property to Lartrym. Vernon also stated that Pamela provided his firm with information
about Lartrym, and that he routinely copied Pamela on correspondence in respect of the
proposed sale.

Documents in Vernon's files list the same telephone and/or facsimile numbers for
Pamela and Lartrym. In addition, Vernon produced five checks for payment to his firm for
services rendered to Lartrym. Two were signed by Pamela, and one by Russell Court,

-7-

A-14

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

Pamela's assumed name under which she does business (see, Pamela Carvel, Exhibit 45 [PEx.45]). Vernon also recognized the other two checks as being signed by Pamela (Foundation Exhibit 78 [FEx. 78, Tr. 1465-70]). Finally, the deeds to Lartrym list a Manhattan cooperative apartment owned by Pamela as the address to where the deeds were to be returned after recording.

On July 7, 1995, Agnes made a third will (the "1995 will"). The 1995 will differs significantly from Agnes' earlier wills. More particularly, the 1995 will names an entity other than the Foundation as the recipient of Agnes' residuary estate. Agnes died on August 4, 1998, a resident and domiciliary of the United Kingdom ("U.K."). The 1995 will contravenes the estate plan created in 1988 and clearly constitutes a total breach of the Reciprocal Agreement. The1995 will was offered and admitted to probate in the U.K. Pamela was Agnes' guardian immediately prior to Agnes' death and is the U.K. representative of Agnes' estate.

## CONCLUSIONS OF LAW

### PAROLE EVIDENCE RULE

The respondents contend that: (i) the Reciprocal Agreement prohibited the making of any "gratuitous transfers" by Thomas or Agnes; (ii) that the term "gratuitous transfer" is

-8-

A-15

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

clear and unambiguous[4]; (iii) the prohibition against "gratuitous transfers" precludes the making of any gift; and (iv) parole evidence is not admissible to alter or vary the terms of the Agreement.

At trial, the Foundation introduced extrinsic evidence to describe or explain the meaning of the term "gratuitous transfer." No objection was raised to the introduction of this evidence and, in fact, during opening statements, counsel for Agnes' estate stated, "[n]obody knows what a gratuitous transfer is" [**Tr. 62**; also see **Tr. 1502-03**]. However, during closing arguments and in the post-trial briefs, respondents argue that the Court may not consider this parole evidence.

The determination as to whether a contract provision is ambiguous is a question of law for the Court to resolve (see, First Development Corp. v Delco Plainview Realty Associates, 194 AD2d 711). A contract should be read as a whole and interpreted so as to give effect to the intention in the unequivocal language employed (see, Caravan v Chase Manhattan Bank, 278 AD2d 352).

It is incumbant upon the Court to determine whether a contractual provision is ambiguous, or its result so absurd, as to warrant going outside the language of the Agreement to ascertain the parties' intent (see, Matter of Wallace v 600 Partners Co., 86

---

[4]Although this is respondents' current position, they had previously pled, as an affirmative defense, that "[t]he terms of the alleged Reciprocal Agreement are too indefinite uncertain and vague to be enforced...." (Verified Amended Answer dated January 4, 2002). This defense was subsequently withdrawn.

-9-

**A-16**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

NY2d 543; <u>see</u> also 4 Williston, Contracts § 610B at 533 [3d Ed. 1961]. In these circumstances, a Court may carry out the intention of a contract by "...transposing, rejecting, or supplying words to make the meaning of the contract clear (<u>see</u>, <u>Matter of Wallace</u>, <u>supra</u>, citing <u>Castellano v State of New York</u>, 43 NY2d 909, 911). In addition, the parole evidence rule is not violated by the introduction of extrinsic evidence if such evidence is admitted, not to change the terms of the contract but, instead, merely to explain the meaning of a term (<u>see</u>, <u>Shepherd v Seril</u>, 118 AD2d 422, <u>appeal denied</u>, 68 NY2d 608, citing <u>Petrie v Trustees of Hamilton College</u>, 158 NY458).

Viewed in this context, respondents' claim that a "gratuitous transfer" includes every circumstance where there is a "transfer of something of value without receiving equivalent value in return" (Post-Trial Brief of Pamela Carvel dated January 4, 2002 at p. 9), is too myopic and at odds with the clear intention of the parties as expressed in the Agreement. The phrase cannot be read or interpreted in a vacuum. It must find meaning and purpose by reading the Agreement as a whole. The Agreement specifically refers to the parties' mutual wills, which were being executed simultaneously with the Agreement. It is beyond argument that the only purpose of the Agreement was to further support and secure the continued viability of the parties' estate plan as provided in the mutual wills. The basic estate plan was to provide income to the surviving spouse for life, provide the remainder to the Foundation, and obtain the benefit of the marital deduction.

The Agreement was not intended to prevent Thomas or Agnes from giving

**A-17**

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

Christmas gifts to family members, or "picking up the tab" for lunch, or dropping a few dollars into the Salvation Army coin drop, or tithing at church, or otherwise providing cash gifts to family and friends.

Respondents' interpretation would created the absurd result of rendering the Agreement and the parties' entire estate plan unenforceable and invalid almost from its inception. In addition, respondents' interpretation would have catastrophic and clearly unintended tax consequences. In order for the marital deduction to be available to Thomas' estate, it was essential that Agnes have free and unrestricted use of her income (see, 26 USCA § 2056 (b) (7) (B) (ii) (I); 26 CFR §§ 20.2056 (b)-7(d) (2), 20.2056 (b)-5(f), 20.2056 (b)-5 (e), 20.2056 (b)-7 (g); see also, EPTL § 7-1.5). Agnes did, in fact, sign and authorize the filing of Thomas' estate tax return (Form 706) which claimed the marital deduction. A copy of the Reciprocal Agreement was attached to the filed return. If the respondents' interpretation prevailed, the estate would have lost many millions of dollars in tax savings.

The Court concludes that the term "gratuitous transfer" could not have the meaning ascribed to it by Pamela. In order to determine the intended meaning of the term, it is necessary to look outside the four corners of the Agreement. In this regard, the testimony of Mr. Newman is helpful and credible. According to Mr. Newman, the term was intended to apply to "substantial transfers of principal" in derogation of the estate plan, but did not apply to "the disposition of ...income" **[Tr. 629-630]**. This interpretation is consistent with

-11-

**A-18**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

the purposes for which the Agreement was created; to provide ample financial security to Thomas and Agnes during their lives, to further the charitable purposes of the Foundation after their deaths, and to minimize any adverse tax consequences.

### STATUTE OF LIMITATIONS

In breach of contract cases, the cause of action begins to run from the date of the first breach (John J. Kassner & Co., Inc. v City of New York, 46 NY2d 544) and expires six years later (CPLR § 213). The statute of limitations does not provide a viable defense to petitioners' claims. Even assuming, arguendo, that each alleged breach did not give rise to a separate cause of action, in order to constitute a breach, the conduct of Thomas and Agnes must reveal a definite and final communication of their intention to forego performance of the Reciprocal Agreement.

As previously stated, the making of cash gifts of income did not constitute "gratuitous transfers" and, therefore, did not breach the Agreement. In addition, Agnes' execution of her 1990 will did not constitute a breach of the Agreement since it expressly evinces Agnes' continued intention to keep the Foundation as her residuary beneficiary, and the Foundation's interest in Agnes' estate was not diminished.

Finally, the creation of the 1991 Trust did not constitute a breach of the Agreement for the same reasons. While the 1991 Trust did provide the trustees with the power to designate a remainderman other than the Foundation, that power was never exercised, and no damage could accrue to the Foundation until such time as the power was executed.

-12-

**A-19**

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

Thus, the Court finds that the earliest date upon which a breach of the Agreement occurred was September 6, 1994[5], when Agnes transferred the Realties properties to the Realities' Trust. Since this action was commenced within six years of these transfers, the Foundation's claims are timely.

**ABANDONMENT BREACH AND WAIVER**

The facts do not support the respondents' contentions that Thomas or Agnes abandoned the Agreement, that Thomas breached the Agreement, or that the Foundation waived its rights to enforce the Agreement.

The abandonment and breach arguments are predicated upon evidence of transfers made by Thomas before death and by Agnes after Thomas' death which the respondents contend violated the Agreement. These include gifts to individuals and the creation and funding of the Unitrust. With regard to the cash gifts, the Court has construed the Agreement as permitting the transfer of income, and there was no proof adduced at the hearing that the gifts, by Thomas during his lifetime or by Agnes after his death, exceeded their available income.

Regarding the Unitrust, the Court finds that the creation of this trust was wholly consistent with the Carvels' estate plan to minimize taxes and preserve the value of their estate for themselves and the Foundation. Initially, the Court notes that the Unitrust is virtually a mirror image of the Carvel' wills, in that it provided the Carvels with income

-------------------

[5]The date Agnes signed the deeds.

-13--

## ESTATE OF THOMAS CARVEL
**File No. 3285/90**
**File No. 2165/98**

during their lives with the remainder payable on the death of the survivor to the Foundation. As a 10 percent Unitrust beneficiary, Agnes benefitted by receiving substantially greater income than she would have, had these same assets remained in Thomas' estate as an asset of the marital trust. Indeed, far from evincing a breach or abandonment of the Agreement, Agnes embraced the Unitrust by accepting its benefit for nearly eight years.

A waiver requires the voluntary and intentional abandonment of a known right, which but for the waiver, would have been enforceable (Dice v Inwood Hills Condominium, 237 AD2d 403). With no evidence that Thomas breached the Agreement or that Thomas or Agnes abandoned the Agreement, and instead, evidence showing that Agnes reaffirmed the Agreement after Thomas' death, the Court finds insufficient evidence to support a claim of waiver.

### OVERREACHING/LACK OF CONSIDERATION

The Agreement was not procured by overreaching, nor is it invalid by virtue of the circumstances of its execution. Initially, the Court credits the testimony by Kaviar that he explained the Agreement and other documents to Agnes [Tr. 524]; that Agnes had no questions about the Agreement [Tr. 524]; and Agnes understood what was going on and what he was saying [Tr. 525].

The Court also finds that Agnes reaffirmed the Agreement and her understanding of its effect on several occasions following Thomas' death. On November 9, 1990, Agnes received advice of counsel that she could object to the probate of the conformed copy of

-14-

**A-21**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

Thomas' will. Agnes was further advised that, as Thomas' sole distributee, she would inherit his entire $45 million estate outright if the copy of his will was denied probate. Agnes opted to continue in the effort to probate Thomas' will **[FEx. 17]**. In September 1994, Agnes submitted to the Court an affidavit dated August 31, 1994 in which she referenced the Agreement, described its contents, explained its legal effect and confirmed that she was of sound mind when she executed it in February 1988 **[FEx. 37]**. Other documents evince Agnes' continuing belief in the validity and enforceability of the Agreement **[see, FEx. 24; 55; 77]**.

The Court also finds that Agnes derived a significant benefit that could only have been secured by the Agreement. In this regard, the Court credits Newman's testimony that Agnes derived benefit from knowing that the mutual estate plan would be carried out by the survivor. Of equal or greater importance to Agnes was the guarantee that Thomas could not change his will during her lifetime. In fact, Thomas' will provided Agnes with a greater inheritance than required by the laws of testacy as they existed at the time. Under Thomas' will, Agnes received his entire estate in trust, whereas, under EPTL 5-1.1, Thomas' only obligation was to bequeath one-half his estate in trust for Agnes[5].

The cases cited by the respondents impose a requirement of fair dealing regarding separation agreements between husband and wife. It is the rule that inferences drawn

---

[5]EPTL 5-1.1-A, which enhanced the inheritance rights of surviving spouses, was not enacted until September 1992, nearly two years after Thomas' death.

-15-

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

from the circumstances surrounding such agreements can be overcome "if it appears that the ... agreement is fair and equitable" (Bartlett v Bartlett, 84 AD2d 800). Based upon the testimony and evidence adduced at trial, the Court finds that the Agreement was fair and equitable, and that Agnes was not only an equal beneficiary of the Agreement with Thomas, but was the primary beneficiary of the Agreement. Under the circumstances, the Court finds no overreaching on Thomas' part regarding the execution of the Reciprocal Agreement.

For these same reasons, the Court finds no merit to respondents' argument that the Agreement fails for lack of consideration. The record is replete with evidence of benefits derived by Agnes from the Agreement both prior to and subsequent to Thomas' death.

### EPTL 13-2.1(b)

The Court finds that EPTL 13-2.1(b) is inapplicable to the Carvels' 1988 mutual wills and, accordingly, rejects the respondents' contention that the Agreement is unenforceable because the Carvels' 1988 wills lack the express language required by EPTL 13-2.1(b).

EPTL 13-2.1(b) was enacted in 1983 to provide that a "contract to make a joint will or not to revoke a joint will...can be established only by an express statement in the will that the instrument is a joint will" and that such a contract is intended (EPTL 13-2.1[b]).

The Practice Commentary to EPTL 13-2.1(b) provides that "a joint will is one will for two testators, offered for probate twice on their respective deaths" (Turano, Practice Commentaries, McKinney's Cons. Laws of NY, Book 17B, EPTL13-2.1, at 450 [2001]).

