IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AGNES CARVEL ESTATE<br>by PAMELA CARVEL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 07-237-JJF |
| | : | |
| CARVEL CORP., | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM IN SUPPORT OF
### CARVEL CORPORATION'S MOTION TO DISMISS

Defendant Carvel Corporation ("Carvel Corp.") hereby files this Memorandum in Support of its Motion to Dismiss the Complaint for Payment of Rent ("Complaint") filed by Pamela Carvel on behalf of the Agnes Carvel Estate ("Pamela") and states:

### I.    INTRODUCTION

In this case, Pamela seeks rent payments from Carvel Corp. pursuant to a lease agreement ("Lease") to which Carvel Corp. is not now and never has been a party. *See* Appendix to Complaint (D.I. 1) at A-1 to A-7. For the convenience of the Court, the Lease is attached hereto as Exhibit 1. Because Carvel Corp. is not a party to the Lease, Carvel Corp. has no obligations under the Lease, and the Complaint should be dismissed.

### II.    STANDARD

A motion to dismiss for failure to state a claim should be granted where it appears to a certainty that no relief could be granted under any set of facts established by the plaintiff. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997). In resolving a 12(b)(6) motion, the Court must accept as true all of the well-pleaded allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in a light most favorable to the plaintiff. *Id.* The Court, however, need not credit a complaint's "bald assertions" or "legal conclusions" when deciding the motion to dismiss. *Morse*, 132 F.3d at 906. Further, the Court may consider documents attached to, or specifically referenced in the complaint, and matters of public record. *Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 259 (3rd Cir. 1998). Here, Pamela has attached to the Complaint the Lease which defeats her claim.

## III.    ARGUMENT

By her own admission, in this lawsuit, Pamela "sues Defendant Carvel Corp., a Delaware corporation, for unpaid rent and interest thereon under a lease between Carvel Corp.'s wholly owned subsidiary Franchise Stores Realty (Lessee) and Thomas and Agnes Carvel (Lessor), dated April 23, 1987 through April 30, 2007." Introductory paragraph of Complaint (D.I. 1) at 13. In short, Pamela fully acknowledges that Franchise Stores Realty, *not Carvel Corp.*, is the lessee under the Lease. Despite this, Pamela has sued Carvel Corp. because "[o]n information and belief, Carvel Corp. has not paid the full amount of rent due Agnes Carvel." Complaint (D.I. 1), ¶ 17. Moreover, Pamela seeks an order "directing Carvel Corp. to pay $811,450.04 to the Estate for rent and annual interest on the unpaid balance." Wherefore Clause of Complaint (D.I. 1).

It is one of the most basic and longstanding principles of law that a defendant cannot be held liable under a contract to which it is not a party.[1] *See Seaver v. Ransom*, 224 N.Y. 233, 237, 120 N.E. 639, 640 (1918) ("privity between a plaintiff and a defendant is necessary to the maintenance of an action on the contract"); *see also Caprer v. Nussbaum*, 36 A.D.3d 176, 200, 825 N.Y.S.2d 55, 75 (2006) ("defendants cannot be held liable for a breach of that contract . . .

---

[1]    Because the Lease was for real property located in New York and is between individuals who resided in New York and a corporation located in New York, New York law applies to Pamela's breach of contract claim.

because they were not parties to it"); *Lipton v. Unumprovident Corp.*, 10 A.D.3d 703, 706, 783 N.Y.S.2d 601, 603 (2004) ("Although Spear Leeds procured the subject group insurance plan for the benefit of its employees and certain brokers, it was not a party to the contract of insurance between participants in the plan and First Unum . . . Thus, Spear Leeds owes no contractual duty to the plaintiff, and no breach of contract claim lies against it for First Unum's refusal to pay disability benefits to the plaintiff."); *National Survival Game of New York, Inc. v. NSG of LI Corp.*, 169 A.D.2d 760, 761, 565 N.Y.S.2d 127, 128 (1991) ("Since John Cuocco and his corporation, American Air Gun Games, Inc., were not parties to this agreement, they cannot be bound by it."). In this case, because Carvel Corp. is not a party to the Lease, Carvel Corp. cannot be bound by the Lease or held liable for the alleged breach of the Lease. Accordingly, this Court should dismiss the Complaint with prejudice.

