IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AGNES CARVEL ESTATE<br>by PAMELA CARVEL,<br><br>    Plaintiff,<br><br>    v.<br><br>CARVEL CORP.,<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:   C.A. No. 07-237-JJF<br>:<br>:<br>:<br>:<br>: |

**CARVEL CORPORATION'S
RESPONSE TO OPPOSITION TO MOTION TO DISMISS**

Defendant Carvel Corporation ("Carvel Corp.") hereby responds to Pamela Carvel's Opposition to Motion to Dismiss (D.I. 7) and states:

### I.    ARGUMENT

On or about May 10, 2007, Pamela Carvel on behalf of the Agnes Carvel Estate ("Pamela") filed a Complaint for Payment of Rent ("Complaint") against Carvel Corp. for the alleged breach of a lease ("Lease") because the lessee, an entity other than Carvel Corp., allegedly refused to pay rent to Realities, an entity in which Pamela Carvel (not the Agnes Carvel Estate) held some interest. *See* A-33 – A-34 attached to Complaint (D.I. 1). Instead, the lessee paid rent to The Thomas and Agnes Carvel Foundation, which the Surrogate's Court for Westchester County, New York, determined was the rightful owner of the rental property. *See* A-34; Decision After Trial attached to Complaint (D.I. 1) at A-20, A-27. The Lease expressly provides:

> THIS LEASE made the 23rd day of April, 1987, by and between THOMAS and AGNES CARVEL, Winding Farm Road, Ardsley, New York 10502, hereinafter called the LESSOR and FRANCHISE STORES REALTY

> CORP. of 201 Saw Mill River Road, Yonkers, New York 10701, herein after called the LESSEE.
>
> \* \* \*
>
> Throughout the entire term of this Lease, Lessee agrees to pay to the Lessor an annual rent payment in lawful tender of the United States, payable in equal monthly installments in advance on the first day of each month at the office of the Lessor, or such other place as the Lessor may designate . . .

Exhibit 1 to Motion to Dismiss (D.I. 5) at A-1.

The Lease was signed by Thomas Carvel and Agnes Carvel collectively as Lessor and by Mildred Arcadipane, Secretary, on behalf of Franchise Stores Realty as Lessee. *Id.* at A-7. The signatures were notarized by a Westchester County, New York Notary Public. *Id.* Carvel Corp. is not a signatory to, nor even mentioned in, the Lease. In its Motion to Dismiss, Carvel Corp. correctly argued that under New York law, a defendant cannot be held liable under a contract to which it is not a party. *See Seaver v. Ransom*, 224 N.Y. 233, 237, 120 N.E. 639, 640 (1918); *Caprer v. Nussbaum*, 36 A.D.3d 176, 200, 825 N.Y.S.2d 55, 75 (2006); *Lipton v. Unumprovident Corp.*, 10 A.D.3d 703, 706, 783 N.Y.S.2d 601, 603 (2004); *National Survival Game of New York, Inc. v. NSG of LI Corp.*, 169 A.D.2d 760, 761, 565 N.Y.S.2d 127, 128 (1991).

In response, Pamela does not and cannot legitimately argue that Carvel Corp. is a party to the Lease. Instead, she makes a series of confusing arguments regarding inapplicable legal doctrines. For example, Pamela argues that: "Courts have used the 'National Labor Relations Board Standard' for deciding 'affiliate liability' under the National Labor Relations Act." Opposition (D.I. 7), ¶¶ 9-10. The National Labor Relations Act was enacted "to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define

and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce." U.S.C. § 141(b). The act is inapplicable to these proceedings. Affiliate liability is a doctrine used to determine who is the employer in labor and employment cases. *See Breece v. AmeriCare Living Centers*, No. IP 01-0997-C-K/T, 2002 WL 31132308 (S.D. Ind. Sept. 25, 2002). This legal concept is wholly unrelated to the issues of this case.

Next, Pamela cites cases from Tennessee, *e.g.*, *Federal Deposit Ins. Corp. v. Allen*, 584 F. Supp. 386 (E.D. Tenn. 1984). Pamela quotes five of eleven criteria set forth therein for determining whether to pierce the corporate veil presumably under Tennessee law. Opposition (D.I. 7), ¶¶ 9-10. The facts in *Allen* are readily distinguishable from those here, and its holding is inapposite to this case.

