## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

Agnes Carvel Estate, London, England )
    by Pamela Carvel, Executrix, )
       Plaintiff )

v.                    ) Case No 07CIV000237-JJF

Carvel Corp. )
    a Delaware corporation )
       Defendant. )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF
## MOTION TO FOR SUMMARY JUDGMENT OR
## TO AMEND COMPLAINT FOR PAYMENT OF RENT

1.    Plaintiff Pamela Carvel, fiduciary to Agnes Carvel and her successors in interest pursuant to 12 *Del. C.* 3802(b) (1994), Delaware ancillary administrator for the Agnes Carvel Estate, and executor and personal representative for the period in question (through April 2007) hereby moves pursuant to Rule 56 of the *Federal Rules of Civil Procedure* for summary judgment in the Complaint for Payment of Rent against Carvel Corp. which liability is payable by Carvel Corp. as the controlling alter-ego that caused default in payment by its wholly owned subsidiary Franchise Stores Realty Corp.

2.    If summary judgment is not granted at this time, Plaintiff moves the District Court for leave to file an Amended Complaint, including

1

demand for jury trial, discovery to determine the true debtor parties or the alter-egos controlling Franchise Stores Realty Corp. that are liable for the debts of Franchise Stores Realty Corp. if it has been stripped of assets to evade enforcement of judgment for payment, and whether Carvel Corp. conspired with others to use Franchise Stores Realty Corp. to fraudulently transfer and convert taxable income due Agnes Carvel and her successors in interest.

## BASIS IN LAW FOR SUMMARY JUDGMENT

3.      In order to defeat a summary judgment motion, the nonmoving party may not simply rely on its pleadings but must present some evidence on every material issue for which the nonmoving party will bear the burden of proof at trial (*Celotex Corp. v. Catrett*, 477 U.S.317, 324 (1986)).

4.      In order for Defendant to raise a material issue of fact, affidavits must be based on personal knowledge (*Harriscom Svenska, AB v. Harris Corp.*, 3 F.3d 576 (2d 1993); *Estate of Detwiler v. Offenbecher*, 728 F.Supp. 103 (S.D.N.Y. 1989)).

5.      Once moving party shows by competent, admissible evidence, that no material and triable issues of fact exist (*Winegrad v. New York Univ. Med. Ctr.*, 64 NY2d 851, 476 N.E.2d 642, 487 N.Y.S.2d 316 (1985); *Sokolow, Dunaud, Mercadier & Carreras LLP v. Lacher*, 299 AD2d 64, 747

2

N.Y.S.2d 441 (1st Dept 2002)), the burden shifts to the party opposing the motion to produce evidentiary proof, in admissible form, sufficient to establish the existence of material issues of fact which require a trial of the action (*Zuckerman v. City of New York*, 49 NY2d 557, 404 N.E.2d 718, 427 N.Y.S.2d 595 (1980); *Pemberton v. New York City Tr. Auth.*, 304 AD2d 340, 758 N.Y.S.2d 29 (1st Dept 2003)).

## UNDISPUTED MATERIAL FACTS

6.      Plaintiff herein relies on *prima facie* documentary evidence, of Defendants' obligation to pay rent and Defendants refusal, as supplied in the Appendix with the original complaint (A1-A87), Appendix #2 submitted with Plaintiff's memorandum in opposition to Defendant's motion to dismiss (A88-A97), on Defendant's memorandum to the motion to dismiss, and Appendix #3 to motion for summary judgment, here attached (A99-A118).

7.      The lease in question was valid and enforceable for the whole term of the lease for rent payable from May 1, 1987 to April 30, 2007 (A-1 at #3).

8.      The Lessor in the Lease was Thomas and Agnes Carvel. The Leasee was Franchise Stores Realty Corp. of "201 Saw Mill River Road, Yonkers, New York 10701", which was the world headquarters address for

3

Carvel Corp. in 1987 and several years following. Carvel Corp.'s control of the lease and payments is demonstrated by a "Carvel" memo between known Carvel Corp. employees on "4/2/90" regarding the "sub-lease" and rent payments for "Store #508" at "95 So. Central Avenue" (A-98). This is the same store number and premises address described in the Lease at #2 and #3 respectively.

9.      The annual rent payable is clearly defined in the Lease at #3 (commencement rent + annual adjustments) and at # 13 (taxes). In addition to rent, the Lessee paid for care of premises (at #7); fire insurance (at #10); liability insurance (at #11); "triple net" expenses (at #14); and utilities (at #15). There were not any expenses chargeable against full rent payable by Lessee to the Lessor.

10.      Pamela Carvel from personal knowledge here states that through the term of the Lease, Carvel Corp. employees controlled all payments of rent, correspondence, and dispute resolutions (see as example A88-A92). The telephone number for Franchise Stores Realty Corp. was always the telephone number of Carvel Corp. The employees dealing with rent matters, including legal counsel, where the employees of Carvel Corp. Pamela Carvel reviewed discovery documents in another matter from Franchise Stores Realty Corp. The documents were located at Carvel Corp.

4

headquarters (at that time in Connecticut; see A-99). The Franchise Stores Realty Corp. documents were situated in the same file drawers with Carvel Corp. records. Carvel Corp. employees oversaw discovery for Franchise Stores Realty Corp. documents.

11.     Focus Brands Inc. owns Carvel Corp. (see A-100), which owns Franchise Stores Realty Corp. All three entities now share the same address at 200 Glenridge Point Parkway, Suite 200, Atlanta, Georgia, 30342 (A101-A104).

12.     The premises covered by the Lease was insured by "Focus Brands Inc. 175 Capital Boulevard, Suite 400, Rocky Hill, CT 06067" which is the same address used by Carvel Corporation as cited in the Complaint (see Complaint at #6; also see A-93, A-95). As late as 2004, Focus Brands Inc. named Agnes Carvel's successors in interest as additionally insured parties for the policy covering the Lease premises.

13.     On the Internet, at freefranchisedocs.com, an alleged copy of a current Carvel Franchise Agreement is posted, listing "Franchise Store Realty Corp" in "Schedule B" to the Franchise Agreement in a "Rider to Lease" for franchise premises.

14.     In its Motion to Dismiss, Carvel Corp. did not deny that Franchise Stores Realty Corp. is a wholly owned subsidiary controlled by

5

Carvel Corp. On information and belief, Carvel Corp failed to make any

disclosure pursuant to *Federal Rules of Civil Procedure* Rule 7.1:

> Disclosure Statement
> (a) Who Must File:
> Nongovernmental Corporate Party. A nongovernmental corporate party to an action or proceeding in a district court must file two copies of a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.
> (b) Time for Filing; Supplemental Filing.
> A party must:
> (1) file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court, and (2) promptly file a supplemental statement upon any change in the information that the statement requires.

15.    Courts have used the *"National Labor Relations Board Standard"* for deciding "affiliate liability" under the National Labor Relations Act. The NLRB uses a Four Factor Test, each being of equal weight: i) common ownership, ii) common management, iii) interrelated operations, iv) centralized control of labour and personnel. Carvel Corp. and Franchise Stores Realty Corp. satisfy all four elements of the test for "affiliate liability". Carvel Corp. consistently holds itself out as directing all Lease, legal, and other matters concerning Franchise Stores Realty Corp.

16.    Carvel Corp. alleged that New York law is applicable because Lessor and Lessee were New York citizens. This is untrue since both Thomas and Agnes Carvel were domiciled and voting citizens of Palm

6

Beach County, Florida since 1984. Nonetheless, if Defendant's position were applied, New York laws on the payment of debts, the priority of claims, and the abatement of remainder interest, favors judgment for Plaintiff.

17.    If *New York Debtor and Creditor Law* s. 280 were applied, it provides that in any case not provided for in that statute, the rules of law and equity including in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, mistake, or other invalidating cause shall govern.

18.    If New York estate law were applied, *Surrogate's Court Procedure Act* ("SCPA") and *Estates, Powers, and Trusts Law* ("EPTL") are summarized as follows:

- *SCPA* 1610(2); 1810; 1811; *EPTL* 13-3.6 direct that a remainder beneficiary does NOT have rights that stand ahead of creditors.

- *SCPA* 1810 directs "Nothing...shall prevent a claimant from commencing an action on his claim at law or in equity..."

- *SCPA* 2215(3), as cited in the New York decision (A-8), requires the return of all "assets" prematurely distributed in excess of the mere residue.
   If the precedent conditions fail, such as Agnes' unrestricted disposal of income, mandatory payment of income from Tom's estate to Agnes, and other conditions for Agnes' benefit mandated in Tom's 1988 Will, then the "Agreement" is void and unenforceable.

- *SCPA* 2215; *EPTL* 13-3.6 directs that an alleged remainder beneficiary does NOT have rights that stand ahead of the Estate's executor.

7

- *EPTL* 13-1.3 directs payment of administration expense, debts and funeral expense <u>before</u> other dispositions.

- *EPTL* 13-1.3 directs that the residuary dispositions <u>abate</u> second if there are insufficient funds to pay administrative expenses, debts and funeral expenses.