-16-

**A-23**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

Further, the Recommendation of the Law Revision Commission to the 1983 Legislature, defined a joint will as a "testamentary instrument that embodies the testamentary plan of two or more persons and is separately executed by each." On the other hand, mutual, reciprocal wills are "separate wills with reciprocal provisions for the other testator" (see, Warren's Heaton on Surrogate's Court [6th ed] §207.02[3] ).

In addition to the definition of a joint will set forth in the legislative history, the statutory purpose also lends support to the Court's holding. The purpose of the amendment was to establish a uniform standard to determine the existence of a contract to make a joint will (see, Glass v Battista, 43 NY2d 620). Prior to the amendment, courts would enforce a joint will on the basis of whether the will contained the plural pronouns (we, our or us) as opposed to singular ones (I, my or me) (see, Glass v Battista, supra; see also, Matter of Lubins, 172 Misc2d 517). Furthermore, the growing consensus was that stricter proof requirements were critical because of the adverse estate tax consequences, such as the loss of the marital deduction and potential relinquishment of the right of election, which flowed from the finding of a contract to make a joint will. Mutual wills typically do not suffer from these infirmities.

"...[I]n interpreting statutes, words ...[should] not be expanded so as to enlarge their meaning to something which the Legislature could easily have expressed but did not" (Perry v Zarcone, 98 Misc.2d 899, 901). It is clear from the legislative history of EPTL 13-2.1(b), that the drafters of this statute were careful to limit the scope of its application to

-17-

**A-24**

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

joint wills and not mutual wills.  Under the circumstances, this Court declines the invitation

to expand the statute beyond its intended application.

### UNCLEAN HANDS

The Foundation is not barred from enforcing the Agreement by unclean hands.

"[T]he doctrine of unclean hands is only available when the conduct relied upon is directly

related to the subject matter of the litigation" (Goldberg v Goldberg, 173AD2d 679,680).

Since much of the conduct complained of does not relate to the validity of the Agreement,

is not supported by the proof, or is subject to conflicting interpretations, the respondents

have failed to sustain their burden of proof as to this defense.

### THE RECIPROCAL AGREEMENT

The basis for enforcing an express or implied agreement not to alter the terms of

a joint or mutual will is historically rooted in the decisional law of this state (see, Matter of

Cohen, 83 NY2d 148; Glass v Battista, 43 NY2d 620; Schwartz v Horn, 31 NY2d 275;

Tutunjian v Vetzigian, 299 NY 315; Rastetter v Hoenninger, 214 NY 66).  Where the first

party to die has performed the agreement by not revoking a joint or mutual will before

death, courts have consistently enforced the agreement against the surviving party or the

survivor's estate, and where the survivor executes an independent will, courts will require

the executor under the latter will to perform the contract of the decedent (see, Glass v

Gattista, supra; Schwartz v Horn, supra; Tutunjian v Vetzigian, supra; Rastetter v

Hoenninger, supra).  The underlying rational has been expressed in many forms but the

-18-

**A-25**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

theme is the same: "[T]o permit the one who survives to gain the benefits of the joint will and then to flout its provisions in violation of the promise made to the other 'would be a mockery of justice'" (Tutunjian v Vetzigian, supra, at 319, quoting, Mutual Life Ins. Co. v Holladay, 13 Abb. N.C. 16, 24).

Thomas honored the Agreement by not changing his will. His will was admitted to probate with Agnes' support, and she succeeded to a lifetime interest in Thomas' entire estate. She never disclaimed the benefits of her devise and has consistently asserted her inheritance rights under the instrument. Furthermore, the evidence shows that Agnes repeatedly reaffirmed the Agreement after Thomas' death. Under the circumstances, the Agreement between Thomas and Agnes Carvel is a valid agreement enforceable by the Foundation. Accordingly, the fiduciaries of Agnes' estate are directed to perform the contract of the decedent.

Regarding the "Realities" proceeding, the record amply demonstrates that the transfer of the four properties by Agnes to Realities and/or Realities DBT was a gratuitous transfer in violation of the Agreement. First, there was no consideration for these transfers. Second, unlike the cash gifts of income routinely made by the Carvels, the "sale" of the Realities Properties constituted a large transfer of Agnes' principal assets.

While the facts regarding the transfers from Realities to Lartrym are more obscure, they are sufficient to support the conclusion that these too were sham transactions without consideration. In this regard, the Foundation is entitled to an adverse inference against

-19-

**A-26**

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

respondents regarding allegations of Agnes' indebtedness to Lartrym based upon a prima facie showing that documents pertaining to the loan transaction, although duly demanded, were not produced (see, Wilkie v New York City Health and Hospitals Corporation, 274 AD2d 474).

Moreover, both Realities DBT and Lartrym were properly served with process and defaulted. By defaulting, Realties and Lartrym "admit all factual allegations of the complaint and all reasonable inferences therefrom" (Fleet Bank v Powerhouse Trading Corp., 267 AD2d 276, 277). The Petition states a valid cause of action against Realities DBT and Lartrym and alleges sufficient facts to support a finding that equitable title remains with Realities. Accordingly, the deeds from Realities and/or Realities DBT to Lartrym are voided, and Realities and/or Realities DBT and Lartrym are permanently enjoined from conveying and/or encumbering the four properties that are the subject of this proceeding. Title to the properties is awarded to the Foundation for the reasons and subject to the conditions addressed hereafter.

The Foundation's demand that the "subject assets" be distributed to it pursuant to SCPA § 1610, as a domestic creditor of Agnes' estate, is granted subject to the payment of reasonable debts and administration expenses. SCPA § 1610 authorizes the Court to direct an ancillary fiduciary to pay the assets received by him to the creditors who reside in this state.

The Foundation is correct that agreements, such as the Reciprocal Agreement, are

-20-

**A-27**

## ESTATE OF THOMAS CARVEL
### File No. 3285/90
### File No. 2165/98

enforceable in equity. It is also correct that the Court may not set up Agnes' 1988 or 1990 will as her last will and testament (see, Tutunjian v Vetzigian, supra, 315). However, the Foundation's contention that the equitable remedy for breach of the Reciprocal Agreement is to deem it a creditor of Agnes' estate is correct only to the extent of Agnes' residuary estate. The proper remedy is an order directing the fiduciary to perform the obligation which the testator had assumed. Agnes' obligation under the Reciprocal Agreement was to name the Foundation as the residuary beneficiary of her estate. Accordingly, the Foundation's remedy is to receive the residue of Agnes' estate. This was the relief accorded in Tutunjian v Vetzigian, 299 NY 315, 319, supra, where the beneficiaries under the decedent's later will were "deemed to hold half of her estate as a resulting trust in favor of the husband's relatives - those who, though the beneficiaries of the joint will, were cut off by the wife's later will".

As the recipient of Agnes' residuary estate, the Court grants the Foundation's application for transfer of the Realities properties directly to it. In doing so, the Court rejects the respondents' contention that these properties may be required to pay the debts and administration expenses of Agnes' estate. Aside from the naked assertion that Agnes' obligations may exceed her assets, neither Ross nor Pamela have provided any information as to the identity of Agnes' creditors or the amounts of their claims, despite the fact that nearly four years have elapsed since Agnes' death. Moreover, any claim by Ross or Pamela that these properties may be needed to pay debts or administration expenses

-21-

**A-28**

**ESTATE OF THOMAS CARVEL**
**File No. 3285/90**
**File No. 2165/98**

of Agnes' estate is clearly undercut by their efforts to oppose the Foundation's attempts to recover these assets. In addition, there has been no showing by Ross or Pamela that the assets of Agnes' 1991 Trust will be insufficient to pay the obligations of Agnes' estate.

Finally, the Court notes that Ross lacks the authority to marshal real property out of state. To obtain that authority would require another proceeding in Florida in an estate that already suffers from too many proceedings. The receipt of these properties by the Foundation is, of course, subject to the requirements of SCPA § 2215(3) which obligate the Foundation to return assets to the estate in excess of the amounts due it.

The Foundation's application for a direct distribution of other assets of Agnes' estate is denied. However, pursuant to SCPA §1610, Ross shall hold such assets subject to the further Order of this Court regarding payment of creditors and expenses and such other disposition as justice may require.

**THIS IS THE DECISION AFTER TRIAL OF THE COURT.**

Settle Decree.

Dated:    White Plains, New York
          April 1, 2002

**HON. ANTHONY A. SCARPINO, JR.**
**Westchester County Surrogate**

-22-

**A-29**

## ESTATE OF AGNES CARVEL
**File No. 2165/1998**

TO:  STEVEN J. FINK, ESQ.
ORRICK, HERRINGTON & SUTCLIFFE, LLP
666 Fifth Avenue
New York, New York 10103

LAURA WERNER, ESQ.
ATTORNEY GENERAL OF THE STATE OF NEW YORK
DEPARTMENT OF LAW
120 Broadway
New York, New York 10271

LARTRYM SERVICES, INC.
c/o MORGAN & MORGAN
P.O. Box 3149
Pasea Estate
Road Town, Tortola, BVI

ROBERT M. REDIS, ESQ.
McCARTHY, FINGAR, DONOVAN, DRAZEN & SMITH, LLP
11 Martine Avenue, 12th Floor
White Plains, New York 10606

EVE RACHEL MARKEWICH, ESQ.
BLANK, ROME, TENZER, GREENBLATT, LLP
405 Lexington Avenue
New York, New York 10174

JOEL MARTIN AURNOU, ESQ.
180 East Post Road
White Plains, New York 10601-4910

GARY E. BASHIAN, ESQ.
BASHIAN, ENEA & SIRIGNANO, LLP
235 Main Street
White Plains, New York 10601

ANTHONY J. CERRATO, JR., ESQ.
656 Yonkers Avenue
Yonkers, New York 10704

-23-

**A-30**

## ESTATE OF AGNES CARVEL
### File No. 2165/1998

ROBERT HAZZARD, ESQ.
KENT, HAZZARD, JAEGER, GREER, WILSON & FAY
50 Main Street
White Plains, New York 10601

W. WHITFIELD WELLS, ESQ.
925 Westchester Avenue, Suite 307
White Plains, New York 10604

JOSEPH CASSIN, ESQ.
CASSIN, CASSIN & JOSEPH, LLP
300 East 42nd Street
New York, New York 10017

LEONARD M. ROSS, ESQ.
265 Sunrise Highway, Suite 65
Rockville Centre, New York 11570

HERBERT F. ROTH, ESQ.
510 East 23rd Street
New York, New York 10010

REALITIES, A DELAWARE BUSINESS TRUST
c/o THE PRENTICE HALL CORPORATION SYSTEM, INC.
2711 Centerville Road, Suite 400
Wilmington, DE 19808-1645

ANTHONY CONSTANTINI, ESQ.
DUANE MORRIS, LLP
380 Lexington Avenue
New York, New York 10168

**A-31**

FORM 110-6-94

**STATE OF NEW YORK**
**COUNTY OF WESTCHESTER ss:**
**SURROGATE'S OFFICE**


*I, JOHN W. KELLY, Chief Clerk of the Surrogate's Court of the County of Westchester, do hereby certify that I have compared the foregoing copy of the DECISION AFTER TRIAL;*

*Re: The Estate of   THE THOMAS AND AGNES CARVEL FOUNDATION, DECEASED .*

*SIGNED:      APRIL 1, 2002*

*with the original thereof now remaining in this office and have found the same to be a correct transcript therefrom, and of the whole of such original.*


*Dated and Sealed     NOVEMBER 14, 2002*_____


*CHIEF CLERK of the SURROGATE'S COURT*

*Seal*

**A-32**

*Realities*     110 W. Ninth Street, Suite 177 Wilmington, DE 19801-1618

**VIA CERTIFIED MAIL**

December 27, 2004

Franchise Stores Realty
Carvel Corporation
c/o Focus Brands, Inc.
175 Capital Boulevard, Suite 400
Rocky Hill, CT 06067

Re:     **LEASE for 95 South Central Avenue, Hartsdale, New York**

Dear Sir/Madam,

We are the owner of the triple net lease and the proper recipient of all income from the above leased property for which you have apparently assumed responsibility.

We would like to avoid unnecessary litigation concerning the unpaid past balances for the lease of this property, therefore we request your voluntary cooperation in providing the following information:

Please provide proof of the assignment of the lease to you by Franchise Stores Realty and Carvel Corp.

Please provide proof of the payment of rent and taxes from 1995 to present.

Please provide the identity of the recipient of rents you pay currently and the authorization by which you pay that recipient.

We require the above information before January 15, 2005, or your assurance by that date that the information will be provided expediently in not more than 30 days.