## IV.    CONCLUSION

For all the reasons stated above, this Court should dismiss the Complaint with prejudice.

DATED: June 29, 2007

Karen E. Keller (#4489)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6554
kkeller@ycst.com

Anthony P. Ashton (*pro hac vice motion pending*)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Carvel Corp.*

**CERTIFICATE OF SERVICE**

I, Karen E. Keller, Esquire, hereby certify that on June 29, 2007, a true and correct copy of the

foregoing document was electronically filed with the Clerk of the Court using CM/ECF, which will send

notification that such filing is available for viewing and downloading to the following counsel of record:

> Pamela Carvel
> 28 Old Brompton Road, Suite 158
> London SW7 3SS England
> US tel/fax 1 954 524 1909

Additionally, I hereby certify that on June 29, 2007, copies of the foregoing document were

served via facsimile and first class mail, postage pre-paid to the above party.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
*kkeller@ycst.com*

# EXHIBIT 1

PRIMELEASE
#508

<u>LEASE</u>

STREET:  95 S. Central Avenue          COUNTY:  Westchester

CITY:    Hartsdale                     STATE:   New York

   THIS LEASE made the 23rd day of April, 1987, by and between THOMAS and
AGNES CARVEL, Winding Farm Road, Ardsley, New York 10502, hereinafter called
the LESSOR and FRANCHISE STORES REALTY CORP., of 201 Saw Mill River Road,
Yonkers, New York 10701, hereinafter called the LESSEE.

                        <u>W I T N E S S E T H:</u>

   WHEREAS, for many years there has been established and presently exists
a building occupied and engaged in the retail sale of CARVEL products, under
the CARVEL name and trademarks, which has been accepted and known as the
original CARVEL STORE, and

   WHEREAS, the Lessee herein is desirous of leasing and renting from the
Lessor and the Lessor is desirous of letting and renting to the Lessee, the
premises hereinafter described for the continued occupancy as a CARVEL STORE,
for the sale of CARVEL products and for other uses, under certain terms and
conditions as hereinafter set forth.

   NOW THEREFORE, in consideration of the mutual terms and conditions
contained herein, the parties herein mutually agree as follows:

PREMISES:

   1.  In consideration of the rents hereinafter reserved and all of the
mutual terms, provisions and conditions contained in the Lease, Lessor hereby
leases and demises to the Lessee and Lessee hereby hires, leases and takes
from Lessor the following described premises together with building referred
to as Carvel Store #508, more particularly described as follows:

      All that parcel of land, together with building situated thereon on
the westerly side of South Central Avenue, Hartsdale, New York known as 90-95
South Central Avenue, Hartsdale, New York; said site also being referred to
as Section 30, Sheet 23, Lots 33 & 34, Block 8231 on the Tax Records of the
Town of Greenburgh, in the County of Westchester, State of New York.

TERM & USE:

   2.  The term of this Lease shall commence upon the date of execution by
both parties and terminate on the 30th day of April, 2007, to be used and
occupied for the maintenance and operation of a retail CARVEL STORE for the
manufacture and sale of CARVEL products and for any other lawful purpose
approved by Lessor.

RENT:

   3.  Throughout the entire term of this Lease, Lessee agrees to pay to
the Lessor an annual rent in lawful tender of the United States, payable in
equal monthly installments in advance on the first day of each month at the
office of Lessor, or such other place as the Lessor may designate, as set
forth below:

   From May 1st, 1987 to April 30th, 1988, the sum of Forty-One Thousand
   Five Hundred Thirty-One Dollars and 64/100 ($41,531.64) per annum,
   ($3,460.97 per month).

   From May 1st, 1988 to April 30th, 2007 the rent shall be adjusted
annually on April 1st of each and every year by a percentage of increase (but
in no event less than 5%) of the Consumer Price Index, All Urban Consumers
U.S. City Average for "All Items" (1967=100) as published by the Bureau of
Labor Statistics of the United States Department of Labor over the base
period.  The term base period shall refer to the Index published for April
1987, as compared to the CPI for the month of April 1988, and each yearly CPI

                               1

for that year over the preceding year, multiplied by the base rent for that year.