Under New York law, which applies to this matter, because Carvel Corp. is not a party to the Lease, Carvel Corp. cannot be bound by the Lease or held liable for the alleged breach of the Lease. Recently, in *Andejo Corp. v. South Street Seaport Ltd. P'ship*, the New York Supreme Court, Appellate Division, dealt with facts and allegations similar to those here. In that case, the court concluded:

> This action is essentially a landlord-tenant dispute governed by New York law. The breach of contract and breach of fiduciary duty claims were properly dismissed against defendants Rouse Company, General Growth Properties and Red Acquisition (collectively, the Rouse defendants), the owners of the Seaport. The Rouse defendants were not signatories to the leases between plaintiffs and SSSLP . . . . The court also properly declined to pierce the corporate veil to allow the claims against the Rouse defendants to continue. Other than conclusory statements that the Rouse defendants dominated and controlled their subsidiaries (SSSLP and Marketplace), plaintiffs failed to allege particularized facts to warrant piercing the corporate veil . . . .

40 A.D.3d 407, 836 N.Y.S.2d 571, 572 (2007); *see also Kaplan v. Aspen Knolls Corp.*, 290 F. Supp. 2d 335, 340 (E.D.N.Y. 2003) ("Plaintiff seeks to pierce the corporate veil of the corporate

defendant and impose personal liability on defendant Mazzuoccola. To assert a claim for individual liability under an alter ego theory, a plaintiff must demonstrate []: (1) that the person exercised such complete dominion and control 'in respect to the transaction attacked' that the corporation had 'at one time' no separate will of its own; and (2) that this domination was used to 'commit fraud or wrong' against the plaintiff, which proximately caused the plaintiff's injury . . . Additionally, even under the liberal pleading standards of Federal Rules of Civil Procedure 8(e), a plaintiff must plead facts sufficient to show that these elements are satisfied.").

Similar to *Andejo*, this case is essentially a landlord-tenant dispute governed by New York law. Carvel Corp. is not a signatory to the Lease. Moreover, the allegations in the Complaint do not even rise to the level of conclusory statements that Carvel Corp. dominated and controlled Franchise Stores Realty, let alone particularized facts to warrant piercing the corporate veil.[1]

Finally, Pamela cites sections 278 and 280 of the New York Debtor and Creditor Law. Section 278 is applicable only to fraudulent transfers. McKinney's Debtor and Creditor Law § 278. No facts that would support a claim for fraudulent transfer are alleged in the Complaint or can legitimately be alleged against Carvel Corp. At best, the Complaint would have asserted a breach of contract claim if Pamela had sued a party to the Lease. Because Pamela did not sue the lessee, she has failed even to assert that claim. Section 280 permits application of bankruptcy law to cases not covered by the fraudulent conveyance article of the Debtor and Creditor Law so

---

[1] Other confusing and bizarre arguments include: (1) the argument that the Complaint should not be dismissed as against Carvel Corp. because another company, Focus Brands Inc., is listed as the insured on a policy that provided general liability insurance for the property at issue; (2) the argument that Carvel Corp. can somehow be held liable under the Lease because it used an attorney whose offices were located Georgia; and (3) the argument that Carvel Corp.'s attorneys should have somehow altered the Waiver of Summons served by Pamela. Opposition (D.I. 7), ¶¶ 6-8. These arguments are of no legal significance.

as to invalidate a claim. *Posner v. Posner*, 12 A.D.3d 177, 179, 784 N.Y.S.2d 509, 511 (2004). Again, this statute is inapplicable to the issues in this case.

## II. CONCLUSION

For all the reasons stated above and in the Motion to Dismiss, this Court should dismiss the Complaint against Carvel Corp.

DATED: July 25, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Karen E. Keller

Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6554
kkeller@ycst.com

OF COUNSEL:
Anthony P. Ashton (admitted *pro hac vice*)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Defendant Carvel Corp.*

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on July 25, 2007, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Pamela Carvel
>28 Old Brompton Road, Suite 158
>London SW7 3SS England
>US tel/fax 1 954 524 1909

Additionally, I hereby certify that on July 25, 2007, copies of the foregoing document were served via first class mail, postage pre-paid to the above party.

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>/s/ Karen E. Keller
>Karen E. Keller (No. 4489)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19801
>(302) 571-6600
>*kkeller@ycst.com*