- *EPTL* 13-1.3 directs those beneficiaries whose rights are improperly impaired, by contravention of abatement, are entitled to indemnification.

- *EPTL* 13-1.3 directs that interests shall abate to give effect to <u>the express or implied intention of the testator</u>.

- *EPTL* 13-1.3 directs the <u>ALL property AND income</u> is chargeable with the payment of administration expenses, debts and funeral expenses.

- *EPTL* 13-3.6 directs <u>a fiduciary may void any agreement in fraud of creditors</u> or others, or maintain an action to set aside such agreement.

19.    Franchise Stores Realty Corp. denies payment under the Lease to Agnes Carvel and her successors in interest (A-34) by alleging that a New York decision made others the "landlords" to whom payment was made. The most significant problem with this position is that Carvel Corp./Franchise Stores Realty Corp. stopped paying rent to Agnes Carvel's successors in interest <u>before</u> the alleged October 2003 deed (A-36); <u>before</u> the decision was rendered on April 1, 2002 (see A-29); and <u>before</u> the trial was even held in November 2001 (see A-8, A-9) --- and although Agnes' successors were still named additionally insured as of "<u>12/06/2004</u>" (a-93). This statement by Carvel Corp. attorneys was clearly a misrepresentation of

8

material facts now demonstrated correctly by Plaintiff's documentary evidence.

20.    Plaintiff has met its initial burden of establishing its entitlement to summary judgment as a matter of law by submitting the Lease agreement, and proof of nonpayment (*Canon Fin. Serv. v Medico Stationery Serv.*, 300 A.D.2d 66, 751 N.Y.S.2d 194) in the form of the attorney's letter denying payment to Agnes Carvel's successors in interest (A-34). As clearly set out in the original Complaint, the supposition by the attorney for payment to others is wholly erroneous and misrepresents the New York decision requiring Agnes' unrestricted disposal of any and all income, and New York statutes requiring all assets be subject to claims, and any assets distributed in error or excess of a mere remainder amount must be returned.

21.    Plaintiff has also clearly established with documentary evidence that Carvel Corp. intimately controls the Lease, payments, and legal matters concerning Franchise Stores Realty Corp., thereby establishing Carvel Corp.'s responsibility for the default and its affiliate liability for the debt to Agnes Carvel and her successors in interest.

22.    The motion for summary judgment is "an Integral part of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Rule 1: namely, "to secure the just, speedy and

9

inexpensive determination of every action." (*Celotex Corp. v. Catrett* U.S.317, 327, 91, L. Ed, 2d 265, 106 S.Ct. 2548 1986)).

23.     A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. (Rule56(c), *Fed.R.Civ.P.*; *Silver v. City Univ.*, 947 F.2d 1021, 1022(2d Cir. 1991)).

24.     If, when "viewing the evidence produced in the light most favorable to the nonmovant . . . a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." (*Binder v. Lonq Island Lighting Co.*, 933 F.2d 187, 191, (2d Cir.1991)).

25.     The Court of Appeals explained, "the trial court's task at the summary judgment stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." (*Gallo v. Prudential-Residential Serv., Ltd.*, 22 F.3d, 1219 (2d Cir,1994)).

26.     The court's function, on a motion for summary judgment, is one of issue identification, not issue determination. (See e.g. *Sillman v. Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 144 N.E.2d 387, 165

10

N.Y.S.2d 498 (1957); *Grullon v. City of New York*, 297 AD2d 261, 747 N.Y.S.2d 426 (1st Dept 2002)).

27.    Wherefore, Plaintiff requests an order of the District Court granting summary judgment for payment in full of **$811,450.04**.

## ALTERNATIVELY, LEAVE TO AMEND COMPLAINT

28.    In the alternative, if summary judgment is not granted, Plaintiff moves to amend the complaint for discovery based on evidence of conspiracy to defraud using Franchise Stores Realty Corp.; and for discovery to determine the substantive alter-egos and controlling entities for Franchise Stores Realty Corp. liable for debts if Franchise Stores Realty Corp. was stripped of assets to evade enforcement of judgment for payment.

29.    The cure to Carvel Corp.'s claim that it has no liability for claims against Franchise Stores Realty Corp. is to amend the Complaint to name Franchise Stores Realty Corp. (a New York corporation) and to determine those unknown parties who may have conspired to defraud Agnes Carvel, her successors in interests and her creditors under U.S. laws.

30.    *Federal Rules of Civil Procedure Rule 15(a)* states that after a responsive pleading is served a party may amend its pleading only by leave of the court and leave shall be freely given when justice so requires. Justice

11

requires fraud against Agnes Carvel and her successors in interest be identified and remedied.

31.    Leave to amend is **not** sought in bad faith; it would **not** cause undue delay or prejudice to the Defendants; no previous request to amend was made; and the amended Complaint would cure and thereby survive a motion to dismiss. Leave to amend is herewith requested.

32.    Pamela Carvel now seeks leave to amend the Complaint to include as Plaintiffs all successors in interest to Agnes Carvel that Pamela Carvel represents pursuant to Delaware statutes.

33.    *Federal Rules of Civil Procedure Rule 20(a)* states, "all persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."

34.    Pamela Carvel now seeks leave to amend the Complaint to include Carvel Corp., Franchise Stores Realty Corp., John/Jane Doe 1-20, and Doe Co. 1-20 as Defendants, who will be identified through discovery.

35.    The Complaint is also amended to include 18 *U.S.C. sec.* 1664 because, on information and belief, Carvel Corp. may have conspired with others to use Franchise Stores Realty Corp. to fraudulently transfer to others

12

payment of rent due Agnes Carvel and her successors in interest in an attempt to benefit Agnes Carvel's victimizers and adversaries by denying income to pay professional legal representation to assert Agnes Carvel's claims.

36.    If Carvel Corporation stripped Franchise Stores Realty Corp. of all its assets in an attempt to evade enforcement of claims against the wholly owned subsidiary of Carvel Corporation, then the Motion to Dismiss the Complaint would be, in fact, a misrepresentation of material facts intended to fraudulently transfer assets out of reach of enforcement of the Lease.

37.    Amendment to include Franchise Stores Realty Corp. and others does not change the basis of Federal jurisdiction, which is asserted to be based on the Federal questions, not only for breach of the Lease but for aiding and abetting in the fraudulent transfer and conversion of unrestricted income due Agnes Carvel, her successors in interest, and her creditors in Delaware.

38.    Carvel Corp. and/or Franchise Stores Realty Corp. stopped paying rent long before there was any trial, determination, or transfer of deed in New York. If the unrestricted disposal of Agnes Carvel's income to Agnes successors in interest is prohibited, then Carvel Corp. and/or Franchise Stores Realty Corp. aided and abetted in a conspiracy to

13

fraudulently convert Agnes' property, transport such stolen property across states lines, engaged in bank, mail, and wire fraud by paying identity thieves instead of Agnes Carvel or her successors in interest.

WHEREFORE, Plaintiff demands judgment against Defendant:

a)    by summary judgment awarding Pamela Carvel **$811,450.04** on behalf of Plaintiff; or alternatively,

b)    granting leave to amend the Complaint as indicated.

July 25, 2007                     Respectfully submitted,

Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax fwd  1 954 524 1909

14

## CERTIFICATE OF SERVICE

I, Pamela Carvel, appearing *pro se*, hereby certify that on July 30, 2007, a true and correct copy and disk of the foregoing document was sent by overnight delivery to be filed with the Clerk of the Court which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Keller
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> 302 571 6600
>
> Thomas Spillman
> Smith, Gambrell & Russell, LLP
> Suite 3100
> Promenade 11
> 1230 Peachtree Street N.E.
> Atlanta, GA 30309-3592

Additionally, I hereby certify that on July 30, 2007, copies of the foregoing document were served via first class, postage pre-paid, to the above parties.

Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax fwd 1 954 524 1909

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## Case No. 07–CIV. 000237-JJF

|  |  |
|---|---|
| Agnes Carvel, her Delaware Successors in Interest, her Estate's Delaware Ancillary Administration, by Pamela Carvel, Plaintiffs, v. Carvel Corporation, a Delaware corporation, Franchise Stores Realty Corp., a New York corporation, John/Jane Doe 1-20, Doe Company 1-20 Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) |

## AMENDED COMPLAINT  FOR PAYMENT OF RENT

## DEMAND FOR JURY TRIAL

Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax fwd 1 954 524 1909

# TABLE OF CONTENTS

CITATIONS                                          PAGE i

AMENDED COMPLAINT FOR PAYMENT OF RENT              PAGE 1

FEDERAL JURISDICTION                               PAGE 3

FEDERAL VENUE                                      PAGE 5

PARTIES                                            PAGE 6

DOE DEFENDANTS                                     PAGE 7

BRIEF BACKGROUND                                   PAGE 9

DEFECTS IN CARVEL CORP. ASSERTIONS                 PAGE 14

NATURE OF ACTION                                   PAGE 23

COUNTS 1-3,
    FRAUD; CONSPIRACY TO COMMIT FRAUD              PAGE 26
COUNT 4
    TORTUOUS INTERFERENCE WITH CONTRACT            PAGE 28
COUNT 5
    TORTUOUS INTERFERENCE WITH BUSINESS            PAGE 29
COUNT 6
    ABUSE OF PROCESS                               PAGE 31
COUNTS 7-19
    CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS      PAGE 32
COUNTS 20-23
    RICO, MAIL FRAUD, WIRE FRAUD                   PAGE 24

DEMAND FOR JURY TRIAL                              PAGE 39

FRCP RULE 11                                       PAGE 39

CONCLUSION                                         PAGE 40

# TABLE OF CITATIONS

*Federal Deposit Ins.Corp. v. Allen*, (584 F.Supp. 386 (E.D. Tenn.1984) . 14


*Delaware Business Trust Act*, 1994 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6 *Del. C.* ch. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21, 23

10 *Del. C.* 4772 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

10 *Del. C.* 4782 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

10 *Del.C.* 4804 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

12 *Del. C.* 3802(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 11

12 *Del. C.* 2105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22


New York *Debtor and Creditor Law*, s. 278 . . . . . . . . . . . . . . . . . . . . . 15

New York *Debtor and Creditor Law*, s. 280 . . . . . . . . . . . . . . . . . . . . . 16

New York *Uniform Fraudulent Transfer Act*. . . . . . . . . . . . . . . . . . . . . 21

New York *Surrogate's Court Procedure Act* "SCPA"
*SCPA* 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*SCPA* 2215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

New York *Estates, Powers, and Trusts Law* ("EPTL")
*EPTL* 13-1.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22,

18 *U.S.C.* 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

18 *U.S.C.*242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

18 *U.S.C.*245 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

18 *U.S.C.*1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 24, 35, 38

18 *U.S.C.*1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 24, 35, 38

18 *U.S.C.*1961-1968 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 20, 23, 24, 34

18 *U.S.C.*1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

18 *U.S.C.*1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 24

18 *U.S.C.*1965 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 *U.S.C.*2314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24, 34, 35

18 *U.S.C.*2315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24, 34, 35

18 *U.S.C.*ch. 95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 *U.S.C* ch..96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28 U.S.C. 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 32, 33

28 U.S.C. 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 *U.S.C.* 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 *U.S.C.* 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32

42 *U.S.C.* 1982 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32

42 *U.S.C.* 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32

42 *U.S.C.* 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32

42 *U.S.C.* 1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24, 32, 33

42 *U.S.C.* 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24, 32, 33

*Federal Rules of Civil Procedure* ("FRCP")
*FRCP* Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*FRCP* Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*FRCP* Rule 71 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*FRCP* Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*U.S. Constitutional Amendments* I . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

*U.S. Constitutional Amendments* V . . . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

*U.S. Constitutional Amendments* IX . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

*U.S. Constitutional Amendments* XIV . . . . . . . . . . . . . . . . . . 3, 5, 24, 32, 33

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Agnes Carvel, her Delaware Successors in Interest,) her Estate's Delaware Ancillary Administration, ) by Pamela Carvel, Plaintiffs, ) ) v. ) ) Carvel Corporation, a Delaware corporation, ) Franchise Stores Realty Corp., a New York corporation, ) John/Jane Doe 1-20, Doe Company 1-20 Defendants. ) | **AMENDED COMPLAINT**<br><br>Case No. 07CIV000237-JJF<br><br>**DEMAND FOR JURY TRIAL** |

## AMENDED COMPLAINT FOR PAYMENT OF RENT

Plaintiffs Agnes Carvel and her successors in interest pursuant to 12 *Del. C.* §3802(b) (1994), by Pamela Carvel as fiduciary, Delaware Ancillary Administrator for the Agnes Carvel Estate ("Estate") of London, England, and Agnes Carvel's personal representative for the time in question (through April 30, 2007) (collectively referred to as "Plaintiffs"), hereby state, with first hand knowledge of the facts and on information and belief as to the actions of others, the following Amended Complaint against Carvel Corporation, a Delaware corporation and Franchise Stores Realty Corp., a New York corporation that is the wholly owned subsidiary of Carvel Corp. and/or Doe Co. 1-20, for unpaid rent income and interest income thereon under the Lease for "Carvel" franchise store premises to Franchise Stores

1

Realty Corp. (Lessee) from Thomas and Agnes Carvel (Lessor), dated April 23, 1987 through April 30, 2007 (A-1) which property and Lease income was promised by Agnes Carvel on August 31, 1994 by assignment to be contributed to Realities, a Delaware Business Trust (A-105); and against John/Jane Doe 1-20, Doe Co. 1-20, individually and in their representative capacities as agents for those who controlled execution of the Lease; who controlled rent payable; who received or profited from the proceeds from the sub-lease to the "Carvel" franchise owner; who may have fraudulently transferred to others rental income payable under the Lease to Agnes Carvel and her successors in interest; who may have transferred assets to others to evade claims by Plaintiffs as creditor; who may have aided and abetted in a conspiracy to fraudulently converted income due Agnes Carvel and her successors in interest; and who may have conspired in tax fraud.

Pamela Carvel is compelled to appear *pro se* after having spent all her disposable resources defending Agnes, an elder person, against harassment, intimidation, fraudulent conversion and obstruction of Agnes Carvel's control of Carvel assets and inalienable rights. By this lawsuit Plaintiffs seek an order directing Defendants to pay the sum of **$550,618.34** for known unpaid rent since 2001, and annual interest on that unpaid balance of **$260,831.70** at the rate of 10.75% (on information and belief the applicable

2

statutory rate). Plaintiffs also seek discovery to identify other possibly unpaid obligations under the Lease between 1987 and 2007, and damages for possible conspiracies to defraud the Carvels and their successors in interest.

## FEDERAL JURISDICTION

1.     United States District Court for the District of Delaware has original jurisdiction over this action pursuant to 28 *U.S.C.* §1331 (federal questions) for civil actions arising under the Constitution and laws of the United States; including but not limited to: 18 *U.S.C.* §241(conspiracy against rights), §242 (deprivation of rights), §245 (protected activities), §1341(frauds and swindles); §1343 (fraud by wire); §1961, et seq. (RICO), §1964 (a),(c) (civil RICO remedies); 28 *U.S.C.* §1343 (civil rights); 42 *U.S.C.* §1981(equal rights), §1982 (property rights), §1983 (deprivation of rights), §1985 (conspiracy against rights); and under the First (redress of grievances); Fifth (due process), Ninth (other rights), and Fourteenth (equal treatment) Amendments to the Constitution of the United States.

2.     This Court has supplemental jurisdiction over the state claims herein pursuant to 28 *U.S.C.* §1367, as Plaintiffs are alleging state claims arising from a common nucleus of operative facts with Plaintiffs' Federal claims.

3

3.    The Amended Complaint naming Franchise Stores Realty Corp. and others, and to expressly protect Agnes Carvel's Delaware claims, successors, claimants, beneficiaries, fiduciary and creditors, does not change the original basis of Federal jurisdiction which is asserted based on the Federal questions not only for breach of the Lease but for aiding and abetting in the conversion of unrestricted income due Agnes Carvel and Agnes' successors in interest.

4.    Plaintiffs amend Complaint to include 18 *U.S.C.* §1664 on the information and belief that discovery will prove that Carvel Corp. and others conspired to use Franchise Stores Realty Corp. to fraudulently evade payment of rent due Agnes Carvel and her successors in interest in Delaware, evade taxes in fraud against government agencies, and/or to strip Franchise Stores Realty Corp. of its assets to evade payment of any judgment to creditors.

5.    If Agnes Carvel's unrestricted disposal of income to her successors in interest is denied, then Defendants' intent to default in the payment of rent to Plaintiffs demonstrates there exist questions of U.S. Constitutional law including possible criminal intent and/or conspiracy: to defraud; to aid and abet in fraudulently converting Agnes' property to Defendants; to steal and/or fraudulent convert Agnes Carvel's property away

4

from her successors in interest; to commit tax fraud; to transport stolen property of across state lines; to engage in bank, mail and wire fraud; and to harm Agnes Carvel as an elder person and harm her successors in interest by paying Agnes' income to identity thieves; and to obstruct and violate fundamental, substantive and material rights guaranteed to Agnes Carvel, Pamela Carvel, and Agnes' successors in interest by denying equal treatment, due process, and protection from violations of rights under U.S. law (*U.S. Constitutional Amendments* I, V, IX, XIV; 18 *U.S.C.* §241, §242, §1964, §2314, §2315, 28 *U.S.C.* §1343 *U.S.C.* ch. 95, *U.S.C.* ch. 96; 42 *U.S.C.* §1981, §1982, §1983, §1985, §1986, §1988).

## FEDERAL VENUE

6.    Delaware is the correct venue for this Complaint because the possible crimes and acts that defrauded Agnes Carvel also defrauded the Estate's ancillary administration in Delaware, defrauded Delaware claimants and creditors, and violated Delaware statutory and contract obligations owed by Agnes Carvel (12 *Del. C.* §3802(b) (1994)).