Yours truly,
*Realities*

**A-33**

## SMITH, GAMBRELL & RUSSELL, LLP

ATTORNEYS AT LAW

WASHINGTON, D.C. OFFICE

SUITE 200
1850 M STREET, N.W.
WASHINGTON, D.C. 20036
TELEPHONE
(202) 263-4300
FACSIMILE
(202) 263-4329

Thomas A. Spillman, Esq.
404-815-3775
Direct Fax : 404-685-7075
Email: tspillman@sgrlaw.com

SUITE 3100, PROMENADE II
1230 PEACHTREE STREET, N.E.
ATLANTA, GEORGIA 30309-3592
TELEPHONE (404) 815-3800
FACSIMILE (404) 815-3900
WEBSITE: www.sgrlaw.com

ESTABLISHED 1893

FLORIDA OFFICE

SUITE 2600, BANK OF AMERICA TOWER
50 NORTH LAURA STREET
JACKSONVILLE, FL 32202
TELEPHONE
(904) 598-6100
FACSIMILE
(904) 598-6300

January 21, 2005

**via Certified Mail RRR #7160 3901 9842 5588 9423**
**and via Regular Mail**

Realities
110 West Ninth Street
Suite 177
Wilmington, Delaware 19801-1618

Re:    Lease dated April 23, 1987, by and between Thomas & Agnes Carvel and Franchise
       Stores Realty Corp. for Premises located at South Central Avenue, Hartsdale, New York
       ("Lease")

Dear Sir/Madam:

Please be advised that our firm represents Franchise Stores Realty Corp. with respect to matters
arising under the above-referenced Lease. Please be advised that your letter dated December 27,
2004, which was sent to my client regarding the Lease has been forwarded to me for a response.
Please be advised that I have enclosed herewith copies of certain deeds and court decisions
evidencing that the current owner of the subject property (and Landlord under the Lease) is, in
fact, The Thomas & Agnes Carvel Foundation (the "Foundation"). I have been advised by
counsel for the Foundation that you are well aware of this fact and, in fact, already have copies
of each of the enclosed documents in your possession. Accordingly, all amounts due and
payable under the Lease shall be paid to the proper recipient, the Foundation.

Yours very truly,

SMITH, GAMBRELL & RUSSELL, LLP

Thomas A. Spillman

TAS/esa

Enclosures

**A-34**

Realities
January 21, 2005
Page 2

cc:    Kathryn Rookes, Esq. (w/o enclosures; via Facsimile: 404-255-9356)
       Katherine W. Conroy, Esq. (w/o enclosures; via Facsimile: 914-948-4721)



**\*432410407SFDU\***

| Control Number | WIID Number | Instrument Type |
|---|---|---|
| 432410407 | 2003241-000128 | SFD |



## WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
### (THIS PAGE FORMS PART OF THE INSTRUMENT)
### \*\*\* DO NOT REMOVE \*\*\*

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**

TYPE OF INSTRUMENT  SFD - SHERIFF S DEED
FEE PAGES  7            TOTAL PAGES  7

| RECORDING FEES | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $21.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $50.00 |
| TP-584 | $5.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| | |
| TOTAL FEES PAID | $101.00 |

| MORTGAGE TAXES | |
|---|---|
| MORTGAGE DATE | |
| MORTGAGE AMOUNT | $0.00 |
| EXEMPT | |
| | |
| YONKERS | $0.00 |
| BASIC | $0.00 |
| ADDITIONAL | $0.00 |
| SUBTOTAL | $0.00 |
| MTA | $0.00 |
| SPECIAL | $0.00 |
| | |
| TOTAL PAID | $0.00 |

| TRANSFER TAXES | |
|---|---|
| CONSIDERATION | $0.00 |
| | |
| TAX PAID | $0.00 |
| TRANSFER TAX # | 1040 |

SERIAL NUMBER
DWELLING

RECORDING DATE        10/28/2003
          TIME        10:24:00

**THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF GREENBURGH**

WITNESS MY HAND AND OFFICIAL SEAL

*Leonard N. Spano*

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

Record & Return to:
THOMAS & AGNES CARVEL FOUNDATION
C/O STEVEN J FINK ESQ  ORRICK HERRI
666 FIFTH AVE
NEW YORK, NY 10103

**A-36**

SFD
5P

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 11th day of AUGUST, 2003

BETWEEN
**REALITIES, A DELAWARE BUSINESS TRUST**
**c/o The Prentice Hall Corporation System, Inc.**
**2711 Centerville Road, Suite 400**
**Wilmington, DE 19808-1645**
party of the first part, and

**THE THOMAS AND AGNES CARVEL FOUNDATION**
**35 East Grassy Sprain Road**
**Yonkers, New York 10710**

party of the second part,
WITNESSETH, that the party of the first part, **pursuant to Order of the Surrogate's Court of the State of New York, County of Westchester, dated April 16, 2003,** does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

**See SCHEDULE A annexed hereto.**


See above-referenced Order of the Surrogate's Court dated
April 16, 2003, a certified copy of which is to be recorded
simultaneously herewith.

See also Decree of the Surrogate's Court of Westchester County,
File No. 3285/1990 and 2165/1998, dated July 8, 2002, whereby
certain purported conveyances by "Realities" to Lartrym were
voided.  A certified copy of said Decree is to be recorded
simultaneously herewith.


TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.  The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____

_____

**William Rhem** Rehm
**Acting Commissioner/Sheriff**
**Westchester County**

**For Realities, A Delaware Business Trust**
**As Per Court Order**

Standard N.Y.B.T.U. Form 8001- Bargain and Sale Deed, without Covenant against Grantor's Acts – Uniform Acknowledgment
Form 3284

**A-37**

# New York Title
### Research Corporation

Title No: **NYT6543**

### Schedule A Description Lot 33

ALL that certain plot, piece, or parcel of land, situate, lying, and being in the Town of Greenburgh, County of Westchester and State of New York, and being more particularly bounded and described as follows:

BEGINNING at a point on the northerly line of Central Park Avenue, which point is distant 358.74 feet northeasterly from the point of intersection of the said northerly line of Central Park Avenue with the easterly line of Washington Avenue, as measured along the said northerly line of Central Park Avenue;

RUNNING THENCE along other lands of the Town of Greenburgh, North 35 degrees 28 minutes 11 seconds West 138.17 feet to a corner;

THENCE at right angles to the last described course along other lands of the Town of Greenburgh North 54 degrees 31 minutes 49 seconds East 150.00 feet to a corner;

THENCE parallel to the first described course and at all points 150 feet distant therefrom along lands of the Town of Greenburgh South 35 degrees 28 minutes 11 seconds East 125.04 feet to the said northerly line of Central Park Avenue;

THENCE along the said northerly line of Central Park Avenue South 48 degrees 57 minutes West 101.95 feet to a point of curve;

THENCE still along the said northerly line of Central Park Avenue on a curve to the right having a radius of 772.68 feet, a distance of 48.66 feet to the point or place of BEGINNING.

BEING also known and designated as a portion of Lot 41, Block 1688, Sheet 35 (Vol. 8) on the Tax Assessment map of the Town of Greenburgh and being the same premises conveyed to the party of the first part by deed dated May 1, 1943 and recorded in June 1, 1943 in Liber 4069 of Deeds page 183.

SUBJECT to a right of way over the existing driveway crossing the northwesterly corner of the above described property and leading from Central Park Avenue to the present residence situated on other property of the party of the first part, in the rear of the above described parcel until said residence is sold by the Town of Greenburgh, when said right of way shall cease, unless the Town of Greenburgh shall, prior to such sale, provide other means of access to said residence, in which event said right of way shall cease.

Section 30 Sheet 23 Block 8231 Lot 33.

# New York Title
### Research Corporation

### Schedule A Description Lot 34

ALL that certain plot, piece, or parcel of land, situate, lying, and being in the Town of Greenburgh, County of Westchester and State of New York, and being known and designated as Lot No. 1 on a certain map entitled, "Subdivision of Property of Henry F. and Beatrice A. Tatro", dated December 19, 1947, and filed in the Register's Office of Westchester County, now County Clerk's Office, Division of Land records, on October 22, 1947, as Map No. 6452, which plot is more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of Central Park Avenue where said northerly side of Central Park Avenue is intersected by the division line between premises now or formerly of one Carvel and premises in question;

RUNNING THENCE North 35 degrees 28 minutes 11 seconds West along the southwesterly side of said Carvel's land 138.17 feet to the northerly corner of said Lot No. 1;

THENCE South 59 degrees 04 minutes 15 seconds west along said northwesterly line of said Lot No. 1, 50.15 feet to the northerly corner of Lot No. 2 on said map and premises heretofore conveyed by the parties of the first Part to Capitol Distributors Corp. by deed dated April 9, 1948;

THENCE South 35 degrees 28 minutes 11 seconds East along the division line between Lots No. 1 and 2 on said map and along the northeasterly line of said premises so conveyed to Capitol Distributors Corp. 143.11 feet to the northerly side of Central Park Avenue;

THENCE Easterly along the northerly line of Central Park Avenue on a curve to the left having a radius of 772.68 feet 50.01 feet to the point or place of BEGINNING.

Section 30, Sheet 23 Block 8231 Lot 34.

# New York Title
### Research Corporation

Title No: **NYT6544**

### Schedule A Description

ALL that certain plot, piece, or parcel of land, situate, lying, and being in the Town of Greenburgh, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at an iron rod set, said iron rod marking a southeasterly corner of the herein described parcel and the northwesterly corner of Parcel II of the lands of Realities as described in Liber 10963 of Deeds at Page 127, said iron rod being located North 35 degrees 28 minutes 11 seconds West 143.23 feet from a railroad spike set in the westerly road line of Central Avenue;

THENCE along the lands of Capitol Distributors Corp. as described in Liber 4621 of Deeds at Page 362 North 35 degrees 28 minutes 11 seconds West 57.77 feet to an iron rod set, South 61 degrees 52 minutes 57 seconds West 151.25 feet to an iron rod set and North 35 degrees 28 minutes 11 seconds West 62.83 feet to an iron rod set;

THENCE along Lots 12 and through 17 as shown on Filed Map No. 6452 North 49 degrees 16 minutes 44 seconds East 301.26 feet to an iron pipe found, said iron pipe being located North 35 degrees 28 minutes 11 seconds 50.00 feet and South 49 degrees 16 minutes 44 seconds 50.21 feet from an iron pipe found marking the southeast corner of Lot No. 19 as shown on Filed Map No. 6452;

THENCE along the lands of Leisure Unlimited, Inc., as described in Liber 7469 of Deeds at Page 386 South 35 degrees 28 minutes 11 seconds East 171.50 feet to an iron rod set;

THENCE along the lands of Realities as described in Liber 10963 of Deeds at page 127 South 54 degrees 31 minutes 49 seconds West 100.00 feet to an iron rod set and South 59 degrees 04 minutes 15 seconds West 50.15 feet to the point or place of BEGINNING.

CONTAINING 0.84 Acres of land.

BEING and intended to be a portion of lands as described in a deed dated September 12, 1968 from Dari-Freeze Stores, Inc. to Thomas Carvel and Agnes Carvel and recorded in the Westchester County Clerk's Office in Liber 7258 of Deeds at Page 44.

TOGETHER WITH and subject to a 20 foot wide drainage easement as described in an easement agreement dated December 15, 1986 between Thomas Carvel and Agnes Carvel and Eric B. Kaviar and Ellen S. Ackerman and recorded in the Westchester County Clerk's Office in Liber 9123 of Deeds at Page 119 a portion of which is described as follows;

BEGINNING at the southeasterly corner of the lands of Eric B. Kaviar as described in Liber 8856 of Deeds at Page 179, said parcel designated as Lot No. 16 as shown on Filed Map 6452, said point of being located South 25 degrees 28 minutes 11 seconds East 102.84 feet from South Washington Avenue.

Section 30 Sheet 23 Block 8231 Lot 6.

A-40

ORIGINAL

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of                          ss.:

On the        day of                      In the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of                          ss.:

On the        day of                      In the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of NEW YORK, WESTCHESTER County ss.:

On the 11th day of August in the year 2003 before me, the undersigned, personally appeared
WILLIAM REHM
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____thorne_____ in _New York_
(insert the City or other political subdivision)      (and insert the State or Country or other place the acknowledgment was taken)

_____Carmela Carreum_____
(signature and office of individual taking acknowledgment)



REGISTERED
NO. 01CA5031209
COMMISSION
EXPIRES
AUG. 1, 06

BARGAIN AND SALE DEED
WITHOUT COVENANT AGAINST GRANTOR'S ACTS

Title No. NYT6543 & NYT6544

REALTIES, A DELAWARE BUSINESS TRUST

TO

THE THOMAS AND AGNES CARVEL FOUNDATION

RECORD AT THE REQUEST OF:
New York Title Research Corp.
550 Mamaroneck Avenue
Suite 401
Harrison, NY 10528
Title No.: NYT6543 & NYT6544

DISTRICT

SECTION 30, VOL 8, SHEET 23

BLOCK    8231

LOT    33, 34, 6

COUNTY OR TOWN GREENBURGH WESTCHESTER

STREET ADDRESS

Recorded at Request of
THE JUDICIAL TITLE INSURANCE AGENCY LLC

RETURN BY MAIL TO:

The Thomas and Agnes Carvel Foundation
c/o Steven J. Fink, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue, New York, NY 10103

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE



*432410446SFDX*

| Control Number | WIID Number | Instrument Type |
|---|---|---|
| 432410446 | 2003241-000128 | SFD |



**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
**\*\*\* DO NOT REMOVE \*\*\***

THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:

TYPE OF INSTRUMENT  SFD - SHERIFF S DEED
FEE PAGES  7                    TOTAL PAGES  7

**RECORDING FEES**

| STATUTORY CHARGE | $6.00 |
|---|---|
| RECORDING CHARGE | $21.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $50.00 |
| TP-584 | $5.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| | |
| TOTAL FEES PAID | $101.00 |

**MORTGAGE TAXES**

| MORTGAGE DATE | |
|---|---|
| MORTGAGE AMOUNT | $0.00 |
| EXEMPT | |
| | |
| YONKERS | $0.00 |
| BASIC | $0.00 |
| ADDITIONAL | $0.00 |
| SUBTOTAL | $0.00 |
| MTA | $0.00 |
| SPECIAL | $0.00 |
| | |
| TOTAL PAID | $0.00 |

**TRANSFER TAXES**

| CONSIDERATION | $0.00 |
|---|---|
| | |
| TAX PAID | $0.00 |
| TRANSFER TAX # | 1045 |

SERIAL NUMBER
DWELLING

RECORDING DATE        10/28/2003
        TIME        10:24:00

THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:
TOWN OF GREENBURGH

WITNESS MY HAND AND OFFICIAL SEAL

*Leonard N. Spano*

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

Record & Return to:
THOMAS & AGNES CARVEL FOUNDATIO
ORRICK HERRINGTON & SUTELIFFE LLI
666 FIFTH AVE
NEW YORK, NY 10103

**A-42**

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

SFD
5P

THIS INDENTURE, made the 11th day of AuGuST, 2003

BETWEEN

**REALITIES**
**5 Tudor City Place, Suite 109**
**New York, New York 10017 USA**
party of the first part, and

**THE THOMAS AND AGNES CARVEL FOUNDATION**
**35 East Grassy Sprain Road**
**Yonkers, New York 10710**
party of the second part.