In the event said Consumer Price Index shall cease to use the same basis of calculation or if a change is made in the terms or number of items contained in said Price Index after April 1987, or said Price Index shall be discontinued, then Lessor shall have the right and option to designate a substitute index or formula and such substituted index shall have the same effect as if it had been originally designated herein. Any monies due hereunder shall be considered rent and paid monthly by Lessee to Lessor at the same time base rent is paid. The purpose of this paragraph is to increase the annual rental by the amount of increase (but in no event less than 5%) each year in the CPI. Should there be no increase in the CPI in any given year, the rental shall be nevertheless increased by a minimum of (5%) percent each year for the term of this Lease.

## SUBLET:

4. The parties hereto acknowledge and agree that Franchise Stores Realty Corp. may sublet all or any portion of the leased premises, (including the existing building which is presently subdivided), for the operation of a CARVEL STORE or for any other lawful business purpose, subject to the approval of the Lessor. Any sub-lease of the Lessee shall be subordinate to this Lease.

## FUTURE CONSTRUCTION:

5. It is understood and agreed that the Lessor (or its designee) shall have the right to remove the present building at the demised premises and construct in its place a new building(s), single or multi-units, at the sole cost and expense of the Lessor (or its designee), or make any changes, improvements or additions to the existing building (at Lessor's (or its designee's) cost and expense) for the purpose of constructing or creating a new multi-tenant building and/or taxpayer, providing that:

(a) Lessor (or its designee) gives to the Lessee a 60 day notice in writing of its intention to do any of the foregoing;

(b) Lessee's rents will abate during such work by the Lessor (or its designee) including taxes, common area maintenance and utilities charges;

(c) The CARVEL STORE will be rebuilt to the then-standards for a CARVEL STORE at the Lessor's (or its designee's ) expense, (if building should be demolished) within eight (8) months from the date of construction, unless through no fault of the Lessor, construction is extended beyond that time;

(d) The CARVEL STORE, in the event of extension, addition or construction of a multi-unit building on the property, (without demolition of existing building), shall be located in such new improvement, in space no less than space now leased and with comparable access and adequate visibility;

(e) This Lease shall remain in full force and effect subject to the above conditions, and further:

(i) That subsequent to the reopening as a multi-tenant improvement, extension or addition: all taxes, insurance, maintenance or other additional rental charges shall be apportioned equitably among the several tenants, based on the square footage of their leased space as apportioned to the square footage of the entire building;

(ii) Lessee shall be charged for the foregoing items in (i) as well as common area charges for the cleaning, snow removal and maintenance of all of the common areas, including parking lot, (if Lessor shall elect to perform such maintenance) which shall be paid in equal monthly installments on the 1st day of each month in advance as additional rent and Lessee's share shall be calculated according to the percentage of the store space leased by Lessee as apportioned to the total square footage of the entire building.

## RENEGOTIATION:

6. It is understood that should the Lessor (or its assignees) exercise the provisions in Paragraph 5 above then the rental provision of this Lease may be renegotiated to compensate for such new building or construction that

2

A-2

may be provided to Lessee.  However, any existing sub-leases of the Lessee shall not be affected by said renegotiation.

CARE OF PREMISES:—

7.  The Lessee, at its own expense agrees to keep the building, plate glass, walks, parking area and sidewalks at the demised premises in good order, condition and repair, making all interior and exterior repairs and replacements to the same as and when required and keeping the sidewalks, walks and parking area in good condition and repair and free and clear of snow, ice and rubbish during the entire term of this Lease.  Lessee, at its own expense shall be responsible for structural repairs and exterior repairs and replacements.

The Lessee, at its own expense, will bond or otherwise remove from record, mechanic's liens filed with respect to the demised premises or any part thereof, for any and all work or materials furnished to the Lessee during the term of this letting, within thirty (30) days next following the filing of such liens against the demised premises.  Should the Lessee fail to comply with any requirements on the Lessee's part to be performed, as herein contained, within the time specified for such compliance, the same shall be a default and Lessor may thereafter at its option, but without obligation, take whatever action may be appropriate to cure the default and all costs and expenses incurred by Lessor in curing any such default shall constitute additional rent for this letting and be payable by Lessee on demand of Lessor.

GOVERNMENTAL REQUIREMENTS:

8.  The Lessee agrees that he shall comply with the requirements of all governmental requirements which shall impose any duty upon the occupants of the demised premises.