7.    Venue lies in this district under 28 *U.S.C.* §1332 (c)(1), §1332 (c)(2), §1391 (c), (d) because Carvel Corp. is a Delaware corporation and by first hand knowledge the controlling entity of all matters relating to the Lease; because aggrieved successors in interest claim are under Delaware

5

statutes; and because Agnes Carvel, her estate and Pamela Carvel are deemed alien foreign citizens.

8.      Venue in this district is proper under 18 *U.S.C.* §1965. This Complaint alleges RICO violations and therefore invokes the venue provisions of the RICO statute.  Justice demands that this district hear the instant case, as provided in 18 *U.S.C.* §1965(b).

## PARTIES

9.      Plaintiffs, Agnes Carvel, Agnes' estate's Delaware Ancillary Administrator, and Agnes' successors in interest by Pamela Carvel as fiduciary, are citizens of the United Kingdom, having a mailing address: 28 Old Brompton Road, Suite 158, London SW7 3SS England, United Kingdom. Plaintiffs are defined as a foreign citizen (28 *U.S.C.* §1332 (c)(2)).

10.     Defendant, Carvel Corp. was a Delaware corporation at the commencement of the Lease and on information and belief remains a Delaware corporation, having mailing addresses: Carvel Corp. 175 Capital Blvd., Suite 400, Rocky Hill, CT 06067-3914 (A-93, A-95); and 200 Glenridge Point Parkway, Suite 200, Atlanta, Georgia, 30342 (A101-A103). The attorneys for Carvel Corp. identify themselves as Karen Keller, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801.

6

11.    On information and belief, Defendant Franchise Stores Realty Corp.'s lawyer is Thomas Spillman, Smith, Gambell & Russell, LLP, Suite 3100, Promenade 11, 1230 Peachtree Street, N.E., Atlanta, Georgia 30309-3592. Franchise Stores Realty Corp. also uses Carvel Corp.'s address at 200 Glenridge Point Parkway, Suite 200, Atlanta, Georgia, 30342 (A-104). This is the same address used by "Focus Brands Inc." (A101-A102).

12.    Plaintiffs assert that the People and governmental entities of the United States on behalf of whom Plaintiffs also complain, because on information and belief they have also been personally and financially damaged, through tax fraud, money laundering, and charity fraud by co-conspirators who induced Defendants to breach the terms of the Lease or who by identity theft that stole the taxable rent income due Agnes Carvel's successors.

## AS YET UNNAMED CO-CONSPIRATORS
## "DOE" DEFENDANTS

13.    There is intentional interference with Plaintiffs' business relationships; intentional obstruction of the rights of Agnes Carvel, her successors in interest, and fiduciary Pamela Carvel; and an attempt to prevent the Pamela's pursuit of substantial Delaware claims so that strangers may divert and profit from assets owned by Agnes Carvel and her successors in interest.

7

14.    This interference, that includes oppression of the rights, and the hindrance of Pamela Carvel's rights in the performance of her fiduciary obligations, acts across state lines and may result in the identification of intentional criminal acts in violation of Federal laws and international laws involving additional parities who may be identified by discovery. Plaintiffs reserve the right to further amend this Complaint as necessary to include others.

15.    Upon information and belief, Defendants John/Jane Doe 1-20 and Doe Co. 1-20 are individuals and businesses to be identified upon subsequent discovery, who participated in the activities described herein. Various other entities, individuals, companies, and corporations, presently unknown to Plaintiffs and not expressly named as Defendants in this Complaint but identified as "Doe" defendants participated as co-conspirators in the violations alleged in this Complaint, performed acts and made statements in furtherance thereof.

16.    Such Doe defendants as co-conspirators aided, abetted, or participated as associates of Defendants in the enterprises identified below in the commission of the wrongful acts alleged herein or otherwise caused the damages suffered by Plaintiffs.

17.    As to the persons and companies sued as Doe 1-20, Plaintiffs are ignorant of the true names, capacities, nature and extent of participation in the course of conduct alleged here and therefore, sues these defendants by such fictitious names. Plaintiffs will, if necessary, seek leave of Court to amend this Complaint to reflect the true names and capacities of the defendants designated herein as Doe defendants when their identities and liabilities become known.

## BRIEF BACKGROUND

18.    Agnes Carvel and her husband Thomas Carvel were owners and operators of the first "Carvel" ice cream store and of its premises located at 95 South Central Park Avenue in Hartsdale, New York – the subject premises of the Lease. It was Agnes Carvel's directions to Pamela Carvel that the location should become a museum at the end of the Lease. Carvel adversaries destroyed this and all other benevolent intentions of Tom and Agnes Carvel, and perpetuate such destruction.

19.    In 1987, Tom and Agnes jointly leased the store premises to Carvel Corp. through its wholly owned leasing subsidiary Franchise Stores Realty Corp., with a subsequent sub-lease to a "Carvel" franchise operator (A-1).

9

20.    The Carvels' jointly owned stock of Carvel Corp. was sold on November 21, 1989 to "Investcorp", so-called "investment bankers" for Bahraini money. Prior to his death, Thomas Carvel estimated the jointly owned Carvel family assets to be more than $250 million, but also stated that his employees embezzled over $100 million and colluded with Investcorp to defraud the Carvels in the sale.

21.    Agnes Carvel acquired sole surviving ownership of the Hartsdale property and the Lease as a result of the suspicious death of her husband Tom on October 21, 1990. Thomas Carvel's death certificate was falsified to evade an autopsy to determine the cause of death. Thomas Carvel was suspiciously found dead the day before he was going to fire his employees and begin investigations with his niece Pamela Carvel, a corporate fraud investigator.

22.    As the result of Tom's death, Agnes Carvel never received the proceeds from the sale of her jointly owned Carvel stock. Virtually all of the money "disappeared" into the hands of corrupt employees, attorneys, bankers and politicos in Westchester County, New York, who stole control of the Carvels' corporations, trusts, and charities, thereby using the Carvels' own money to litigate to harm, intimidate and deprive Agnes Carvel of all assets and mandatory income due her.

23. After the death of Thomas Carvel and the sale of Carvel Corp., the rent payments from Carvel Corp./Franchise Stores Realty Corp. were increasingly delinquent. Notices to Carvel Corp./Franchise Store Realty Corp. about annual rent increases and other additional rent due under the Lease were ignored.

24. In 1994, because of incessant attacks (physical, psychological and legal) on Agnes Carvel and on Pamela Carvel as Agnes' sole advocate and protector, on the advice of her attorneys Agnes Carvel promised by deed and Lease assignment (A-105) to contribute value of the Carvel store property and its income to Realities (pursuant to the *Delaware Business Trust Act*, 1994) of which Agnes was a grantor and a beneficial owner.

25. The Estate's Delaware ancillary administration asserts and acknowledges Agnes' obligation to the Delaware Business Trust (12 *Del. C.* ▪3802(b)). The purpose of the Delaware Business Trust was protection for Agnes from **personal** threats by her New York adversaries who intended to take Agnes' property and cause Agnes' death from stress, but also to prevent further abuse of Carvel assets by those who victimized Agnes Carvel for the eight years she survived Tom.

26. The purpose of the Delaware Business Trust was to preserve Agnes' assets away from predators, for the benefit of Agnes, and for future

11

protection of Pamela who was paying Agnes' medical, living and business expenses after Agnes was denied for 8 years all asset control, ownership and income as surviving owner and from her husband's estate. The Carvels wished to protect themselves and their property in Delaware for their well-being as well as legitimate benevolent intentions that had been destroyed and grossly perverted in New York.

27.    Upon Agnes' death on August 4, 1998, Agnes had no assets. The Estate had no assets. Any claims that would be defended or pursued on Agnes' and her estate's behalf had to be financed by cash advances to the Estate from Pamela Carvel as Agnes' executor, personal representative, and the Estate's ancillary administrator in Delaware. Agnes' adversaries could have walked away with all they had stolen and diverted from Agnes, but Agnes' adversaries' avarice consumed them completely. The adversaries sought to devour every possible asset that Agnes sought to protect from them in Delaware.

28.    Agnes' adversaries are strangers, not family, with the one exception being Agnes' niece Betty Godley. These predatory adversaries obstructed all possible financial resources due Agnes, an elder person, as surviving owner, as income beneficiary, and as charitable benefactor,

12

thereby violating the Constitutional rights of Agnes, her estate, and Pamela as a fiduciary entitled to equal treatment as all other fiduciaries.

29.     Agnes and Pamela (a member of the Association of Certified Fraud Examiners in the U.S. and U.K.) assisted the F.B.I. and New York State Attorney Generals Abrams and Spitzer with investigations into financial frauds by Agnes' adversaries. Three convictions for financial felonies resulted, along with the forced ouster of two alleged foundation managers for charity fraud, but not before the duo installed their cronies to continue opposing Agnes and Pamela by abusing Agnes' restricted gifts, intended only for charitable purposes, to litigate exclusively to deprive Agnes of all benefit from her life's work and earnings.