WITNESSETH, that the party of the first part, pursuant to Order of the Surrogate's Court of the State of New York, County of Westchester, dated April 16, 2003, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

**See SCHEDULE A annexed hereto.**

```
See above-referenced Order of the Surrogate's Court dated
April 16, 2003, a certified copy of which is to be recorded
simultaneously herewith.

See also Decree of the Surrogate's Court of Westchester County,
File No. 3285/1990 and 2165/1998, dated July 8, 2002, whereby
certain purported conveyances by "Realities" to Lartrym were
voided.  A certified copy of said Decree is to be recorded
simultaneously herewith.
```

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.  The word "party" shall be construed as if it read "parties" whenever the sense of this Indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____

William Rizzo    Rehm
**Acting Commissioner/Sheriff**
**Westchester County**

**For Realities**
**As Per Court Order**

Standard N.Y.B.T.U. Form 8001- Bargain and Sale Deed, without Covenant against Grantor's Acts – Uniform Acknowledgment Form 3284

**A-43**

# New York Title
### Research Corporation

Title No: **NYT6543**

### Schedule A Description Lot 33

ALL that certain plot, piece, or parcel of land, situate, lying, and being in the Town of Greenburgh, County of Westchester and State of New York, and being more particularly bounded and described as follows:

BEGINNING at a point on the northerly line of Central Park Avenue, which point is distant 358.74 feet northeasterly from the point of intersection of the said northerly line of Central Park Avenue with the easterly line of Washington Avenue, as measured along the said northerly line of Central Park Avenue;

RUNNING THENCE along other lands of the Town of Greenburgh, North 35 degrees 28 minutes 11 seconds West 138.17 feet to a corner;

THENCE at right angles to the last described course along other lands of the Town of Greenburgh North 54 degrees 31 minutes 49 seconds East 150.00 feet to a corner;

THENCE parallel to the first described course and at all points 150 feet distant therefrom along lands of the Town of Greenburgh South 35 degrees 28 minutes 11 seconds East 125.04 feet to the said northerly line of Central Park Avenue;

THENCE along the said northerly line of Central Park Avenue South 48 degrees 57 minutes West 101.95 feet to a point of curve;

THENCE still along the said northerly line of Central Park Avenue on a curve to the right having a radius of 772.68 feet, a distance of 48.66 feet to the point or place of BEGINNING.

BEING also known and designated as a portion of Lot 41, Block 1688, Sheet 35 (Vol. 8) on the Tax Assessment map of the Town of Greenburgh and being the same premises conveyed to the party of the first part by deed dated May 1, 1943 and recorded in June 1, 1943 in Liber 4069 of Deeds page 183.

SUBJECT to a right of way over the existing driveway crossing the northwesterly corner of the above described property and leading from Central Park Avenue to the present residence situated on other property of the party of the first part, in the rear of the above described parcel until said residence is sold by the Town of Greenburgh, when said right of way shall cease, unless the Town of Greenburgh shall, prior to such sale, provide other means of access to said residence, in which event said right of way shall cease.

Section 30 Sheet 23 Block 8231 Lot 33.

# New York Title
### Research Corporation

### Schedule A Description Lot 34

ALL that certain plot, piece, or parcel of land, situate, lying, and being in the Town of Greenburgh, County of Westchester and State of New York, and being known and designated as Lot No. 1 on a certain map entitled, "Subdivision of Property of Henry F. and Beatrice A. Tatro", dated December 19, 1947, and filed in the Register's Office of Westchester County, now County Clerk's Office, Division of Land records, on October 22, 1947, as Map No. 6452, which plot is more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of Central Park Avenue where said northerly side of Central Park Avenue is intersected by the division line between premises now or formerly of one Carvel and premises in question;

RUNNING THENCE North 35 degrees 28 minutes 11 seconds West along the southwesterly side of said Carvel's land 138.17 feet to the northerly corner of said Lot No. 1;

THENCE South 59 degrees 04 minutes 15 seconds west along said northwesterly line of said Lot No. 1, 50.15 feet to the northerly corner of Lot No. 2 on said map and premises heretofore conveyed by the parties of the first Part to Capitol Distributors Corp. by deed dated April 9, 1948;

THENCE South 35 degrees 28 minutes 11 seconds East along the division line between Lots No. 1 and 2 on said map and along the northeasterly line of said premises so conveyed to Capitol Distributors Corp. 143.11 feet to the northerly side of Central Park Avenue;

THENCE Easterly along the northerly line of Central Park Avenue on a curve to the left having a radius of 772.68 feet 50.01 feet to the point or place of BEGINNING.

Section 30, Sheet 23 Block 8231 Lot 34.

# New York Title
### Research Corporation

Title No: **NYT6544**

### Schedule A Description

ALL that certain plot, piece, or parcel of land, *situate*, lying, and being in the Town of Greenburgh, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at an iron rod set, said iron rod marking a southeasterly corner of the herein described parcel and the northwesterly corner of Parcel II of the lands of Realities as described in Liber 10963 of Deeds at Page 127, said iron rod being located North 35 degrees 28 minutes 11 seconds West 143.23 feet from a railroad spike set in the westerly road line of Central Avenue;

THENCE along the lands of Capitol Distributors Corp. as described in Liber 4621 of Deeds at Page 362 North 35 degrees 28 minutes 11 seconds West 57.77 feet to an iron rod set, South 61 degrees 52 minutes 57 seconds West 151.25 feet to an iron rod set and North 35 degrees 28 minutes 11 seconds West 62.83 feet to an iron rod set;

THENCE along Lots 12 and through 17 as shown on Filed Map No. 6452 North 49 degrees 16 minutes 44 seconds East 301.26 feet to an iron pipe found, said iron pipe being located North 35 degrees 28 minutes 11 seconds South 50.00 feet and South 49 degrees 16 minutes 44 seconds 50.21 feet from an iron pipe found marking the southeast corner of Lot No. 19 as shown on Filed Map No. 6452;

THENCE along the lands of Leisure Unlimited, Inc., as described in Liber 7469 of Deeds at Page 386 South 35 degrees 28 minutes 11 seconds East 171.50 feet to an iron rod set;

THENCE along the lands of Realities as described in Liber 10963 of Deeds at page 127 South 54 degrees 31 minutes 49 seconds West 100.00 feet to an iron rod set and South 59 degrees 04 minutes 15 seconds West 50.15 feet to the point or place of BEGINNING.

CONTAINING 0.84 Acres of land.

BEING and intended to be a portion of lands as described in a deed dated September 12, 1968 from Dari-Freeze Stores, Inc. to Thomas Carvel and Agnes Carvel and recorded in the Westchester County Clerk's Office in Liber 7258 of Deeds at Page 44.

TOGETHER WITH and subject to a 20 foot wide drainage easement as described in an easement agreement dated December 15, 1986 between Thomas Carvel and Agnes Carvel and Eric B. Kaviar and Ellen S. Ackerman and recorded in the Westchester County Clerk's Office in Liber 9123 of Deeds at Page 119 a portion of which is described as follows;

BEGINNING at the southeasterly corner of the lands of Eric B. Kaviar as described in Liber 8856 of Deeds at Page 179, said parcel designated as Lot No. 16 as shown on Filed Map 6452, said point of being located South 25 degrees 28 minutes 11 seconds East 102.84 feet from South Washington Avenue.

Section 30 Sheet 23 Block 8231 Lot 6.

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of _____ ss:

On the ____ day of ____ in the year ____
before me, the undersigned, personally appeared

personally known to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of _____ ss:

On the ____ day of ____ in the year ____
before me, the undersigned, personally appeared

personally known to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of NEW YORK, WESTCHESTER COUNTY ss:

On the 11th day of August in the year 2003 before me, the undersigned, personally appeared
WILLIAM REHM
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

Harrisonville in New York
(insert the City or other Political Subdivision)   (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

REGISTERED
NO. 01CA5031209
COMMISSION
EXPIRES
AUG. 1, 06
NOTARY PUBLIC, STATE OF NEW YORK

BARGAIN AND SALE DEED
WITHOUT COVENANT AGAINST GRANTOR'S ACTS

Title No. NYT65434 NYT6544

REALITIES

TO

THE THOMAS AND AGNES CARVEL FOUNDATION

RECORD AT THE REQUEST OF
New York Title Research
550 Mamaroneck Ave
Suite 401
Harrison NY 10528
Title No. NYT65434NYT6544

DISTRICT

SECTION 30 , VOL. 8 , SHEET 23

BLOCK   8231

LOT   33, 34, 6

COUNTY OR TOWN GREENBURGH WESTCHESTER

STREET ADDRESS

Recorded at Request of
THE JUDICIAL TITLE INSURANCE AGENCY LLC

RETURN BY MAIL TO:

The Thomas and Agnes Carvel Foundation
c/o Steven J. Fink, Esq.
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue, New York, NY 10103

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

01/19/2005 12:18 FAX  12125063583          ORRICK                                    ☒002/004

# State of New York,
## Court of Appeals

*At a session of the Court, held at Court of Appeals Hall in the City of Albany on the* ............thirty-first............ *day of* ............August...................... 2004

**Present,** HON. JUDITH S. KAYE, *Chief Judge, presiding.*

2-10        Mo. No.   485
In the Matter of Thomas Carvel,
Deceased.

Thomas and Agnes Carvel
Foundation,
                    Respondent;
Pamela Carvel et al.,
                    Appellants,
Robert M. Davis, et al.,
                    Respondents.

A motion for leave to appeal to the Court of Appeals in the above cause having heretofore been made upon the part of the appellants herein and papers having been submitted thereon and due deliberation having been thereupon had, it is

ORDERED, that the said motion be and the same hereby is denied.

Stuart M. Cohen
Stuart M. Cohen
Clerk of the Court

769 N.Y.S.2d 402 (Mem)
2003 N.Y. Slip Op. 20000
(Cite as: 2 A.D.3d 847, 769 N.Y.S.2d 402)
<KeyCite History>

Page 1

Supreme Court, Appellate Division,
Second Department, New York.

In the Matter of Thomas CARVEL, deceased.
Thomas and Agnes Carvel Foundation,
respondent-appellant;
Pamela Carvel, et al., appellants-respondents,
Robert M. Davis, et al., respondents-
respondents, et al., respondents.

Dec. 29, 2003.

McCarthy, Fingar, Donovan, Drazen &
Smith, LLP, White Plains, N.Y. (Robert M.
Reid of counsel), for appellant-respondent
Pamela Carvel and Blank Rome, LLP, New
York, N.Y. (Eve Rachel Markewich of
counsel), for appellant-respondent Leonard M.
Ross (one brief filed).

Orrick, Herrington & Sutcliffe, LLP, New
York, N.Y. (Steven J. Fink, Tara J. Myslinski
, and Laurie E. Puhn of counsel), for
respondent-appellant.

Herbert F. Roth, c/o Andreas Holding Co.,
Yonkers, N.Y., respondent-respondent pro se.

In consolidated proceedings, inter alia, for
restraints on the conveyance of certain funds
and real property, (1) Pamela Carvel and
Leonard M. Ross separately appeal from
stated portions of a decree of the Surrogate's
Court, Westchester County (Scarpino, S.),
entered July 8, 2002, which, after a nonjury
trial, inter alia, determined that an
agreement between Thomas Carvel and
Agnes Carvel dated February 13, 1988, is
valid and enforceable, and (2) Thomas and
Agnes Carvel Foundation cross-appeals from
so much of the same decree as denied its
application for a direct distribution of certain
purported assets of the Estate of Agnes
Carvel in its capacity as a creditor of the
Estate of Agnes Carvel pursuant to SCPA
1610.