COVENANT ON MORTGAGE:

9.  This Lease shall be subject to and subordinate to any and all mortgages now on or hereafter placed upon or affecting the demised premises and to any and all renewals, modifications, consolidations and extensions thereof.  The Lessee agrees, from time to time and within ten (10) days of demand, to execute and deliver to Lessor or its designee any and all instruments requested to evidence such subordination, without obligation or expense to the Lessor.

FIRE INSURANCE:

10.  During the entire term of the Lease the Lessee, at its own cost and expense, will insure the demised premises and any existing buildings and improvements thereon with fire, extended coverage, vandalism and malicious mischief, ("all risk insurance"), which shall be in an amount equal to the replacement value of the buildings and improvements, exclusive of foundations and excavations as such value may be from time to time.

In the event of the total destruction of the building or improvements, (or both), upon the demised premises, by reason of fire, the elements or other casualty not caused by the willful act or omission, or negligence of the Lessee, or any of its employees or agents, this letting shall not terminate, but there shall be an abatement of rent for such period of time as the premises are not usable by Lessee for its business purposes as the result of such damage or destruction and Lessor shall have the option to terminate this Lease within twenty (20) days of such loss or damage.  If that option is exercised, written notice to that effect shall be sent to Lessee by Lessor and this Lease shall thereupon expire as if the date of exercise of said option by Lessor was the date set forth in Paragraph "2" of this Lease as the expiration date of the Lease term.

All sums payable by Lessee under the Lease to such date shall be paid within five (5) days next following said Notice and Lessee shall promptly vacate the premises.  Lessor or its designee shall be solely entitled to any insurance proceeds payable by reason of such destruction of or damage to the premises.  In the event Lessor does not elect to terminate said Lease or in the event of only partial damage to the premises, Lessor, or its designee shall be solely entitled to any insurance proceeds payable by reason of such destruction of or damage to the premises.  In the event Lessor does not elect to terminate this Lease or in the event of only partial damage to the

3

A-3

premises, Lessor or its designee shall collect the insurance proceeds and Lessor or its designee shall cause the demised premises to be repaired or reconstructed making the insurance proceeds available for that purpose and there shall be an abatement of rent until Lessor or its designee tenders the premises to Lessee. It is understood that any excess of insurance proceeds remaining after construction shall belong to the Lessor or its designee. In the event of the complete destruction or partial damage to the premises by reason of Lessee's willful act or omission or negligence, or that of its agents, employees or servants there shall be no abatement of rent and Lessee shall be liable for the complete repair and replacements of such damage or destruction and Lessor shall have the option to terminate the Lease within ninety (90) days next following the occurrence of such damage or loss.

COVENANT ON LIABILITY INSURANCE:

11. From the date of delivery of the premises and during the term of this Lease, Lessee, will, at its own cost and expense, maintain property damage insurance with minimum limits of $50,000. and public liability insurance in an amount not less than $500,000. for injuries to any one person and not less than $1,000,000. for injuries to more than one person arising out of any one accident or occurrence. Lessee shall provide plate glass insurance.

All such coverage shall be obtained from companies satisfactory to the Lessor and in the names of Lessor, Lessee and any mortgagee of the premises as their respective interest may appear. Copies of all such policies or certificates therefor shall be delivered to the Lessor herein together with proof of payment of premium within twenty (20) days before the expiration of any such coverage during the time of this Lease. The foregoing insurance coverage shall also be provided by Lessee during any period of construction, remodeling, repair, alterations or improvements at the demised premises.

CURE OF DEFAULT:

12. If the Lessee defaults in compliance with any term or condition on its part to be performed under this Lease, and said default continues for fourteen (14) days, as to any installment of rent, additional rent or any other sum herein provided for, or for ten (10) days as to all other defaults, Lessor, at its option, may and without obligation, terminate this Lease by written notice to that effect sent to Lessee and all rights hereby granted to the Lessee shall be terminated and cancelled upon Lessor's dispatch of said notice.

In the event of any such termination of the Lease, or in the event of any abandonment of the premises by Lessee, Lessor may re-enter the demised premises without notice, by force, summary proceedings or otherwise, without liability for itself, its employees, representatives or agents and either enjoy the same for its own account or relet or seek to relet the same as agent for Lessee on the same or any other terms, conditions, or covenants as it may, in its sole discretion, determine to be desirable; and in such latter event, Lessee shall remain liable to pay all rent and additional rent provided in the Lease until the expiration of the term of this Lease, which the termination and abandonment occurred, plus any and all costs, expenses and attorney's fees incurred by Lessor in re-entering and re-taking possession of the premises, preparing the same for relating and obtaining a new tenant for the same, but minus any sums paid by and subsequent tenant from time to time during the period.