30.     The "legal" ploy throughout these Carvel matters has been to threaten, intimidate, stress, and cause fear in Agnes as an elder person through financial deprivation so as to thwart successful legal opposition and assertion of Carvel rights by obstructing virtually every penny the Carvel family made in over 50 years from reaching Carvel family control. Such behaviour that is so repugnant to public policy was the reason Agnes sought to protect her property in Delaware, away from the New York fraudsters and political corruption under the fraudsters' control. This is also the reason that justice demands the Delaware venue to assert RICO claims.

## DEFECTS IN CARVEL CORP. ASSERTIONS

31.    Demands on Franchise Stores Realty Corp. to pay rent, to pay rent increases, and to make other Lease payments were unsatisfactory, failed to gain compliance, or were ignored totally (see as example A-33, A-85,A-87). The responding communications concerning the Lease were on Carvel Corp. letterhead. The telephone and address used belonged to Carvel Corp. The employees involved were Carvel Corp.'s employees.

32.    It is a misrepresentation of material facts by Carvel Corp. (supported by Plaintiffs' documentary evidence) that Carvel Corp. now alleges that it is not the true Defendant in this matter as agent and controller of Franchise Store Realty Corp. and Lease compliance. Public records indicate that Franchise Stores Realty Corp., Carvel Corp. and Focus Brands Inc. all share the same addresses, including the address used when asserting authority over Lease compliance matters (A88-A94).

33.    Further discovery is necessary to fully demonstrate the substantive relationship of Carvel Corp. as Defendant, as well as any affiliate liability should Franchise Stores Realty Corp. be stripped of assets. In *Federal Deposit Ins.Corp. v. Allen*, (584 F.Supp. 386 (E.D. Tenn.1984)) among the issues considered by the court in disregarding corporate boundaries were:

14

- the use of the corporation as an instrumentality or business conduit for an individual or another corporation;

- the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another;

- the use of the corporation as a subterfuge in illegal transactions;

- the formation and use of the corporation to transfer to it the existing liability of another person or entity; and

- the failure to maintain arms length relationships among related entities." (*Id.* at 397 (citations omitted), also cited in *Greene v. Hill Home Dev. Inc.*, CA No.03A01-9210-CH-00369, 1993 WL 17115, at *2 (Tenn. Ct. App. Jan. 28, 1993); also see *Oceanics,* 112 S.W.3d at 140-141 (citing *In re B & L Laboratories, Inc.*, 62 B.R. 494, 504 (Bankr. M.D. Tenn.1986) (holding that "all of these factors need not be present to justify disregard of the corporate boundaries; however, it is necessary that substantial equities favour the aggressor party.")).

34.    Carvel Corp.'s Motion to Dismiss cites the application of New York law to the Lease (Memorandum, page 4 footnote). Plaintiffs do not accept that Agnes Carvel, Pamela Carvel, or the successors in interest to the Lease were/are New York residents or citizens during the term of the Lease.

35.    Nonetheless, if applying *New York Debtor and Creditor Law*, s. 278, where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or disregard the conveyance and attach or levy execution upon the property conveyed.

15

36.    Additionally, *New York Debtor and Creditor Law* s. 280 provides that in any case not provided for, the rules of law and equity including in particular the rules relating to the law of principal and agent, and the effect of fraud, misrepresentation, mistake, or other invalidating cause shall govern.

37.    If Carvel Corp. is attempting to conceal from the court interlocking ownership and being an insider of the debtor Franchise Stores Realty Corp. in order to fraudulently transfer rents and assets to others so as to evade the Plaintiffs' claims pursuant to the Lease, then such transfers can be set aside.

38.    Carvel Corp. now alleges that Agnes Carvel's adversaries were paid the rent amounts due Agnes and her successors under the Lease (A-34); however, Carvel Corp. refuses to provide proof of rent payments to any party in full satisfaction of the Lease (A-85).

39.    Carvel Corp. stopped paying the correct rent due and then stopped paying entirely in 2001, long before any alleged landlord title change in 2003. If Carvel Corp. has made substantive misrepresentation of material facts then intent to engage in a fraudulent enterprise is demonstrated.

16

40.    Franchise Stores Realty Corp. denies payment under the Lease to Agnes Carvel and her successors in interest (A-34) by alleging a New York decision made others the "landlords" to whom payment was made. This is an incorrect and incomplete reading of the New York decision. The alleged "landlords" hold this title in trust pursuant to "SCPA 2215(3)" that requires return of the "asset" to Realities if it is in excess of the mere remainder amount of Agnes' estate. Further, for the decision to be valid it requires the unrestricted disposal of any and all income by Agnes.

41.    The most significant problem with the Defendants' position as asserted is that Carvel Corp./Franchise Stores Realty Corp. stopped paying rent to Agnes Carvel's successors in interest <u>before</u> the alleged October 2003 deed (A-36); <u>before</u> the relevant decision was rendered on April 1, 2002 (see A-29); and <u>before</u> the trial was even held in November 2001 (see A-8, A-9) -- and although Defendants named Agnes' successors as additionally insured under the Lease as late as "<u>12/06/2004</u>" (a-93). This statement by attorneys alleging to represent Franchise Stores Realty Corp. was clearly a misrepresentation of material facts now demonstrated correctly by Plaintiffs' documentary evidence.

42.    On information and belief, Carvel Corp. has not paid the all amounts due as rent under the Lease payable to Agnes Carvel and her

17

successors in interest. Plaintiffs seek complete discovery over the entire term

of the Lease to determine complete compliance and payment, and to identify

intentional tortuous interference with the Lease contract.

43.     Plaintiffs assert rights under Lease paragraphs 19 and 27 to

enforce the terms of the Lease for such defaults:

> "19.  No requirements whatsoever of this letting shall be deemed or
> waived or varied, nor shall the Lessor's acceptance of any payment
> hereunder with knowledge of any default, or Lessor's failure or delay
> to take advantage of any default, constitute a waiver of the Lessor's
> right by virtue thereof or a waiver of any subsequent or continued
> breach of any requirement of this letting."

and

> "27.  The parties understand and agree that any and all remedies
> provided herein for defaults in the Lease are in addition to and not in
> substitution for any and all remedies available to the respective parties
> herein at law and equity."

44.     Nothing contained herein constitutes a waiver of any other

claims derived through Agnes Carvel to all income generated by said

property, the ownership of said property, or ownership of the proceeds of the

sale of such property; or waiver of assertions of fraud by the actions in

Westchester County Surrogate's Court; or waiver of the monetary damages

available from a determination of a criminal enterprise and conspiracy to

defraud in related matters, but outside this Lease.

45.     The Lease in question belonged to Agnes Carvel as surviving

owner outside probate. It does not comprise any part of Thomas Carvel's

estate or the "principal" of Thomas Carvel's estate that Agnes Carvel was intended to inherit, but which Agnes was wholly denied.

46.    Carvel Corp. alleged (A-34) that an "Agreement" contract decision, dated April 1, 2002 (A-8) by Westchester County Surrogate's Court in New York, altered Agnes Carvel's control of the Lease contract; however, the precedent condition for validity of the Agreement requires Agnes Carvel must have unrestricted disposal of any and all income. This precedent condition is also required to avoid fraudulent elections of the marital and QTIP deductions for Thomas Carvel's estate (see Decision pages 4-5; A-11,12). The testimony at trial of the Agreement draftsman, an alleged estate tax expert, was:

> "Newman further opined that **the Agreement placed no restriction on the disposition of income and did not prevent either Thomas or Agnes from gifting <u>or otherwise disposing of any or all of their income</u>** [Tr.630]. According to Newman, this was important to preserve the marital deduction for estate tax purposes since the Carvels' wills each provided a marital trust for the survivor. The use of the marital deduction would save the Carvels many millions of dollars of Federal estate taxes. (emphasis added)

47.    This statement of professional expert opinion by the very draftsman of the Agreement (without any request or direction from the Carvels to draft said document) forms a crucial demonstration of the intent, pattern, and fraudulent enterprise that invokes RICO claims. Failure to pay Lease income to Agnes Carvel and her successors in interest thereby evades

19

income taxes payable to the U.S. Government required under Thomas'
estate's elections. Obstruction of Agnes Carvel from disposing of "any or
all" of her <u>taxable</u> income, voids the Agreement. Failure to disclose
Defendants payments allegedly made pursuant to the Lease, but paid to co-
conspirators, potential violates Money Laundering laws and evades taxes.

48.     The Agreement decision, therefore, does not cover rent
"income" to Agnes Carvel, or else fraud exists. The Agreement does not
prohibit Agnes Carvel from disposing of "any or all" of that income during
her lifetime, such as by promise and assignment under Delaware law (or by
the directions created in her lifetime that are memorialized in Agnes'
uncontested Will as probated in London, England).

49.     The value of the property and the assigned Lease are subject to
enforcement under Delaware law and to inclusion in Agnes Carvel's estate
for tax purposes. Anyone who holds Agnes Carvel's property and income to
the detriment of Agnes and her creditors seeks to fraudulently convert those
assets away from Agnes, away from the Estate, away from the Delaware
ancillary administration, away from beneficiaries, creditors, and claimants,
and away from tax compliance. Such fraudulent conversion violates U.S.
laws (example, 18 *U.S.C.* 1961 et seq.), Delaware laws (example, 6 *Del.C.*

1301 et seq.) and New York laws (example, New York *Uniform Fraudulent Transfer Act*) and as cited herein.