ORDERED that the decree is affirmed insofar
as appealed from, without costs or
disbursements; and it is further,

ORDERED that the cross appeal by Thomas
and Agnes Carvel Foundation is dismissed,
without costs or disbursements, for failure to
perfect the same in accordance with the rules
of this court (see 22 NYCRR 670.8[c], [e]).

In 1988 Thomas Carvel and his wife Agnes
executed identical wills. The wills created a
testamentary trust for the benefit of the
surviving spouse, the income of which was to
be paid to the surviving spouse and the
remainder to Thomas and Agnes Carvel
Foundation (hereinafter the Foundation), the
sole residuary beneficiary. **403 In addition,
Thomas and Agnes Carvel entered
into a reciprocal agreement in which they
agreed that the surviving party to the
agreement would not, subsequent to the death
of the other party, make "gratuitous"
transfers or in any way change the provisions
of his or her will.

The Foundation, which seeks to enforce the
agreement entered into by Thomas Carvel
and Agnes Carvel, both now deceased, and to
recover funds and real property transferred by
the Carvels, correctly argues that it has
standing to do so since it is a third-party
beneficiary of the agreement (see Fourth Ocean
Putnam Corp. v. Interstate Wrecking Co., 66
N.Y.2d 38, 495 N.Y.S.2d 1, 485 N.E.2d 208;
Fenton v. Fenton, 253 A.D.2d 844, 678 N.Y.S.2d
858). Also, the proceedings to enforce the
agreement were commenced within six years
of September 6, 1994, the date when Agnes
Carvel transferred four parcels of real
property to Realities, a Delaware Business
Trust, in violation of the agreement, and the
earliest date upon which a breach of the
agreement occurred. Accordingly, the
proceedings were timely commenced (see Levy
v. Luss & Co., 267 A.D.2d 213, 699 N.Y.S.2d
438).

The remaining contentions of Pamela Carvel
and Leonard M. Ross are without merit.
Further, the Foundation's claims as to the
court's refusal to dismiss a counterclaim and
certain affirmative defenses are academic
given the court's ultimate resolution of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

769 N.Y.S.2d 402 (Mem)                                                    **Page  2**
(Cite as: 2 A.D.3d 847, 769 N.Y.S.2d 402, **402 )

case.

KRAUSMAN, J.P., McGINITY, TOWNES
and COZIER, JJ., concur.

769 N.Y.S.2d 402 (Mem), 2 A.D.3d 847, 2003
N.Y. Slip Op. 20000

END OF DOCUMENT

Copr. • West 2004 No Claim to Orig. U.S. Govt. Works





*4324102670DR6*

| Control Number | WIID Number | Instrument Type |
|---|---|---|
| 432410267 | 2003241-000128 | ODR |



### WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE
### (THIS PAGE FORMS PART OF THE INSTRUMENT)
### *** DO NOT REMOVE ***

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**

**TYPE OF INSTRUMENT** ODR - ORDER
**FEE PAGES** 34          **TOTAL PAGES** 34

| RECORDING FEES | |
|---|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $102.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $0.00 |
| TP-584 | $0.00 |
| CROSS REFERENCE | $1.00 |
| MISCELLANEOUS | $0.00 |
| | |
| TOTAL FEES PAID | $128.00 |

| MORTGAGE TAXES | |
|---|---|
| MORTGAGE DATE | |
| MORTGAGE AMOUNT | $0.00 |
| EXEMPT | |
| | |
| YONKERS | $0.00 |
| BASIC | $0.00 |
| ADDITIONAL | $0.00 |
| SUBTOTAL | $0.00 |
| MTA | $0.00 |
| SPECIAL | $0.00 |
| | |
| TOTAL PAID | $0.00 |

| TRANSFER TAXES | |
|---|---|
| CONSIDERATION | $0.00 |
| | |
| TAX PAID | $0.00 |
| TRANSFER TAX # | |

SERIAL NUMBER
DWELLING

**RECORDING DATE** 10/28/2003
**TIME** 10:24:00

**THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:**

WITNESS MY HAND AND OFFICIAL SEAL

*Leonard N. Spano*

LEONARD N. SPANO
WESTCHESTER COUNTY CLERK

Record & Return to:
THOMAS & AGNES CARVEL FOUNDATION
C/O STEVEN J FINK ORRICK HERRINGTC
666 FIFTH AVE
NEW YORK, NY 10103

A-51

At the Surrogate's Court of the State
of New York, County of Westchester, held at
the Courthouse located at 140 Grand Street,
White Plains, New York, on the _16_ day of
_April_, 2003.

PRESENT:    HON. ANTHONY A. SCARPINO, JR.
            Surrogate

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

| | |
|---|---|
| In the Matter of the Application of THE THOMAS AND AGNES CARVEL FOUNDATION, as remainderman under the Last Will and Testament of THOMAS CARVEL, deceased, for a restraint on the conveyance or encumbrance of certain real property | FILE NO. 2165/1998 <br><br> **ORDER** |

Petitioner The Thomas and Agnes Carvel Foundation (the "Foundation") having

moved this court for an order (1) directing the Sheriff of Westchester County, pursuant to New

York Civil Practice Law and Rules ("CPLR") § 5107, to convey to the Foundation certain real

properties located within Westchester County; (2) granting a writ of assistance, pursuant to

RPAPL § 221, requiring the Sheriff of Westchester County to put the Foundation in possession

of those properties; and (3) conveying to the Foundation certain real properties located within the

State of Florida;

WHEREAS, the Court having entered a Decision after Trial in this proceeding

and a related proceeding dated and filed on April 1, 2001 (the "Decision"), and a Decree with

respect to the Decision, dated and filed on July 8, 2002 (the "Decree");

WHEREAS, the Court having directed in the Decree that "Realities" and

Realities, a Delaware Business Trust ("Realities DBT") convey to the Foundation, within 20

days after service upon them of notice of entry of the Decree, title to the properties described in

**A-52**

the following conveyances: (a) Indenture made by Realities to Lartrym Services, Inc. and recorded in Westchester County in Liber 12039, page 338, with respect to Agnes Carvel's former residence located on Winding Farm Road, Ardsley, New York, (b) Indenture made by Realities to Lartrym Services, Inc. and recorded in Palm Beach County, Florida in Book 10493, page 1878, with respect to Agnes Carvel's former residence located at 265 North County Club Drive, Atlantis, Florida; (c) Indenture from Realities to Lartrym Services, Inc. and recorded Palm Beach County, Florida in Book 10493, page 1882, with respect to a residence located at 228 Orange Tree Drive, Atlantis, Florida; and (d) Indenture made by Realities to Lartrym Services, Inc. and recorded in Westchester County, New York in Liber 12049, page 109, with respect to a property located at 95 South Central Avenue, Hartsdale, New York ((a) and (d) shall be referred to as the "New York Properties," (b) and (c) shall be referred to as the "Florida Properties," and (a), (b), (c), and (d) shall be referred to collectively as the "Realities Properties"); and

WHEREAS, it appearing that the Foundation served notice of entry of the Decree on the parties to this proceeding on July 15, 2002; and

WHEREAS, it appearing that neither "Realities" nor Realities DBT has conveyed title to the Realities Properties, or any of them, to the Foundation; and

WHEREAS, upon reading the Foundation's Notice of Motion dated October 28, 2002; the Affidavit of Steven J. Fink sworn to on October 28, 2002 and the exhibits thereto; the Memorandum of Law in support of the motion; the Affirmation of Anthony J. Constantini in Opposition to the motion, sworn to on November 6, 2002; the Foundation's Reply Memorandum of Law dated November 12, 2002; all other pleadings and prior proceedings had herein and upon the Decision of this Court dated March 28, 2003 granting the Foundation's motion in its entirety; it is hereby

ORDERED that the Sheriff of Westchester County, upon service of a certified copy of this Order upon himself, be and hereby is directed, in the names of "Realities" and

-2-

**A-53**

Realities DBT, to execute and deliver to the Foundation bargain and sale deeds without

covenants, in the forms annexed hereto as Exhibits 1-4, respectively, in respect of each of the

New York Properties (the "Deeds") together with all documentation required to convey to the

Foundation title to the New York Properties, including, without limitation, Form TP584 and an

Equalization and Assessment Form; and it is further

      ORDERED that the Sheriff of Westchester County, be and hereby is ordered,

upon receipt of a certified copy of this Order, to enter upon the New York Properties and eject

therefrom "Realities" and/or Realities DBT and every person holding the same, and put the

Foundation in possession of the New York Properties; and it is further

      ORDERED that the requirement that "Realities" and/or Realities DBT execute

deeds and conveyance documents as a predicate to, or element of, the vesting of title is dispensed

with; and it is further

      ORDERED that each of the Florida Properties is conveyed, by operation of this

Order, to the Foundation; and it is further

      ORDERED that should further applications be required to effectuate this Order in

the State of Florida, those applications shall be made before the appropriate tribunal in the

jurisdiction where the properties are located; and it is further

      ORDERED that nothing contained in this Order shall relieve "Realities" and/or

Realities DBT of the directives set forth in the Decree should their compliance with the Decree

be necessary to implement this Court's prior rulings.


          ENTER:


          _Surrogate_

**A-54**

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT - THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the        day of

BETWEEN
  REALITIES
  5 Tudor City Place Suite 109
  New York, New York 10017 USA

party of the first part, and

THE THOMAS AND AGNES CARVEL FOUNDATION
35 East Grassy Sprain Road
Yonkers, New York 10710

party of the second part,

WITNESSETH, that the party of the first part, pursuant to Order of the Surrogate's Court of the State of New York, County of Westchester, dated _____ 2002, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

  See SCHEDULE A annexed hereto.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____

_____                    _____

Standard N.Y.S.T.U. Form 8001- Bargain and Sale Deed, without Covenant against Grantor's Acts – Uniform Acknowledgment
Form 3264

A-55

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

| State of New York, County of | ss.: | State of New York, County of | ss.: |
|---|---|---|---|

On the    day of    in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

On the    day of    in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

| State (or District of Columbia, Territory, or Foreign Country) of | ss.: |
|---|---|

On the    day of    in the year    before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____    in    _____
(insert the City or other political subdivision)    (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

| DISTRICT | |
|---|---|
| SECTION | 33 |
| BLOCK | 00000 |
| LOT | P58 & P75 |
| COUNTY OR TOWN | GREENBURGH WESTCHESTER |
| STREET ADDRESS | |

**BARGAIN AND SALE DEED**
WITHOUT COVENANT AGAINST GRANTOR'S ACTS

Title No. _____

**REALITIES**

TO

**THE THOMAS AND AGNES CARVEL FOUNDATION**

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

Recorded at Request of
NEW YORK TITLE

RETURN BY MAIL TO:

The Thomas and Agnes Carvel
Foundation c/o Steven J. Fink,
Esq., Orrick, Herrington &
Sutcliffe LLP, 666 Fifth Ave.,
New York, New York 10103

Distributed by
NEW YORK TITLE
Research Corporation
18 Fisher Lane
White Plains, NY 10603
914-468-0015   Fax 914-468-5422
www.nytitle.com

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

**A-56**

# SCHEDULE A

SECTION 33 SHEET 44 BLOCK 09000 LOT P 59
SECTION 33 SHEET 44 BLOCK 00900 LOT P 75

Town of Greenburgh
Westchester County

BEGINNING at a drill hole set in rock on the westerly side of
a roadway known as Eastway, said drill hole being located
from a stone monument found on a curve to the right having a
radius of 229.34 feet and an arc length of 15.01 feet, on a
curve to the right having a radius of 923.58 feet and an arc
length of 113.42 feet, N 64° 16' 29" E 324.14 feet and N 20°
26' 19" E 57.50 feet, said stone monument known as monument
"b" as shown on filed Map No. 7358; thence leaving said
Eastway and along the lands of Mary Anne DeVaune as described
in Liber 7200 of Deeds at Page 725 N 31° 11' 31" W 224.33
feet to an x-cut on a step, S 58° 48' 29" W 6.16 feet, N 31°
11' 31" W 20.13 feet, N 58° 48' 29" E 6.16 feet, N 31° 11'
31" W 100.00 feet to an iron rod set and S 48° 34' 35" W
216.38 feet to an iron rod set; thence along the lands of
Eugene A. Avallone and Adriana Avallone, in part and along
the lands of Hans Jassi and Dorothy Jassi, in part N 41° 34'
01" W 519.22 feet to an iron rod found, said iron rod being
located N 63° 02' 11" E 59.21 feet from an iron rod found;
thence along the lands of Daniel LaRossa and Rose Marie
LaRossa and described in Liber 7138 of Mortgages at Page 748
N 41° 09' 00" E 146.56 feet to an iron rod found; thence

NYS LICENSED LAND SURVEYOR 49403

**A-57**

## Page 3

along the lands of Andrew C. Pansly and Barbara A. Pansly as
described in Liber 7692 of Deeds at Page 134, in part and
along the lands of Richard Greenspan and Janet Greenspan as
described in Liber 7876 of Deeds at Page 651, in part and
along Ridge Road, in Part S 63° 40' 26" E 160.60 feet to an
iron rod set; thence along said Ridge Road N 36° 10' 33" E
126.34 feet to an iron rod set and N 31° 42' 10" E 67.39 feet
to an iron rod set; thence along the lands of Michael McHugh
and Lisa McHugh as described in Liber 9120 of Deeds at Page
179 S 62° 33' 33" E 200.00 feet to an iron rod set and N 31°
38' 47" E 100.32 feet to an iron rod set; thence along Lot
No. 3 and Lot No. 4 as shown on Filed Map No. 21375 S 62° 55'
10" E 266.18 feet to an iron rod set, said iron rod being
located S 36° 44' 25" W 241.04 feet from a stone monument
found; thence along Lots 2-4 as shown on Filed Map No. 23171
S 33° 17' 19" W 245.93 feet to an iron rod set, S 58° 37' 01"
E 19.17 feet to an iron rod set, S 53° 11' 11" E 68.70 feet
to an iron rod set, S 64° 27' 31" E 138.03 feet to an iron
rod set; thence along an old stone wall S 54° 00' 37" E 38.53
feet to the end of said stone wall; thence on a line of no
physical bounds S 61° 39' 26" E 77.10 feet to an iron rod set
(said iron rod was removed on June 17, 1997 by the owner of
Lot No. 3) S 66° 13' 01" E 324.78 feet to an x-cut set on a
large rock in an old stone wall; thence along said wall, in
part S 77° 00' 41" E 84.55 feet to a drill hole set in a rock

· Page 3

ledge  and N 36° 05' 01" E 83.54 feet to an iron rod set;
thence along Eastway S 60° 30' 29" W 630.42 feet to an iron
rod set and S 20° 26' 19" W 137.50 feet to the point or place
of beginning.