All sums collected by Lessor upon the foregoing liability shall first be applied in reimbursement of the said costs, expenses and attorney's fees referred to, and then applied to satisfaction in whole or in part, as the case may be, of the rent or additional rent referred to, and, in the event of any deficiency, the Lessee shall make payment of such sum hereunder within five (5) days of Lessor's demand for same.

Lessee hereby waives for itself and all those claiming under it, all rights, now or hereinafter existing to redeem the premises after termination of the Lessee's rights of occupancy by order or judgment or any Court or after the issuance of a warrant to dispossess and also waives all right to trial by jury in any summary proceedings hereinafter instituted by Lessor against Lessee with respect to the demised premises or this Lease. This paragraph of the Lease shall survive any termination of the Lease, as well as all of the foregoing paragraphs in this clause of this Lease.

4

**PAYMENT OF TAXES:**

13. The Lessee agrees to pay, as additional rent, commencing with the date of the commencement of rent, as hereinbefore provided, whenever and as soon as the amount thereof may be ascertained and payable, but in no event more than thirty (30) days thereafter, all taxes, charges and assessments whatsoever, extraordinary as well as ordinary, which shall be due or payable or levied or imposed upon the demised premises during the term and any renewal term herein granted. In the event that such taxes, charges or assessments are imposed upon the demised premises for a fiscal period, same shall be apportioned for the first year of the term of this Lease if imposed at such time and payable by the Lessee herein for the period during said year that the Lessee shall have possession of the demised premises.

**TRIPLE NET LEASE:**

14. The annual rentals provided for in this Lease shall be absolutely net to the Lessor. It is the intention of the parties hereto that all expenses, costs, and obligations of every kind and nature whatsoever relating to the leased premises shall be paid by Lessee; including but not limited to all taxes, assessments, insurance, maintenance, repairs and replacements to the structure and land on which said structure is located both exterior and interior.

**UTILITIES:**

15. Lessee shall pay for all services and utilities consumed at, on or upon the premises before the same shall become delinquent. All utilities shall be placed and connected in the name of the Lessee prior to the Lessee taking occupancy and Lessee shall post any and all deposits required by any utility company. Said utilities and services shall include, but not be limited to oil, water, gas, electricity, sewers, etc.

**CONDEMNATION:**

16. The parties hereto agree that should the land and improvements thereon or any part thereof be taken or condemned by competent authority for public or quasi-public use, the term of this Lease shall, at the Lessor's option, terminate and cease from the date when possession of the part so taken shall be required for the use and purpose for which it had been taken. The Lessor shall be solely entitled to any and all awards made available with respect to said taking.

**FOR SALE & TO LET SIGNS:**

17. During the last three (3) months of the term of this Lease Lessor may display "To Let" and/or "For Sale" or other signs upon premises it may elect to install and may freely exhibit the premises to any prospective tenant or purchaser.

**BANKRUPTCY:**

18. If the Lessee during the term hereby granted, files or suffers the filing of any petition in bankruptcy or makes an assignment for the benefit of creditors, at the option of the Lessor, this Lease shall be deemed breached by Lessee as to a material condition, and Lessor shall be entitled to terminate Lessee's rights under the Lease forthwith.

**WAIVER OF REQUIREMENTS:**

19. No requirements whatsoever of this letting shall be deemed or waived or varied, nor shall the Lessor's acceptance of any payment hereunder with knowledge of any default, or Lessor's failure or delay to take advantage of any default, constitute a waiver of the Lessor's right by virtue thereof or a waiver of any subsequent or continued breach of any requirement of this letting.

**NOTICES:**

20. All notices to be given under this letting shall be in writing and shall be either served personally or sent by certified or registered mail, return receipt requested to the address of the parties as heretofore written.

5

A-5

BROKERAGE COMMISSION:

21. The parties agree that no broker brought about this lease.

ASSIGNMENT:

22. Notwithstanding anything to the contrary herein stated, this Lease may not be assigned without the written consent of the Lessor.