50.    The Agreement decision stated that premature distributing of assets (page 22; A-29) is conditional pursuant to New York's *Surrogate's Court Procedure Act* 2215(3):

> "3.  If any creditor or person interested has received estate assets in excess of the amount determined on the settlement of the account to be due him the court is authorized to direct in the decree repayment by him of the excess to the fiduciary of the estate or otherwise as justice shall require and the exercise of such power by the court heretofore is confirmed."

51.    Pursuant to the Agreement decision, nothing more than the remainder of the "principal" received by Agnes from Thomas Carvel's estate is subject to the Agreement contract. Any principal or income distributed to alleged remaindermen that is in excess of a mere remainder amount must be returned to Agnes Carvel's estate, or in the case of the deeds returned to Realities. The remainder amount cannot be determined until the Estate, including the Delaware ancillary administration, is closed with acknowledgement from the taxing authorities.

52.    The rental sums in question are not contained in or the subject of any judicial accounting before the Westchester Surrogate. The Surrogate also asserts that he lacks of jurisdiction to determine Delaware matters, and non-New York claims, and used such assertion to obstruct funds from

Pamela Carvel as foreign fiduciary. Delaware obligations to creditors and contracts take priority of payment from Agnes' assets before any remainder amount may be determined (12 *Del. C.* 2105; also see New York *Surrogate's Court Procedure Act* ("SCPA") 1610, 2215; New York *Estates, Powers, and Trusts Law* ("EPTL") 13-1.3).

53.    The    Agreement    decision    does    not    relieve    Carvel Corp./Franchise Stores Realty Corp. from payment of rent income to Agnes Carvel's successors in interest as stated by Franchise Stores Realty Stores Corp.'s lawyer (A-34); however, failure to pay Agnes' income to her successors, or conversion of Agnes' income by another, creates an intentional breach and voids the Agreement contract.

54.    The New York foreign order was not filed as a judgment in Delaware (10 *Del. C.* 4772, 4782). Additionally, identity thieves obtained the New York decision by default against Agnes' successors in interest, and without jurisdiction over or notice to named beneficiaries under the uncontested Last Will, or Delaware and other creditors.

55.    The New York decision was obtained by fraud upon the named beneficiaries of Agnes' estate, without jurisdiction over them, without notice to them, and without participation by them or by the named remainder beneficiary, the Carvel Foundation in Florida. Agnes Carvel created the

22

Carvel Foundation as the named charitable remainder beneficiary of her uncontested Will probated in London, England. The Will prohibits inheritance by anyone who harmed or litigated against Agnes in her lifetime. Agnes' adversaries, to whom the Lease rent was allegedly paid, are disqualified from inheriting pursuant to the uncontested terms of the Will even if they were not prohibited as identity thieves and charity fraudsters.

56.    A foreign judgment obtained by default or fraud (among other reasons) is not enforceable in Delaware (10 *Del.C.* 4804; 6 *Del. C.* ch. 13).

## NATURE OF ACTION

57.    Upon information and belief, Defendants engaged in an enterprise within the definition contained in the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 *U.S.C.* §1961-68, §1961(4), in connection with which the named Defendants together with the Doe defendants conduct activities prohibited by 18 *U.S.C.* §1962.

58.    This is a civil action, that commenced for Lease enforcement for payment of rent income, seeks RICO remedies authorized by Federal statutes, including but not limited the recovery of legal fees, related court costs and any additional fees that the court sees fit to be paid for and furnished as a result of the fraudulent and tortuous conduct of Defendants; and to hold accountable Defendants and their co-conspirators for engaging

23

in fraud and other unlawful conduct; and to compel Defendants to disgorge the proceeds of their unlawful conduct.

59.    The primary cause of action is failure to pay rent income due under the Lease to Plaintiffs that as a result of Defendants' misrepresentation of material facts now demonstrates an enterprise engaged in a pattern of racketeering activity across state lines, and a conspiracy to engage in racketeering activity. The primary objective of the racketeering enterprise has been to inflict sever economic hardship, distress and unnecessary expense upon Plaintiffs, with the intent to seize funds through deceptive means, to use mail and wire to assert fraudulent claims, to excuse non-compliance with the Lease, as well as to fraudulently transfer funds to third parties across state lines.

60.    Defendants failed and refused attempts to gain voluntary compliance with Lease obligations, and request for delivery of information without litigation, in apparent collusion with Agnes Carvel's long-standing adversaries. This breach was followed by substantive misrepresentation of material facts to Plaintiffs and this District Court, so that this action now arises under RICO, 18 *U.S.C.* §1961, §1962(d), §1964; 18 *U.S.C.* §1341, §1343, §2314, §2315; and under violations of rights 18 *U.S.C.* §241, §242, §245, 28 *U.S.C.* §1343, 42 *U.S.C.* §1981, §1982, §1983, §1985, §1986,

§1988, *U.S. Constitutional Amendments* I, V, IX, XIV; fraudulent conveyances, violations of common laws of the states of Delaware and New York involving common law fraud and creditor fraud.

61.    This case presents a distinction between a contractual obligation, and how, and with what intent that obligation is, or is not, performed. A case of "simple" fraud, bad faith, breach of contract, etc. is one thing; the underlying pattern of racketeering that produces the surface appearance of these simple symptoms is a different and separate matter, and one which falls under Federal jurisdiction.

62.    In this case, Plaintiffs claim this situation exists. Plaintiffs plead not only on the issue of performance of the Lease, but because of Defendants' substantive misrepresentation of material facts in letters to Plaintiffs and in official filings to the District Court in Carvel Corp.'s Motion to Dismiss, Plaintiffs also claim on the issue of the pattern of actions, motives and intent of non-performance in collusion with the Carvels' adversaries, all of which extends into the area of due process, and its denial.

63.    Plaintiffs assert that underlying the symptoms of this clear non-performance under the Lease is a motive and pattern of racketeering activity

25

from which Defendants do derive, and knew or should have known that they did derive, great financial benefit from financial harm to Plaintiffs.

64.    If Defendants were ignorant of the true material facts concerning the Lease, then there would be no reason for Defendants to deny Plaintiffs requests for payment or proof of payment in compliance with the terms of the Lease and for Defendants' to use misrepresentation of material facts to deny the obligation.

65.    Moreover, Defendants falsified their excuse for long-standing non-compliance with the Lease, as is proven by the Plaintiffs' timeline supported by documentary evidence (see paragraph #41 above).

66.    It stands to reason that these violations of RICO in a pattern of racketeering activity could not have been applied with such aplomb, and systematic consistency to Plaintiffs, without inferring that Defendants have these systems and patterns of racketeering activities internally institutionalized in such a way that this is their "pattern of doing business".

## COUNTS 1-3
### FRAUD; CONSPIRACY TO COMMIT FRAUD
### (Federal, Delaware, New York)

67.    Each of the allegations contained in paragraphs 1-66 is incorporated herein by reference.

68.     Defendants knowing, malicious, reckless and unwarranted denial of payment of rent to Plaintiffs, not only without cause but in contradiction to Defendants' own statements used to allegedly justify the breach, violated provisions of U.S., Delaware, and New York laws against fraud, conversion, and fraudulent transfer laws. Defendants are liable to Plaintiffs, jointly and severally for these violations.

69.     Plaintiffs believe Defendants' acts to be part of an internal group, that all acted in agreement and concordance, both written and spoken, in the activities to deny payment under the Lease to Plaintiffs for the benefit of Defendants and the Carvels' adversaries.

70.     It is highly unlikely within any corporate structure that a person with authority to act over the Lease would independently incur breach of contract liability and the costly consequences of litigation to defend violations of the Lease terms without guidance in corporate policy from others, or a promise of benefit from co-conspirators, or supposition of significant corporate profit --- unless malice was intended.

71.     Further, refusal by Carvel Corp. as parent company to address, correct or condemn Franchise Stores Realty Corp.'s failure to pay rent, the failure to provide evidence of payment of rent, and to authorize substantive

misrepresentation of facts to the District Court, is once again a token of consent and aid to these wrongful activities.

72.    Defendants took specific acts and conspired to conceal their liabilities under their false statements, fraudulent transfers, false court filings, fraudulent intent, and fraudulent acts in violation of Federal laws and State laws.

73.    Plaintiffs seek all their compensatory damages against Defendants and Doe defendants unknown to Plaintiffs at this time.

## COUNT 4
## TORTUOUS INTERFERENCE WITH CONTRACT

74.    Each of the allegations contained in paragraphs 1-73 is incorporated herein by reference.

75.    At all times relevant herein (1987-2007), there existed a Lease contract between Plaintiffs and Defendant Franchise Stores Realty Corp., the compliance with which was controlled by Carvel Corp. throughout. Defendants intentionally breached the Lease contract through intentional wrongful conduct, as more fully described above. Defendants' and Doe defendants conspired in the intentional interference with Plaintiffs' contract without any justification.