CONTAINING: 13.24 acres of land.


Being and intended to be all that certain tract or parcel of
land as described in Liber 10063 of Deeds at Page 131.


Subject to a 30 foot wide access easement described as
follows:

BEGINNING at a point in the westerly side of a roadway known
as Eastway, said point being located N 20° 26' 19" E 137.50
feet and N 60° 30' 29" E 25.90 feet from a drill hole set in
rock; thence leaving said Eastway and through the lands of
Knollties on a curve to the left having a radius of 110.01
feet and an arc length of 289.96 feet and S 36° 04' 09" W
36.33 feet to a point in the northerly line of Mary Anne
Sevanna as described in Liber 7300 of Deeds at Page 735;
thence along said line N 31° 11' 31" W 30.03 feet to an iron
rod set; thence through the lands of Knollties N 36° 04' 09"
E 85.41 feet; thence on a curve to the right having a radius
of 130.01 feet and an arc length of 316.24 feet to a point in
the westerly line of Eastway; thence along the same S 60° 30'
29" W 31.16 feet to the point or place of beginning.

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the          day of

BETWEEN
REALITIES, A DELAWARE BUSINESS TRUST
c/o The Prentice Hall Corporation System, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE 19808-1645
party of the first part, and

THE THOMAS AND AGNES CARVEL FOUNDATION
35 East Grassy Sprain Road
Yonkers, New York 10710

party of the second part,
WITNESSETH, that the party of the first part, pursuant to Order of the Surrogate's Court of the
State of New York, County of Westchester, dated                    2002,
does hereby grant and release unto the party of the second part, the heirs or
successors and assigns of the party of the second part forever.

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the

.See SCHEDULE A annexed hereto.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all
the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the
premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the improvement before using any part of the total of the same for any other
purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so
requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

_____          _____

_____          _____

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of                    ss:        State of New York, County of                    ss:

On the        day of              in the year      On the        day of              in the year
before me, the undersigned, personally appeared    before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of    personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is    satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to    (are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their    me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the    capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which    instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.    the individual(s) acted, executed the instrument.

_____    _____
(signature and office of individual taking acknowledgment)    (signature and office of individual taking acknowledgment)

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of                    ss:

On the        day of              in the year          before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____    _____
(insert the City or other political subdivision)    (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

|  |  |
|---|---|
| DISTRICT |  |
| SECTION | 33 |
| BLOCK | 00000 |
| LOT | P58 + P75 |
| COUNTY OR TOWN | Greenburgh Westchester |
| STREET ADDRESS |  |

**BARGAIN AND SALE DEED**
WITHOUT COVENANT AGAINST GRANTOR'S ACTS

Title No. _____

REALITIES, A DELAWARE BUSINESS TRUST

TO

THE THOMAS AND AGNES CARVEL FOUNDATION

Recorded at Request of
NEW YORK TITLE

RETURN BY MAIL TO:

The Thomas and Agnes Carvel
Foundation c/o Steven J.
Fink, Esq., Orrick, Herrington
& Sutcliffe LLP, 666 Fifth
Ave., New York, New York 10103

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS



Distributed By
NEW YORK TITLE
Research Corporation

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

# SCHEDULE A

SECTION 33 SHEET 45 BLOCK 09000 LOT P 53

SECTION 33 SHEET 45 BLOCK 00900 LOT P 75

Town of Greenburgh
Westchester County

BEGINNING at a drill hole set in rock on the westerly side of
a roadway known as Eastway, said drill hole being located
from a stone monument found on a curve to the right having a
radius of 239.54 feet and an arc length of 13.41 feet, on a
curve to the right having a radius of 923.58 feet and an arc
length of 113.42 feet, N 64° 36' 29" E 326.14 feet and N 30°
26' 19" E 57.50 feet, said stone monument known as monument
"B" as shown on Filed Map No. 7258; thence leaving said
Eastway and along the lands of Mary Anne Devanna as described
in Liber 7200 of Deeds at Page 725 N 31° 11' 31" W 224.55
feet to an x-cut on a step, S 58° 48' 29" W 6.16 feet, N 31°
11' 31" W 20.13 feet, N 58° 48' 29" E 6.16 feet, N 31° 11'
31" W 300.00 feet to an iron rod set and S 48° 34' 25" W
216.38 feet to an iron rod set; thence along the lands of
Eugene A. Avallone and Adriene Avallone, in part and along
the lands of Rosa Jaggi and Dorothy Jaggi, in part N 41° 34'
01" W 319.22 feet to an iron rod found, said iron rod being
located N 63° 03' 11" E 39.21 feet from an iron rod found;
thence along the lands of Daniel LaRossa and Rose Maria
LaRossa and described in Liber 7138 of Mortgages at Page 748
N 41° 09' 00" E 246.36 feet to an iron rod found; thence

A-62

Page 2

along the lands of Andrew C. Panazy and Barbera A. Panazy as described in Liber 7698 of Deeds at Page 134. In part and along the lands of Richard Greenspan and Janet Greenspan as described in Liber 7876 of Deeds at Page 651, in part and along Ridge Road, in Part S 63° 40' 16" E 160.60 feet to an iron rod set; thence along said Ridge Road N 36° 10' 53" E 126.54 feet to an iron rod set and N 31° 41' 10" E 67.39 feet to an iron rod set; thence along the lands of Michael McHugh and Lisa McHugh as described in Liber 9320 of Deeds at Page 179 S 62° 53' 33" E 200.00 feet to an iron rod set and N 31° 38' 47" E 100.32 feet to an iron rod set; thence along Lot No. 5 and Lot No. 4 as shown on Filed Map No. 2t375 S 62° 55' 50" E 266.18 feet to an iron rod set, said iron rod being located S 34° 44' 28" W 241.04 feet from a stone monument found; thence along Lots 2-4 as shown on Filed Map No. 25375 S 33° 17' 19" W 245.53 feet to an iron rod set, S 58° 37' 01" E 19.17 feet to an iron rod set, S 53° 23' 11" E 68.70 feet to an iron rod set, S 64° 27' 31" E 131.03 feet to an iron rod set; thence along an old stone wall S 54° 00' 37" E 38.33 feet to the end of said stone wall; thence on a line of no physical bounds S 61° 59' 36" S 77.10 feet to an iron rod set (said iron rod was removed on June 17, 1997 by the owner of Lot No. 3) S 66° 13' 01" E 324.78 feet to an x-cut set on a large rock in an old stone wall; thence along said wall, in part S 77° 00' 41" E 84.59 feet to a drill hole set in a rock

· Page 3

ledge and S 36° 04' 01" E 83.34 feet to an iron rod set;
thence along Eastway S 60° 30' 29" W 630.42 feet to an iron
rod set and S 30° 26' 19" W 137.30 feet to the point or place
of beginning.

CONTAINING: 15.24 acres of land.

Being and intended to be all that certain tract or parcel of
land as described in Liber 10963 of Deeds at Page 131.

Subject to a 30 foot wide access easement described as
follows:
BEGINNING at a point in the westerly side of a roadway known
as Eastway, said point being located N 30° 26' 19" E 137.30
feet and N 60° 30' 29" E 35.90 feet from a drill hole set in
rock; thence leaving said Eastway and through the lands of
Facilities on a curve to the left having a radius of 110.01
feet and an arc length of 289.96 feet and S 36° 04' 09" W
84.38 feet to a point in the northerly line of Mary Anne
Devanna as described in Liber 7300 of Deeds at Page 715;
thence along said line N 31° 11' 31" W 30.03 feet to an iron
rod set; thence through the lands of Facilities N 36° 04' 09"
E 83.43 feet; thence on a curve to the right having a radius
of 130.01 feet and an arc length of 315.24 feet to a point in
the westerly line of Eastway; thence along the same S 60° 30'
29" W 31.46 feet to the point or place of beginning.

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the          day of

BETWEEN
REALITIES
5 Tudor City Place Suite 109
New York, New York 10017 USA

party of the first part, and
THE THOMAS AND AGNES CARVEL FOUNDATION
35 East Grassy Sprain Road
Yonkers, New York 10710

party of the second part.
WITNESSETH, that the party of the first part, pursuant to Order of the Surrogate's Court of the State of New York, County of Westchester, dated          2002, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

See SCHEDULE A annexed hereto.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

_____          _____

_____          _____

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

| | |
|---|---|
| State of New York, County of                    ss.: | State of New York, County of                    ss.: |
| On the       day of            in the year<br>before me, the undersigned, personally appeared | On the       day of            in the year<br>before me, the undersigned, personally appeared |
| personally known to me or proved to me on the basis of<br>satisfactory evidence to be the individual(s) whose name(s) is<br>(are) subscribed to the within instrument and acknowledged to<br>me that he/she/they executed the same in his/her/their<br>capacity(ies), and that by his/her/their signature(s) on the<br>instrument, the individual(s), or the person upon behalf of which<br>the individual(s) acted, executed the instrument. | personally known to me or proved to me on the basis of<br>satisfactory evidence to be the individual(s) whose name(s) is<br>(are) subscribed to the within instrument and acknowledged to<br>me that he/she/they executed the same in his/her/their<br>capacity(ies), and that by his/her/their signature(s) on the<br>instrument, the individual(s), or the person upon behalf of which<br>the individual(s) acted, executed the instrument. |
| _____<br>(signature and office of individual taking acknowledgment) | _____<br>(signature and office of individual taking acknowledgment) |

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of                                    ss.:

On the       day of            in the year            before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in _____
(insert the City or other political subdivision)        (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

| | |
|---|---|
| DISTRICT | |
| SECTION | 30 |
| BLOCK | 8231 |
| LOT | 33, 34, 6 |
| COUNTY OR TOWN | Greenburgh Westchester |
| STREET ADDRESS | |

**BARGAIN AND SALE DEED**
WITHOUT COVENANT AGAINST GRANTOR'S ACTS

Title No. _____

REALITIES

to

THE THOMAS AND AGNES CARVEL FOUNDATION

Recorded at Request of
NEW YORK TITLE

RETURN BY MAIL TO:

The Thomas and Agens Carvel
Foundation, c/o Steven J.
Fink, Esq., Orrick, Herrington
& Sutcliffe LLP, 666 Fifth Ave.
New York, New York 10103

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS

Distributed By
NEW YORK TITLE
Research Corporation

A-66

## SCHEDULE A

SECTION 30 SHEET 23 BLOCK 08231 LOT 33
SECTION 30 SHEET 23 BLOCK 08231 LOT 34
SECTION 30 SHEET 23 BLOCK 08231 LOT 6

Town of Greenburgh
Westchester County

BEGINNING at a railroad spike set in the westerly roadline of Central Avenue, said railroad spike marking the southwest corner of the herein described parcel and the southeast corner of lands of Capital Distributors, Corp. as described in Liber 4621 of Deeds at Page 162; thence leaving said roadline and along said lands of Capital Distributors, Corp. N 33° 28' 11" W 161.23 feet to an iron rod set; thence along the lands of Thomas Carvel and Agnes Carvel as described in Liber 7153 of Deeds at Page 440 N 59° 04' 15" E 50.15 feet to an iron rod set; thence along the lands of Realticies as described in Liber 10983 of Deeds at Page 127 S 33° 28' 11" E 116.17 feet to the westerly side of said Central Avenue; thence southerly along the same on a curve to the right having a radius of 771.88 feet and an arc length of 50.01 feet to the point or place of beginning.

CONTAINING: 0.18 acre of land.

Being and intended to be all that certain tract or parcel of land designated as Parcel II in a deed dated August 31, 1996 from Agnes Carvel to Realticies, and designated as Lot No. 1 as shown on Filed Map No. 6411.