PEACEFUL ENJOYMENT:

23. Lessor covenants and agrees with Lessee that upon Lessee paying said rent and performing all the terms, conditions an covenants of this Lease aforesaid on Lessee's part to be observed nad performed, Lessee shall and may peaceably and quietly have, hold and enjoy the premises hereby demised for the term aforesaid, subject, however, to the terms of the Lease and of the ground Leases, if any underlying Leases, if any, and mortgages, if any hereinbefore mentioned.

EXPIRATION OR TERMINATION:

24. Upon the expiration or other termination of the term of this Lease, Lessee shall quit and surrender the demised premises to Lessor, together with all buildings and improvements thereon, broom clean, in good order and condition, ordinary wear and tear by the elements excepted. If the last day of the term of the Lease or any renewal thereof falls on Sunday, this Lease shall expire on the business day immediately following and Lessee shall remove all his personal property from the premises on or before such day, but if Lessee fails to do so, Lessor may cause all of said property to be removed at the expense of the Lessee, and Lessee agrees to pay any and all costs and expenses incurred thereby. Lessee's obligation to observe or perform this covenant shall survive the expiration or other termination of this Lease. Should Lessee fail to vacate the premises as set forth above, then Lessee shall pay rent at twice the rate paid in the last month of the expired or termination term.

LEASE ACCEPTANCE:

25. This agreement contains all the oral and written agreements, representations and arrangements between the parties hereto. Any and all representations, warranties, or rights, which the respective parties hereto may have made or had under any previous contracts or oral arrangements, are hereby cancelled and terminated and no representations or warranties are made or implied other than as expressly set forth herein. The agreement shall not be binding upon the parties herein until and unless this agreement shall have been properly executed by the Lessee and Lessor herein and this agreement may not be changed except in writing signed by both of the parties herein.

CONSTRUCTION OF LEASE:

26. Words of any gender used in this Lease shall be held to include any other gender, and words in the singular number shall be held to include the plural, when the sense requires.

CUMULATIVE REMEDIES:

27. The parties understand and agree that any and all remedies provided herein for defaults in the Lease are in addition to and not in substitution for any and all remedies available to the respective parties herein at law and equity.

SIGNS:

28. Lessor permits and approves Lessee's installation, use and display of signs on or about demised premises per exhibits annexed to this Lease. Future signage will be subject to the Lessor's approval, which will not be unreasonably withheld.

MARGINAL NOTES:

29. The captions or marginal notes as to contents of particular paragraphs herein are inserted only for convenience, and are in no way to be construed as part of this Lease or as a limitation on the scope of the particular paragraphs to which they refer.

6                    A-6

COMPETITIVE USE:

30.  The Lessor hereby agrees not to sell, rent, lease or permit the use
of any part of its property within the vicinity of one thousand (1,000) feet
from the premises herein leased in any direction for use in the sale of ice
cream or similar products.

RECORDING:

31.  This Lease may not be recorded.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and
seals this 23rd day of April, 1987.

WITNESS                                          LESSOR:

_____                 _____
                                                 THOMAS CARVEL

_____                 _____
                                                 AGNES CARVEL

                                                 LESSEE:

                                                 FRANCHISE STORES REALTY CORP.

_____                 BY: _____
                                                 Mildred Arcadipane, Secretary


(STATE OF NEW YORK     )
(COUNTY OF WESTCHESTER )  ss.:

On the 23RD day of April, 1987 before me personally came Thomas and
Agnes Carvel, to me known and known to me to be the individuals described in
and who executed the foregoing instrument and they duly acknowledged to me
that they executed the same.

_____
SARGIS MIRZA
Notary Public, State of New York
No. 60-4846547
Qualified in Westchester County
Commission Expires March 30, 1989

(STATE OF NEW YORK     )
(COUNTY OF WESTCHESTER )  ss.:

On the 23RD day of April, 1987, before me personally came Mildred
Arcadipane, to me known, who, being by me duly sworn, did depose and say that
she resides at Yonkers, New York, that she is the Secretary of Franchise
Stores Realty Corp., the corporation described in and which executed the
foregoing instrument, that she knows the seal of said corporation, that it
was so affixed by order of the Board of Directors of said corporation and
that she signed her name thereto by like order.

_____
SARGIS MIRZA
Notary Public, State of New York
No. 60-4846547
Qualified in Westchester County
Commission Expires March 30, 1989

7                                                A-7