76.    Plaintiffs have been directly damaged by Defendants' and Doe defendants' tortuous interference with Plaintiffs' contract, as Plaintiffs lost

28

rental and investment income, lost profits, incurred costs, fees and expenses, needless litigation expense, and court costs in asserting contract enforcement against Defendants' malicious conduct including misrepresentation of material facts.

77. Plaintiffs seek all their compensatory damages against Defendants and Doe defendants unknown to Plaintiffs at this time. Defendants are responsible for the wrongful acts of their employees, attorneys and agents.

**COUNT 5**
**TORTUOUS INTERFERENCE WITH**
**PLAINTIFFS' BUSINESS EXPECTANCY**

78. Each of the allegations contained in paragraphs 1-77 is incorporated herein by reference.

79. At all times relevant to the allegations herein, Plaintiffs had expectations of economic advantage, benefit from rental business income, and investment income generated from the rental income. Defendants, harm Plaintiffs from the continuing, egregious and possibly malicious pattern of racketeering in violation of RICO, because Defendants are in violation of contractual duty, as well as common laws prohibiting fraud, and theft.

80. Without Defendants' wrongful acts of obstruction of rent income, it is reasonable and probable that Plaintiffs would have realized

economic advantage or benefits of about 400% return on international real estate investments since 1994 and about 200% since 2000.

81.    Defendants' and Doe defendants wrongful conduct and wrongful interference in violation of the Lease was without justification, and was a proximate cause of the destruction of, or harm to, Plaintiffs' rental income, business expectancy, opportunity losses, and the damages suffered by Plaintiffs.

82.    Defendants' and Doe defendants' intentional interference with a business relationship and intentional obstruction of the rights of Agnes Carvel and her successors in interest, Agnes' estate and its Delaware ancillary administration, and fiduciary Pamela Carvel, was an attempt to prevent Pamela's pursuit of substantial Delaware claims by obstructing funds to inflict financial hardship, so that co-conspirator strangers may divert and profit from fraudulent transfers of rent income.

83.    This oppression of the rights, infliction of financial harm, and obstruction of the ability of Pamela Carvel to perform her fiduciary obligations, acts across state lines. Discovery may result in the identification of intentional criminal acts in violation of Federal laws involving additional parties, therefore this conspiracy may be in furtherance of the obstruction of justice, and intimidation of witnesses, victims, and whistle-blowers.

30

Plaintiffs reserve the right to amend this complaint as necessary to include others and assert claims on behalf of U.S. government agencies harmed.

84.    Plaintiffs suffered damage and losses as a direct result of Defendants' and Doe Defendants engaging in wrongful conduct in violation of the Lease, as more fully described above, that wrongfully interfered with Plaintiffs' reasonable business expectation, and which had an adverse effect on Plaintiffs' rental income and investment income from violation of the Lease. Plaintiffs lost rental income, investment income, and profits. Plaintiffs are damaged by taxes evaded; burdens inflicted; costs fees, expenses, litigation and court costs incurred. Plaintiffs' harm is a direct result of Defendants' wrongful conduct in breach of contract.

85.    Plaintiffs seek all their compensatory damages against Defendants responsible for the wrongful acts, and from Doe defendants unknown to Plaintiffs at this time.

## COUNT 6
## ABUSE OF PROCESS

86.    Each of the allegations contained in paragraphs 1-85 is incorporated herein by reference.

87.    Plaintiffs assert that substantive misrepresentations of material facts were made by attorneys for Carvel Corp. and for Franchise Stores Realty Corp. with regards to the Lease, and compliance with obligations

31

therein, in an attempt to evade payment of rent and to cause dismissal of this action. Such misrepresentations to the Plaintiffs and District Court constitute abuse of process.

88.    Plaintiffs seek costs and all their compensatory damages against Defendants responsible for the wrongful abuse of process, and from Doe defendants unknown to Plaintiffs at this time.

### COUNTS 7 TO 19
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATION OF 18 *U.S.C.* §241, §242, §245, 28 *U.S.C.* §1343, 42 *U.S.C.* §1981, §1982, §1983, §1985, §1986, §1988 *U.S. Constitutional Amendments* I, V, IX, XIV

89.    Each of the allegations contained in paragraphs 1-88 is incorporated herein by reference.

90.    Defendants did unlawfully, wilfully, and knowingly conspire with each other and with Doe defendants unknown to Plaintiffs at this time but who were not employees or agents of Defendants, to deny Plaintiffs their guaranteed rights under the laws of the United States.

91.    Defendants and their third-party co-conspirators conspired to deprive, either directly or indirectly, Plaintiffs' rights under the United States Constitution, including Plaintiffs rights to life, liberty, and happiness free from fear, threats of financial ruin, and intimidation for assertion of guaranteed rights; rights to compensation for taking of their property; rights

32

to due process; rights to equal protection of the laws; rights to pursue an occupation, business or profession free from deprivation or undue interference; and rights guaranteed by the First, Fifth, Ninth and Fourteenth Amendments, as well as Plaintiffs' rights under 18 *U.S.C.* §241, §242, §245, 28 *U.S.C.* §1343, 42 *U.S.C.* §1981, §1982, §1983, §1985, §1986, §1988.

92.    Defendants acted in furtherance of the conspiracy as more fully set out above. This conspiracy was motivated by greed to fraudulent transfer the property of Agnes Carvel and her successors in interest, to harm Agnes as an elder person, to deprive Agnes' successors in interest of all benefit of income, and to deny legitimate claims any successful assertion by obstructing all financial resources required in the legal system. Such invidious discriminatory animus was behind the conspirators' action so as to judicially prevail in their wrongful intent, fraudulent acts, and material misrepresentations.

93.    As a direct result of Defendants' wrongful conduct, Plaintiffs suffered damages in the form of economic loss, including income losses, out-of-pocket losses, opportunity losses, and deprivation of Plaintiffs civil and Constitutional rights. Plaintiffs' also seek damages for anguish, emotional distress, professional fees, litigation costs, and all Lease-related expenses.

94.    Plaintiffs seek all their compensatory damages against Defendants and Doe defendants unknown to Plaintiffs at this time.

## COUNTS 20-23
## VIOLATIONS OF 18 U.S.C. §1961, (RICO); §1341; §1343; §2314 §2315

95.    Each of the allegations contained in paragraphs 1-94 is incorporated herein by reference.

96.    Plaintiffs assert that Defendants and Doe defendants engaged in a pattern that contains a sequence of events that all have the same and common purpose. Such purpose is one of egregiously deliberate, calculated and malicious, fraud and conspiracy, which is a "pattern of racketeering activity". Defendants did unlawfully, knowingly, and intentionally conduct and participate in the conduct and affairs of the enterprise.

97.    Defendants did unlawfully, wilfully, and knowingly conspire with each other and with Doe defendants unknown to Plaintiffs at this time. The goal of the conspiracy was to deprive Plaintiffs of money and property, and to obstruct, delay, and affect claims by Plaintiffs against Defendants and others through financial deprivation and hardship. Each defendant participated in the systematic effort to defraud Plaintiffs in creditor claim and estate administration due process in Delaware, New York, and other jurisdictions.

34

98.    Defendants were knowledgeable of the fact that their fraudulent transfer of rent income was a tortuous act under Delaware and New York state laws. Plaintiffs do not currently know the full extent of the pattern of racketeering activity, including mail and wire fraud.

99.    Plaintiffs contend that Defendants' actions violate 18 *U.S.C.* §1341, §2314 §2315 as the U.S. mail was used as an instrument of the initial fraud, conspiracy to commit fraud, and in the continuation of this fraud and transportation of stolen money across state lines.

100.    Defendants and one or more of the Doe defendants, unlawfully, wilfully, knowingly, and for the purpose of executing or attempting to execute a scheme and artifice to defraud Plaintiffs, and for obtaining money and property, did place and cause to be placed in post office authorized depositories for mail matter. Defendants did cause to be delivered by mail, according to the directions thereon, by the United States Postal Service, the documents containing a means to fraudulently transfer Plaintiffs rent income to co-conspirators. In furtherance of their scheme to defraud, Defendants used the U.S. mails to advance the misrepresentations of material facts of the fraudulent acts to Plaintiffs and to this District Court.

101.    In violation of 18 *U.S.C.* 1343, both telephone and fax were used in the fraud, conspiracy to commit fraud, and in the continuation of this

35

fraud, and misrepresentation of material facts to Plaintiffs and the District Court to thwart due process and Plaintiffs' property rights. On information and belief, wire transfers of funds may also have been used to further the conspiracy, and to transport stolen money across state lines.

102. One or more of the Defendants and Doe defendants, did unlawfully, wilfully, and knowingly, and for the purpose of executing or attempting to execute a scheme and artifice to defraud Plaintiffs, and for obtaining money and property, transmit or cause to be transmitted by means of wire communications in interstate commerce, a fraudulent check or other means of payment to third parties in lieu of Plaintiffs.