A-67

Page 1

BEGINNING at a railroad spike set in the westerly roadline of Central Avenue, said railroad spike marking the southwest corner of the herein described parcel and the southeast corner of lands of Realities as described in Liber 10963 of Deeds at Page 127; thence leaving said roadline and along said lands of Realities N 35° 28' 11" W 138.17 feet to an iron rod set; thence along the lands of Thomas Carvel and Agnes Carvel as described in Liber 7233 of Deeds at Page 440 in part and along the lands of Leisure Unlimited, Inc. as described in Liber 7449 of Deeds at Page 385, in part N 54° 31' 49" E 130.00 feet to an iron rod set; thence continuing along said lands of Leisure Unlimited, Inc. S 35° 38' 11" E 111.04 feet to an railroad spike set in the westerly roadline of said Central Avenue, said railroad spike being located S 45° 37' 00" W 166.49 feet from a bolt found marking the southeast corner of said lands of Leisure Unlimited, Inc.; thence along the westerly line of Central Avenue N 48° 37' 00" W 101.91 feet to a point; thence on a curve to the right having a radius of 771.88 feet and an arc length of 48.88 feet to the point or place of beginning.

CONTAINING: 0.48 acre of land.

Being and intended to be all that certain tract or parcel of land designated as Parcel 1 in a deed dated August 31, 1994 from Agnes Carvel to Realities.

A-68

Page 3

BEGINNING at an iron rod set, said iron rod marking a
southeasterly corner of the herein described parcel and the
northwesterly corner of Parcel II of the lands of Realities
as described in Liber 10963 of Deeds at Page 127, said iron
rod being located N 33° 38' 11" W 143.23 feet from a railroad
spike set in the westerly roadline of Central Avenue; thence
along the lands of Capitol Distributors, Corp. as described
in Liber 4821 of Deeds at Page 362 N 35° 28' 11" W 57.77 feet
to an iron rod set, S 61° 32' 37" W 151.25 feet to an iron
rod set and N 33° 28' 11" W 61.83 feet to an iron rod set;
thence along Lots 12 through 17 as shown on Filed Map No.
6432 N 49° 16' 44" E 301.28 feet to an iron pipe found, said
iron pipe being located N 33° 28' 11" W 30.00 feet and S 49°
16' 44" W 30.21 feet from an iron pipe found marking the
southeast corner of Lot No. 14 as shown on Filed Map No.
6432; thence along the lands of Leisure Unlimited, Inc. as
described in Liber 7489 of Deeds at Page 366 S 35° 28' 11" E
171.50 feet to an iron rod set; thence along the lands of
Realities as described in Liber 10963 of Deeds at Page 127 S
34° 31' 49" W 100.00 feet to an iron rod set and S 35° 04'
15" W 50.15 feet to the point or place of beginning.
CONTAINING: 0.84 acre of land.


Being and intended to be a portion of lands as described in

Page 4

a deed dated September 12, 1968 from Dari-Freeze Stores, Inc. to Thomas Carvel and Agnes Carvel and recorded in the Westchester County Clerk's Office in Liber 7253 of Deeds at Page 440.

Together with and subject to a 20 foot wide drainage easement as described in an easement agreement dated December 13, 1966 between Thomas Carvel and Agnes Carvel and Eric B. Kaviar and Ellen S. Ackerman Kaviar and recorded in the Westchester County Clerk's Office in Liber 9123 of Deeds at Page 119 a portion of which is described as follows:

BEGINNING at the southeasterly corner of the lands of Eric B. Kaviar and Ellen S. Ackerman Kaviar as described in Liber 8816 of Deeds at Page 179, said parcel designated as Lot No. 18 as shown on Filed Map No. 6452, said point being located N 35° 28' 11" E 102.84 feet from South Washington Avenue; thence southerly along Lot No. 18 through Lot No. 13 S 49° 16' 44" W 155.00 feet; thence through the lands of Thomas Carvel and Agnes Carvel S 40° 43' 16" E 20.00 feet, N 49° 16' 44" E 200.00 feet and N 40° 43' 16" W 20.00 feet to a point in the easterly line of said lands of Kaviar; thence along the same S 49° 16' 44" W 50.50 feet to the point of beginning.

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the _____ day of _____

BETWEEN

REALITIES, A DELAWARE BUSINESS TRUST
c/o The Prentice Hall Corporation System, Inc.
2711 Centerville Road, Suite 400
Wilmington, DE 19808-1645
party of the first part, and

THE THOMAS AND AGNES CARVEL FOUNDATION
35 East Grassy Sprain Road
Yonkers, New York 10710

party of the second part,
WITNESSETH, that the party of the first part, pursuant to Order of the Surrogate's Court of the
State of New York, County of Weschester, dated _____, 2002,
does hereby grant and release unto the party of the second part, the heirs or
successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate,
lying and being in the

See SCHEDULE A annexed hereto.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all
the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the
premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the improvement before using any part of the total of the same for any other
purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so
requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

_____          _____

_____          _____

Standard N.Y.B.T.U. Form 8001- Bargain and Sale Deed, without Covenant against Grantor's Acts – Uniform Acknowledgment
Form 3254

*EX. 4*

A-71

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE

State of New York, County of                    ss:

On the        day of              in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of                    ss:

On the        day of              in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of which
the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE

State (or District of Columbia, Territory, or Foreign Country) of                    ss:

On the        day of              in the year           before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and
that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted,
executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in _____
(insert the City or other political subdivision)    (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

DISTRICT

SECTION    30

BLOCK    8231

LOT    33, 34, 6

COUNTY OR TOWN    Greenburgh Westchester

STREET ADDRESS

**BARGAIN AND SALE DEED**
WITHOUT COVENANT AGAINST GRANTOR'S ACTS

Title No. _____

REALITIES, A DELAWARE BUSINESS TRUST

TO
THE THOMAS AND AGNES CARVEL FOUNDATION

Recorded at Request of
NEW YORK TITLE

RETURN BY MAIL TO:

The Thomas and Agnes Carvel
Foundation, c/o Steven J. Fink,
Esq., Orrick, Herrington &
Sutcliffe LLP, 666 Fifth Ave.
New York, New York 10103

STANDARD FORM OF NEW YORK BOARD OF TITLE UNDERWRITERS



Distributed By
NEW YORK TITLE
Research Corporation
16 Poloer Lane
White Plains, NY 10603

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

## SCHEDULE A

SECTION 30  SHEET 23  BLOCK 08231  LOT 33
SECTION 30  SHEET 23  BLOCK 08231  LOT 34
SECTION 30  SHEET 23  BLOCK 08231  LOT 6

Town of Greenburgh
Westchester County

BEGINNING at a railroad spike set in the westerly roadline of
Central Avenue, said railroad spike marking the southwest
corner of the herein described parcel and the southeast
corner of lands of Capital Distributors, Corp. as described
in Liber 6621 of Deeds at Page 262; thence leaving said
roadline and along said lands of Capital Distributors, Corp.
N 35° 28'·11" W 142.23 feet to an iron rod set; thence along
the lands of Thomas Carvel and Agnes Carvel as described in
Liber 7238 of Deeds at Page 440 N 39° 04' 15" E 30.15 feet to
an iron rod set; thence along the lands of Realities as
described in Liber 10963 of Deeds at Page 137 S 35° 28' 11" E
138.17 feet to the westerly side of said Central Avenue;
thence southerly along the same on a curve to the right
having a radius of 773.68 feet and an arc length of 30.01
feet to the point or place of Beginning.
CONTAINING: 0.14 acre of land.

Being and intended to be all that certain tract or parcel of
land designated as Parcel II in a deed dated August 31, 1994
from Agnes Carvel to Realities, and designated as Lot No. 6
as shown on Filed Map No. 6412.

A-73

Page 2

BEGINNING at a railroad spike set in the westerly roadline of Central Avenue, said railroad spike marking the southwest corner of the herein described parcel and the southeast corner of lands of Realities as described in Liber 10961 of Deeds at Page 127; thence leaving said roadline and along said lands of Realities N 35° 23' 11" W 138.17 feet to an iron rod set; thence along the lands of Thomas Carvel and Agnes Carvel as described in Liber 7254 of Deeds at Page 440, in part and along the lands of Leisure Unlimited, Inc. as described in Liber 7449 of Deeds at Page 188, in part N 54° 31' 49" E 150.00 feet to an iron rod set; thence continuing along said lands of Leisure Unlimited, Inc. S 35° 23' 11" E 125.04 feet to an railroad spike set in the westerly roadline of said Central Avenue, said railroad spike being located S 48° 57' 00" W 188.49 feet from a bolt found marking the southeast corner of said lands of Leisure Unlimited, Inc.; thence along the westerly line of Central Avenue S 48° 57' 00" W 101.95 feet to a point; thence on a curve to the right having a radius of 771.48 feet and an arc length of 48.66 feet to the point or place of beginning.

CONTAINING: 0.48 acre of land.

Being and intended to be all that certain tract or parcel of land designated as Parcel 1 in a deed dated August 31, 1994 from Agnes Carvel to Realities.

Page 3

BEGINNING at an iron rod set, said iron rod marking a
southeasterly corner of the herein described parcel and the
northwesterly corner of Parcel 11 of the lands of Realities
as described in Liber 10963 of Deeds at Page 137, said iron
rod being located N 35° 28' 11" W 143.23 feet from a railroad
spike set in the westerly roadline of Central Avenue; thence
along the lands of Capital Distributors, Corp. as described
in Liber 4621 of Deeds at Page 362 N 33° 28' 11" W 57.77 feet
to an iron rod set, S 61° 52' 17" W 131.23 feet to an iron
rod set and N 33° 28' 11" W 63.83 feet to an iron rod set;
thence along Lots 13 through 17 as shown on filed Map No.
6452 N 49° 16' 44" E 301.16 feet to an iron pipe found, said
iron pipe being located N 35° 16' 11" W 30.00 feet and S 49°
16' 44" W 30.21 feet from an iron pipe found marking the
southeast corner of Lot No. 19 as shown on filed Map No.
6452; thence along the lands of Leisure Unlimited, Inc. as
described in Liber 7469 of Deeds at Page 386 S 35° 28' 11" E
171.50 feet to an iron rod set; thence along the lands of
Realities as described in Liber 10963 of Deeds at Page 137 S
54° 31' 49" W 100.00 feet to an iron rod set and S 39° 04'
13" W 30.13 feet to the point or place of beginning.
CONTAINING: 0.44 acre of land.


Being and intended to be a portion of lands as described in

A-75

Page 4

a deed dated September 12, 1948 from Dari-Freeze Stores, Inc.
to Thomas Carvel and Agnes Carvel and recorded in the
Westchester County Clerk's Office in Liber 7258 of Deeds at
Page 440.

Together with and subject to a 20 foot wide drainage easement
as described in an easement agreement dated December 13, 1984
between Thomas Carvel and Agnes Carvel and Eric B. Kavlar and
Ellen S. Ackerman Kavlar and recorded in the Westchester
County Clerk's Office in Liber 9123 of Deeds at Page 119 a
portion of which is described as follows:

BEGINNING at the southeasterly corner of the lands of Eric B.
Kavlar and Ellen S. Ackerman Kavlar as described in Liber
8856 of Deeds at Page 179, said parcel designated as Lot No.
16 as shown on Filed Map No. 6472, said point being located N
35° 18' 31" E 102.84 feet from South Washington Avenue;
thence southerly along Lot No. 15 through Lot No. 12 S 49°
16' 44" W 180.00 feet; thence through the lands of Thomas
Carvel and Agnes Carvel S 40° 43' 16" E 20.00 feet, N 49° 16'
44" E 200.00 feet and N 40° 43' 16" W 20.00 feet to a point
in the easterly line of said lands of Kavlar; thence along
the same S 49° 16' 44" W 20.00 feet to the point of
Beginning.

MAR 31 2003 11:27 FR KENT HAZZARD-MCGOVERN 9149484721 TO 12125065151    P.02/06

**SURROGATE'S COURT: WESTCHESTER COUNTY**

In the Matter of the Application of THE THOMAS
AND AGNES CARVEL FOUNDATION, as
remainderman under the Last Will and Testament of
THOMAS CARVEL, deceased, for a restraint on the
conveyance or encumbrance of certain real property

**DECISION**
**File No. 2165/1998**

**SCARPINO - S.**

In this proceeding for a restraint on the conveyance or encumbrance of Real

Property, the petitioner, The Thomas and Agnes Carvel Foundation (the "Foundation")

seeks an order: (i) pursuant to CPLR 5107 and RPAPL 221 directing the Sheriff of

Westchester County to convey to the Foundation and put the Foundation in possession

of certain real property in Westchester County, and (ii) conveying to the Foundation certain

real property in the state of Florida.  For the reasons hereinafter stated, the motion is

granted in all respects.

By Decision and Decree after trial dated April 1, 2002 and July 8, 2002 respectively,

the Court granted the underlying petition and awarded title to four properties that are the

subject of this proceeding to the Foundation.  The Decree expressly ordered that within

twenty (20) days after service of notice of entry of the Decree, the respondent, Realities

and Realities DBT ("Realities") were to execute and deliver to the Foundation, deeds and

related documents conveying each of the New York and Florida properties from the

respondent to the Foundation. To date, Realities and Realities DBT have failed to convey

these properties.