103. Defendants demonstrate bad faith intent to profit and to damage Plaintiffs by the misrepresentation of material facts. Defendants made their false representations for the purpose, and with the effect of attempting to deprive Plaintiffs of money and property by means of an artifice to defraud.

104. Defendants' forced Plaintiffs to incur the substantial legal expenses to enforce the terms of the Lease. Defendants employed baseless Motion to Dismiss proceeding commenced in bad faith, making substantive misrepresentations to the District Court, as part and parcel of the Defendants' unlawful and fraudulent scheme to damage and obtain money

36

and property from Plaintiffs by means of a pattern of racketeering activity including repeated acts of deliberate, premeditated fraud and harassment. Defendants' scheme and pattern of racketeering activity are open-ended and have persisted for more than one year.

105.   As a direct, proximate, and specifically intended consequence of Defendants' fraudulent scheme set forth above, Plaintiffs are injured in business and property. Defendants' fraud prevented Plaintiffs' business activities and financial opportunities. Defendants' fraudulent actions were intended to force, and have forced, Plaintiffs to refer the matter to court and incur substantial litigation and other expenses investigating and exposing Defendants' scheme for what it is.

106.   Plaintiffs allege further that as a proximate cause of Defendants' Pattern of Racketeering activities, in collusion with the Carvels' adversaries, contributed to Plaintiffs' permanent and irreparable emotional, spiritual and financial harm and damage, all of which was intended to leave Plaintiffs destitute, unable to defend Plaintiffs rights, unable to investigate crimes against Plaintiffs, unable to carry out the Carvels' legitimate benevolent intentions, and unable to carry on normal business activities without fear of predatory harassment with the intent to fraudulently transfer all Carvel assets to Agnes Carvel's victimizers.

107. Plaintiffs also claim such compensatory damages, plus interest, as may be verified and claimed by the persons and entities upon whose behalf Plaintiffs also complain in accordance with *Federal Rules of Civil Procedure*("FRCP") Rule 71, such as any and all interest accrued by debt to the Internal Revenue Service of the U. S., during the period of continuing pattern of racketeering activity, by virtue of Defendants' obstruction of Plaintiffs' ability to collect taxable rent income, and by intentional tax fraud to evade taxes payable as a result estate tax elections.

108. Defendants, and any additional persons (including attorneys or law firms) whose financial or other support of, or participation, in the conspiracy may hereafter be discovered, are liable to Plaintiffs, jointly and severally, for violating 18 *U.S.C.* §1962, 18 U.S.C. §1341, and 18 *U.S.C.* §1343.

109. Defendants each knowingly committed or conspired to commit, or agreed with the commission of, at least one act described above in violation of RICO, or aided and abetted the commission of one or more such acts and thereby agreed with the objectives of the other Defendants.

110. Plaintiffs are hereby entitled to recover from Defendants and Doe defendants, individually, jointly and severally, for threefold the

damages sustained, together with the costs of this suit, including reasonable professional fees and expert fees.

## DEMAND FOR JUDGMENT AND TRIAL BY JURY

111.    On the basis of all the foregoing, Plaintiffs demand judgment for the stated relief, in trial by jury.

## PLAINTIFFS' AVERMENT REGARDING RULE 11, FRCP

112.    Further extant evidence and argumentation, elucidating the pattern of racketeering activity, and information which will be acquired in the process of discovery, will establish the necessary preponderance of evidence as is required by the Court in accordance with the *FRCP*.

113.    In particular, with regard to Rule 11 of *FRCP*, Plaintiffs aver that all statements and allegations are true upon information, belief, and reasonable investigation, and further that this action is not brought with any purpose to harass or defame Defendants, and further that it is not of any nature that could be called frivolous.

114.    Plaintiffs have, in good faith, attempted to balance the necessary requirements of specificity and particularity, under Rule 9(f) of *FRCP* to establish sufficiency of this pleading, with the requirements of concision and directness under Rule 8(e) of *FRCP*, all in accordance with Rule 11 of *FRCP*.

## CONCLUSION

115.  Enforcement of the demand for payment of rental income owed Agnes Carvel and her successors in interest is not effected by the New York Agreement decision. The Agreement decision requires that Agnes have unrestricted disposal of any and all her income for the Agreement to be valid and for tax fraud to be avoided. Rent is income owed to Plaintiffs by Defendants.

116.  Carvel Corp. defaulted on the Lease before any other alleged changes took place. By Defendants withholding rent income from Plaintiffs, or paying income due Plaintiffs under the Lease to other parties, fraudulent conversion of property occurred, thereby defrauding Plaintiffs and taxing authorities.

117.  There exist questions of U.S. Constitutional law by Defendants' acts including (but not limited to) possible criminal intent, conspiracy to defraud, theft, and fraudulent conversion of income due Plaintiffs; transportation of stolen property of across state lines by mail or by wire; and denial to Agnes Carvel, her successors, and her fiduciary, fundamental, substantive and material rights to equal treatment, due process, and protection from violations of guaranteed rights.

40

118.   Upon information and belief, Defendants conspired, cooperated, assisted, aided or abetted with one or more of the named Defendants or Doe defendants in a pattern of racketeering by doing each of the acts described in paragraphs 1 through 114 of this Amended Complaint, and each of Defendants conspired, cooperated, assisted, aided or abetted one or more of the named Defendants or Doe defendants in doing such acts.

119.   Upon information and belief, each of the acts complained of above was done by the named Defendants and the Doe defendants wilfully, wantonly and maliciously and with the specific intent to injure Plaintiffs within the Lease contract relationship and otherwise.

120.   Upon information and belief, Defendants did each of the acts complained of above either wilfully, wantonly, maliciously, and with the specific intent to injure Plaintiffs, or with reckless disregard of their foreseeable consequences to Plaintiffs.

121.   As a result of the foregoing, Plaintiffs suffered extreme distress and substantial injury in their business, property and opportunities.

WHEREFORE, Plaintiffs demand judgment against all Defendants, jointly and severally, awarding Pamela Carvel on behalf of Plaintiffs:

a.   Payment of rent income in the sum of **$811,450.04** to Plaintiffs for specified rent and annual interest on the unpaid balance;

41

b.   Payment to Plaintiffs of all unpaid rent documented through discovery;

c.   Payment of Plaintiffs' opportunity losses, compensatory damages, statutory damages, punitive damages as provided by law and determined at trial;

d.   Award to Plaintiffs for costs, disbursements, expenses and attorneys' fees incurred since the inception of investigating and exposing Defendants' intentionally fraudulent scheme;

e.   All Plaintiffs' costs in this litigation, and as well, just compensation for the unnecessary work and effort that as been forced, under duress and adverse condition, upon Plaintiffs by Defendants' actions; Plaintiffs request special consideration from the court in a determination of professional fees in recognition of the work done, and cost of necessary tools required by Pamela Carvel, a fraud examiner, compelled to act as fiduciary for Plaintiffs *pro se*;

f.   Compensatory relief for direct and proximately caused damages to life, limb, well being and finances of Plaintiffs stemming from Defendants' conspiratorial actions, damages, irreparable effect and severe impairments, that prohibit Plaintiffs from productive endeavours;

g.   All interest accrued by debt to the Internal Revenue Service during the period of continuing pattern of racketeering activity, by virtue of

42

Defendants' acts aiding and abetting tax fraud and destruction of Plaintiffs' taxable rent income;

h.  Such compensatory damages, plus interest, as may be verified and claimed by the persons and entities upon whose behalf Plaintiffs also complain in accordance with *FRCP* Rule 71, such other and further relief as the court deems just and proper.

i.  Judgment that Defendants are liable to Plaintiffs, jointly and severally, for violations under RICO with the intention to defraud known and pending claims;

j.  Judgment that Defendants are liable to Plaintiffs, jointly and severally, for violations of Delaware and New York fraud and debtor laws;

k.  Threefold the compensatory damages determined by the trier of fact herein for damages pursuant to Counts 1-23 as set forth above;

l.  And finally, any further damages of whatever kind that the Court may deem suitable, just or appropriate to Plaintiffs, the Court, or any persons or entities upon whose behalf the Plaintiffs also complain.

Signed this 25 day of July 2007

Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax  1 954 524 1909

43

## CORRECTED FOR AMENDED COMPLAINT

### CERTIFICATE OF SERVICE

I, Pamela Carvel, appearing *pro se*, hereby certify that on July **31**, 2007, a true and correct copy and disk of the foregoing document was sent by overnight delivery to be filed with the Clerk of the Court which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Keller
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> 302 571 6600



> Thomas Spillman
> Smith, Gambrell & Russell, LLP
> Suite 3100
> Promenade 11
> 1230 Peachtree Street N.E.
> Atlanta, GA 30309-3592

Additionally, I hereby certify that on July **31**, 2007, copies of the foregoing document were served via first class, postage pre-paid, to the above parties.

> Pamela Carvel, appearing *pro se*
> 28 Old Brompton Road, Suite 158
> London SW7 3SS England
> US tel/fax fwd  1 954 524 1909