Realities opposed the application claiming it was premature in light of its motion for

leave to reargue, or to vacate or modify this Court's above referenced Decision and

*EX. B*

A-77

MAR 31 2003 11:29 FR KENT HAZZARD-MCGOVERN  9149484721 TO 12125065151    P.03/05

Decree. However, that motion was denied by Decision and Order dated December 23, 2002. Nevertheless, there is still no indication that respondent has delivered the deeds and other conveyance documents to the Foundation.

CPLR 5107 authorizes "[t]he court [to] require the sheriff to convey real property in conformity with its directions". Where a party fails to convey real property in conformity with a Court Order, "the sheriff is empowered to make a deed in behalf of the recalcitrant defendant" (David D. Siegel, Practice Commentaries, CPLR 5107 (McKinney's 1997). Similarly, pursuant to RPAPL 221, the Court may enter an Order in the nature of a writ of assistance requiring the Sheriff of the county where the property is located to deliver possession of property to the party entitled thereto. (see, DeSantis v White Rose Assocs., 152 Misc.2d 567). "The determination whether to grant a writ of assistance lies within the discretion of the trial court, and it must give consideration to the relative equities of the situation". (Barett v Barett, 284 AD2d 423).

In the case at hand, the Court has awarded title to the four properties to the Foundation and directed the respondent to execute and deliver deeds and other conveyance documents for filing and recording. In reliance upon the Court's Decree, the Foundation has paid in excess of $270,000 in real estate taxes, interest and penalties to protect the properties from foreclosure. Meanwhile, respondent has not advanced any valid reason for its continued refusal to comply with the Decree. Clearly, the equities weigh in favor of the petitioner.

The motion is accordingly granted in all respects. The Sheriff of Westchester County, upon service of a certified copy of the Order to be made herein, is directed, in the names of Realties and Realties DBT, to execute and deliver to the Foundation, bargain

2

**A-78**

MAR 31 2003 11:28 FR KENT HAZZARD-MCGOVERN  9149484721 TO 12125065151          P.04/06

and sale deeds without covenants, in the forms annexed to the Petition as Exhibits A and B, in respect of the New York Properties together with all documentation required to convey title to the New York Properties to the Foundation, including Form TP584 and an Equalization and Assessment form. Upon receipt of a certified copy of the Order to be made herein, the Sheriff of Westchester County shall enter upon the New York properties and eject therefrom Realities and/or Realities DBT and every person holding the same and put the Foundation in possession of the New York properties. Finally, the Florida properties shall be conveyed to the Foundation by operation of the Order to be made herein, and the requirement that Realities and/or Realities DBT execute deeds and conveyance documents as a predicate to, or element of, the vesting of title is dispensed with. Further applications as may be required to effectuate this Court's rulings in the State of Florida shall be made before the appropriate tribunal in the jurisdiction where the properties are located. Nothing contained herein shall relieve Realities and/or Realities DBT of the directives set forth in the Decree of the Court dated July 8, 2002 should its compliance with that Decree be necessary to implement this Court's prior rulings.

Settle Order.

DATED:      White Plains, New York
            March 28, 2003

HON ANTHONY A. SCARPINO, JR
Westchester County Surrogate

3

A-79

ONE INFO- Fax Received: 03/31/2003 11:06AM * Pg 5/6
MAR 31 2003 11:28 FR KENT HAZZARD-MCGOVERN   9149484721 TO 12125065151    P.05/06

TO:   Anthony J. Constantini, Esq.
      Duane, Morris LLP
      380 Lexington Ave.
      New York, New York 10168

      Laura Werner, Esq.
      Attorney General of the State of New York
      Department of Law
      120 Broadway
      New York, NY 10271

      Robert M. Redis, Esq.
      McCarthy, Fingar, Donovan, Drazen & Smith, L.L.P.
      11 Martine Avenue, 12th Floor
      White Plains, New York 10606-1934

      Eve Rachel Markewich, Esq.
      Blank Rome Tenzer Greenblatt LLP
      The Chrysler Building
      405 Lexington Avenue
      New York, NY 10174

      Joel Martin Aurnou, Esq.
      180 East Post Road
      White Plains, New York 10601-4910

      Katharine Wilson Conroy, Esq.
      Kent Hazzard Jaeger Greer Wilson & Fay
      111 Church Street
      White Plains, New York 10601-1505

      W. Whitfield Wells, Esq.
      825 Westchester Ave., Suite 307
      White Plains, New York 10604

      Joseph Cassin, Esq.
      Cassin, Cassin & Joseph LLP
      300 E. 42nd St.
      New York, NY 10017

      Herbert F. Roth, Esq.
      c/o Andreas Holdings Co.
      35 E. Grassy Sprain Road
      Suite 203A
      Yonkers, NY 10710

4

DHS INFO- Fax Received: 03/31/2003 11:06AM * Pg 6/6
MAR 31 2003 11:28 FR KENT HAZZARD-MCGOVERN  9149484721 TO 12125065151        P:06/06

Lartrym Services, Inc.
c/o Morgan & Morgan
P.O. Box 3149
Pasea Estate
Road Town, Tortola, BVI

5

** TOTAL PAGE.06 **

A-81

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X
In the Matter of the Application of                    File No. 2165/1998
THE THOMAS AND AGNES CARVEL FOUNDATION,
as remainderman under the Last Will and Testament of
THOMAS CARVEL, deceased, for a restraint on the
conveyance or encumbrance of certain real property
-----------------------------------------------------------------------X

## AFFIRMATION OF SERVICE

I, TARA J. MYSLINSKI, am an attorney duly admitted to the State of New York,

and I represent The Thomas and Agnes Carvel Foundation in the above-captioned proceeding.  I

affirm the following under penalty of perjury:

On April 3, 2003, I served of the annexed Notice of Settlement by first class mail,

postage pre-paid, on the following:

> Attorney General of the State of New York
> Department of Law
> 120 Broadway
> New York, NY  10271
>
> Anthony J. Constantini, Esq.
> Duane, Morris & Heckscher LLP
> 380 Lexington Avenue
> New York, NY  10168
>
> Joel Martin Aurnou, Esq.
> 11 Martine Avenue
> White Plains, NY  10606
>
> Robert M. Redis, Esq.
> McCarthy, Finger, Donovan,
>         Drazen & Smith, L.L.P.
> 11 Martine Avenue, 12th Floor
> White Plains, NY  10606-1934
>
> Eve Rachel Markewich, Esq.
> Blank Rome LLP
> 405 Lexington Avenue
> New York, NY  10174
>
> W. Whitfield Wells, Esq.
> 925 Westchester Avenue
> Suite 307
> White Plains, NY 10604

**A-82**

Herbert F. Roth, Esq.
c/o Andreas Holdings Co.
35 E. Grassy Sprain Road
Suite 203A
Yonkers, NY 10710

Katharine Wilson Conroy, Esq.
Kent Hazzard Jaeger Greer Wilson
     Fay & Conroy
111 Church St.
White Plains, NY 10601-1505

Joseph Cassin, Esq.
Michael S. Kutzin, Esq.
Cassin, Cassin & Joseph LLP
300 E. 42nd Street
New York, NY 10017

Leonard M. Ross, Esq., as Limited Ancillary
Administrator c.t.a. of the Estate of Agnes Carvel
265 Sunrise Highway, Suite 65
Rockville Centre, NY 11570

Realities, a Delaware Business Trust
c/o The Prentice Hall Corporation System, Inc.
2711 Centerville Road
Suite 400
Wilmington, DE 19808-1645

On April 3, 2003, I served a true copy of the annexed Notice of Settlement by

Federal Express and by International Registered Mail, return receipt requested, postage pre-paid,

on the following:

Lartrym Services, Inc.
c/o Morgan & Morgan
P.O. Box 3149
Pasea Estate
Road Town, Tortola, BVI

Executed in New York, New York, on April 4, 2003.

_Tara J. Myslinski_
Tara J. Myslinski

**A-83**

FORM 110-8-94

STATE OF NEW YORK
COUNTY OF WESTCHESTER ss:
SURROGATE'S OFFICE

I, JOHN W. KELLY, Chief Clerk of the Surrogate's Court of the County of Westchester, do hereby certify that I have compared the foregoing copy Of THE ORDER DATED APRIL 16 2003, EXHIBITS AND AFFIRMATION OF SERVICE ;

Re: The Estate of   THOMAS  CARVEL,  DECEASED .

SIGNED AND FILED:        APRIL 16, 2003

with the original thereof now remaining in this office and have found the same to be a correct transcript therefrom, and of the whole of such original.

Dated and Sealed____JULY 10, 2003_____

_Jolm W. Kelly_

CHIEF CLERK of the SURROGATE'S COURT

Seal

**A-84**

*Realities*     110 W. Ninth Street, Suite 177 Wilmington, DE 19801-1618

**VIA FACSIMILE  1 404 815 3509**

February 7, 2005

**Thomas Spillman**
Smith, Gambell & Russell, LLP
Suite 3100, Promenade 11
1230 Peachtree Street, N.E.
Atlanta, Georgia
30309-3592

Re:    Franchise Stores Realty / Carvel Corporation
       **LEASE for 95 South Central Avenue, Hartsdale, New York ("lease")**

Dear Mr. Spillman,

Thank you for your letter of January 21, 2005 with its attachments. Unfortunately, you seem to be misinformed by the alleged counsel for the foundation. As the alleged foundation counsel is well aware, the alleged foundation's case at trial hinged almost exclusively on the premise that ALL income belonging to Agnes Carvel was 100% disposable by her without any restrictions whatsoever. Based on this premise, the alleged foundation asserted its claim to receive the "principal", i.e. the deed.

Further, the New York court determined the alleged foundation is entitled only to the remainder, if any, of Agnes Carvel's estate. The Court, therefore, restricted the transfer of ownership by New York State statute until such time as it is determined that the pre-maturely distributed property is not required to pay the debts and administrative expenses of Agnes Carvel's estate in London, England. The Estate and its Delaware ancillary administration remain open.

The assignment of rent to Realities by Agnes was separate from the deed and constitutes the assignment of income to which the alleged foundation, by its own admission, did not seek to claim. As you should know, there are outstanding rents payable for both the years before and after litigation was commenced by the alleged foundation.

As previously stated, we would like to avoid unnecessary litigation concerning the unpaid past balances for the lease of this property, therefore we request your voluntary cooperation in providing the following information:

1.    Please provide proof of the assignment of the lease, if any, by Franchise Stores Realty and Carvel Corp.

2.    Please provide proof of the payment, i.e. copies of the front and back of canceled checks, for rent and taxes from 1995 to present.

We require the above information before February 20, 2005, or your assurance by that date that the information will be provided expediently in not more than 30 days.

Yours truly,

*Realities*

**A-86**

*Realities*   110 W. Ninth Street, Suite 177 Wilmington, DE 19801-1618

**VIA CERTIFIED MAIL**

April 1, 2005

**Thomas Spillman**
Smith, Gambell & Russell, LLP
Suite 3100, Promenade 11
1230 Peachtree Street, N.E.
Atlanta, Georgia
30309-3592

Re:   Franchise Stores Realty / Carvel Corporation
      **LEASE for 95 South Central Avenue, Hartsdale, New York ("lease")**

Dear Mr. Spillman,

You have failed to respond in any manner whatsoever to our request for documentation for the payment of rents pursuant to the April 23, 1987 lease to Franchise Stores Realty and Agnes Carvel's August 31, 1994 assignment of those rents payable to Realities.

You refused to voluntary cooperate in providing the following information:

1.   proof of the assignment of the lease, if any, by Franchise Stores Realty and Carvel Corp. ;

2.   proof of the payment, i.e. copies of the front and back of canceled checks, for rent taxes, and insurance from 1995 to present.

If this information and current rent payments are not received immediately, we will conclude that your client is intentionally in violation of its contractual obligations and we will proceed accordingly.

Yours truly,

*Realities*

**A-87**

07 - 237

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

AGNES CARVEL ESTATE

## DEFENDANTS

CARVEL CORP.

**(b)** County of Residence of First Listed Plaintiff   **LONDON, ENGLAND**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant New Castle, Delaware
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 954 524 1909
Pamela Carvel, Personal Representative, appearing pro se
28 Old Brompton  Rd, Ste. 158, London SW73SS, England

Attorneys (If Known) 404 815 3500
Smith, Gambrell & Russell, Ste 3100, Promenade 11
1230 Peachtree St. NE, Atlanta, GA 30309-3592

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
U.S. Constitution Amendments 1,5,14

Brief description of cause:
breach of lease and conversion of rental income

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ 811,450.04

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE ___   DOCKET NUMBER ___

DATE
5-3-7

SIGNATURE OF ATTORNEY OF RECORD
Pamela Carvel, pro se

FOR OFFICE USE ONLY

RECEIPT # ___   AMOUNT ___   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 - 2 3 7 _____

# ACKNOWLEDGMENT
## OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

_____ 0 2 2007 _____

(Date forms issued)

*Pamela Carvel*

(Signature of Party or their Representative)

PAMELA CARVEL

(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action