IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AGNES CARVEL ESTATE<br>by PAMELA CARVEL,<br><br>    Plaintiff,<br><br>v.<br><br>CARVEL CORP.,<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:  C.A. No. 07-237-JJF<br>:<br>:<br>:<br>:<br>:<br>: |

### CARVEL CORPORATION'S
### OPPOSITION TO AND MOTION TO STRIKE PLAINTIFF'S MOTION FOR
### SUMMARY JUDGMENT OR TO AMEND THE COMPLAINT

Defendant Carvel Corporation ("Carvel Corp.") hereby opposes and moves to strike the Motion for Summary Judgment or to Amend the Complaint (D.I. 9) ("Plaintiff's Motion") filed by Pamela Carvel on behalf of the Agnes Carvel Estate ("Pamela") and states:

### I.   INTRODUCTION

In response to Carvel Corp.'s Motion to Dismiss (*see* D.I. 4, 5), which demonstrated that in her Complaint for Payment of Rent (D.I. 1) ("Complaint"), Pamela has failed to state a cause of action against Carvel Corp., Plaintiff surprisingly has moved for summary judgment. Plaintiff has conducted no discovery and, instead, has based her motion upon inadmissible unauthenticated documents. The adjudication in a prior lawsuit and facts determined therein show that Pamela's claim is barred by collateral estoppel and/or *res judicata*. Moreover, this Court lacks subject matter jurisdiction to hear Pamela's claim based upon the *Rooker-Feldman* doctrine. Finally, Pamela's proposed amendment of the Complaint would not remedy the Complaint's deficiencies. Instead, an amended Complaint would simply add as a defendant a

corporation over which this Court has no personal jurisdiction. Accordingly, this Court should strike or deny Plaintiff's Motion and dismiss the Complaint with prejudice.

## II.    UNDISPUTED FACTS

The relevant facts underlying this case were established in a proceeding that took place in the state courts of New York. On February 13, 1988, Thomas and Agnes Carvel executed numerous estate planning documents, including a Reciprocal Agreement and mirror image wills that named The Thomas and Agnes Carvel Foundation ("The Foundation") as "the ultimate beneficiary of their respective estates." *See In re Carvel Foundation*, 2002 WL 32872391, *2 (N.Y. Sur. April 1, 2002). Thomas died in 1990. The Reciprocal Agreement precluded Agnes, once Thomas had died, from making certain gratuitous transfers of property or from changing the provisions of her 1988 mirror image will. In 1994, Agnes transferred the deeds to four properties, including the property at issue, to an entity named "Realities."[1] *Id.* at *3. Realities then conveyed the properties, in 1998, to a British Virgin Islands Corporation named Lartrym

---

[1] Although in the Complaint, Pamela claims that in 1994 the property was promised to Realties pursuant to the Delaware Business Trust Act of which Agnes was the beneficial owner, *see* Complaint, ¶ 10, the Surrogate's Court expressly found:

> Pamela claimed that the grantee of the four properties was not a New York trust, but a different[] entity known as Realities, a Delaware Business Trust which had been created in August 1994 ("Realities DBT") [Tr.1273,1285-86]. However, the Certificate of Trust for Realities DBT, filed with the Delaware Secretary of State, is dated May 1, 1995, and its Application for Federal Employer Identification, signed by "Pamela Carvel, Pres.", lists the "[d]ate business acquired" as May 2, 1995. The Certificate of Trust names Chain Locations of America, Inc., a Delaware Corporation ("Chain Delaware"), as the corporate trustee; however, Chain Delaware was not incorporated until October 11, 1994-more than one month after Agnes transferred the properties to Realities.
>
> Pamela testified that she prepared the trust instrument for Realities DBT. However, she was not able to produce a copy, claiming it had been stolen. She also testified that she does not know who the trustees or Realities DBT were, does not know whether she or Agnes were beneficiaries, and does not know if the instrument names a remainderman [Tr.1314-18, 1375; 1319-20; 1321-22; 1375].

*Id.* at *4. In other words, Realities Delaware Business Trust was at best Pamela Carvel's alter ego.

Services, Inc. Agnes died on August 4, 1998 a resident and domiciliary of the United Kingdom. *Id.* at *4.

On April 1, 2002, the Surrogate's Court for Westchester County, New York, held that the Reciprocal Agreement was a valid agreement that was enforceable by the Foundation as third party beneficiary. The Surrogate's Court specifically held that Agnes' conveyance of the properties to Realities breached the Reciprocal Agreement, voided the deeds from Realities to Lartrym, and awarded legal and equitable title to the properties to The Foundation. *Id.* at *2, *9, *10. The Surrogate's Court explained: "The basic estate plan was to provide income to the surviving spouse *for life*, provide the remainder to the Foundation, and obtain the benefit of the marital deduction." *Id.* at *5 (emphasis added). The Surrogate's Court also found that a new will that Agnes Carvel signed in 1995, which named a residuary beneficiary different from the Foundation, "clearly constitutes a total breach of the Reciprocal Agreement" and ordered the fiduciaries of Agnes' estate to perform the Reciprocal Agreement. *Id.* at *4, *9.

Finally, the Surrogate's Court ordered:

> As the recipient of Agnes' residuary estate, the Court grants the Foundation's application for transfer of the Realities properties directly to it. In doing so, *the Court rejects the respondents' contention that these properties may be required to pay the debts and administration expenses of Agnes' estate.* Aside from the naked assertion that Agnes' obligation may exceed her assets, *neither Ross [Limited Ancillary Administrator of the estate of Agnes Carvel] nor Pamela have provided any information as to the identify of Agnes' creditors or the amounts of their claims, despite the fact that nearly four years have elapsed since Agnes' death. Moreover, any claim by Ross or Pamela that these properties may be needed to pay debts or administration expenses of Agnes' estate is clearly undercut by their efforts to oppose the Foundation's attempts to recover these assets.* In addition, there has been no showing by Ross or Pamela that the assets of Agnes' 1991 Trust will be insufficient to pay the obligations of Agnes' estate.

*Id.* at *10 (emphasis added).

On December 29, 2003, the Supreme Court, Appellate Division, Second Department, New York affirmed that ruling. *See In re Carvel*, 2 A.D.3d 847, 769 N.Y.S.2d 402 (2003). Thereafter, Motions for Leave to Appeal were denied by the New York Court of Appeals. *See In re Carvel*, 817 N.E.2d 824 (N.Y. 2004).

On June 11, 2007, the High Court of Justice, Chancery Division in London removed Pamela Carvel as the personal representative of Agnes' estate, finding that Pamela Carvel was "in a position of irreconcilable conflict with the principal beneficiaries of Agnes' estate and her hostility for the Foundation renders it quite impossible for her to fulfill her fiduciary duties."[2] *See* Approved Judgment, Exhibit A to Ashton Affidavit, ¶¶ 54-55.

### III. ARGUMENT

#### A. Plaintiff's Motion Should Be Stricken

"Unauthenticated documents may not be considered by a court in deciding a summary judgment motion." *Agrizap, Inc. v. Woodstream Corp.*, 450 F. Supp.2d 562, 569 (E.D. Pa. 2006) (citing 11 James Wm. Moore, et al., *Moore's Federal Practice*, § 56.14[2][c] (3d ed. 2005)); *see also Hernandez v. Breceda*, 2007 WL 1280726 (9th Cir. May 1, 2007) ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment.") (citation omitted); *Belofsky v. General Elec. Co.*, 1 F. Supp.2d 504, 507 (D.V.I. 1998) ("Neither the moving party or opposing party may rely on evidence that would be inadmissible at trial to either support or oppose a motion for summary judgment.").

Pamela's own statements demonstrate why she is not entitled to summary judgment, and why Plaintiff's Motion should be stricken. In the memorandum in support of Plaintiff's Motion (D.I. 10) ("Plaintiff's Memorandum"), Pamela states:

---

[2] Pamela Carvel's numerous misdeeds, including making false statements under oath, violating court orders, and wrongfully attempting to receive nearly $16 million for her personal use are detailed in the High Court's opinion.

> Plaintiff herein relies on *prima facie* documentary evidence, of Defendants' obligation to pay rent and Defendants refusal, as supplied in the Appendix with the original complaint (Al-A87), Appendix #2 submitted with Plaintiffs memorandum in opposition to Defendant's motion to dismiss (A88-A97), on Defendant's memorandum to the motion to dismiss, and Appendix #3 to motion for summary judgment, here attached (A99-A118).

Plaintiff's Memorandum, ¶ 6.

In short, Plaintiff's Motion is based wholly upon unauthenticated documents, many of which contain inadmissible hearsay. Accordingly, the motion should be stricken in its entirety.

### B.  Pamela's Claim Is Barred by the Decision in the Prior Action

Because the Surrogate's Court for Westchester County, New York held that the property at issue belongs to The Foundation, ***not Agnes' estate***, Pamela is barred from pursuing this action. Pursuant to 28 U.S.C. § 1738, in determining the preclusive effect of the New York judgment, this Court is to apply New York's law of *res judicata* and collateral estoppel. *Walzer v. Muriel, Siebert & Co., Inc.*, Nos. 05-3680, 05-4698, 05-5215, 05-5490, 2007 WL 990265 (3d Cir. April 4, 2007); *see also Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[Section 1738 directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). With regard to New York collateral estoppel law, the Third Circuit has explained.

> [A]n issue may not be relitigated if the identical issue was necessarily decided in a previous proceeding, provided that the party against whom collateral estoppel is being asserted had a full and fair opportunity to litigate the issue in the prior action . . . As to these two elements-the identical issue and a full and fair opportunity to litigate-[t]he party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues in the present litigation and the prior determination, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action . . . In addition to whether the issues are identical and whether a full and fair opportunity to litigate is afforded, embodied in New York's collateral estoppel rule is the concept of finality of judgments, *i.e.*, that the judgment in the prior proceeding, and on which the claim to collateral estoppel is based, is final.

*Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132, 141 (3d Cir. 2001) (citations and internal marks omitted).

In this case, the Surrogate's Court for Westchester County expressly decided that the Reciprocal Agreement governed the disposal of the property at issue upon the deaths of Thomas and Agnes Carvel. The Court expressly decided that The Foundation owns the properties, *i.e.*, that Agnes' estate does not. Pamela bases her claim for damages based upon a will executed in London. Complaint, ¶ 22, 29. The Surrogate's Court, however, expressly found that said will "clearly constitutes a total breach of the Reciprocal Agreement." *In re Carvel Foundation*, 2002 WL 32872391 at *4. Accordingly, the Surrogate's Court ordered the fiduciaries of Agnes Carvel's estate to perform the Reciprocal Agreement. *Id.* at *9. In short, the precise issues of who owns the property and whether the will relied upon by Pamela is valid already have been decided against Pamela.

Although Agnes died in 1998, Pamela is seeking rent from 2001 to 2007, *i.e.*, for a time period *after* Agnes' death. *See* Complaint, ¶ 22. Contrary to the decision of the Surrogate's Court, Pamela argues that "the New York decision require[es] Agnes' unrestricted disposal of any and all income . . . ." Plaintiff's Memorandum, ¶ 20. The Surrogate's Court actually explained: "The basic estate plan was to provide income to the surviving spouse *for life, provide the remainder to the Foundation*, and obtain the benefit of the marital deduction." *Id.* at *5 (emphasis added). In short, the Surrogate's Court expressly found that Agnes was entitled to income from the property, but only during her life. Thereafter, any income belonged to The Foundation.

Ignoring the prior ruling, Pamela also claims: "Delaware obligations to creditors and contracts take priority of payment from Agnes' estate before any remainder amount may be

determined . . . ." Complaint, ¶ 26. The Surrogate's Court, however already determined that there was no evidence that there were any creditors of Agnes' estate, and that, even if there were creditors, "there ha[d] been no showing by Ross or Pamela that the assets of Agnes' 1991 Trust will be insufficient to pay the obligations of Agnes' estate." *In re Carvel Foundation*, 2002 WL 32872391 at *10. Accordingly, again the Surrogate's Court has determined that Pamela is not entitled to the money that she now seeks.

The fact that Pamela Carvel and the estate of Agnes Carvel were both parties to the Surrogate's Court action shows that Pamela had a full and fair opportunity to litigate these issues. The opinion in *In re Carvel Foundation*, 2002 WL 32872391 demonstrates that Pamela was represented by counsel, that she was allowed to put on her case, and that the New York trial court found her testimony not credible and her legal theories wanting. *In re Carvel Foundation*, 2002 WL 32872391. Indeed, Leonard Ross, as Limited Ancillary Administrator of the estate of Agnes Carvel and Pamela Carvel appealed the trial court decision and lost. *See In re Carvel*, 2 A.D.3d 847, 769 N.Y.S.2d 402. The fact that the decision is final is beyond dispute. *See In re Carvel*, 817 N.E.2d 824 (N.Y. 2004). Accordingly, Pamela's claim in this lawsuit is barred by the doctrines of collateral estoppel and/or *res judicata*.

### C. This Court Lacks Subject Matter Jurisdiction

Furthermore, Pamela's claims are barred by the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine bars federal jurisdiction under two circumstances: if the claim was "actually litigated" in state court or if the claim is "inextricably intertwined" with the state adjudication." *ITT Corp. v. Intelnet Intern.*, 366 F.3d 205, 210 (3d Cir. 2004); *see also Golden ex rel. Golden v. Golden*, 382 F.3d 348, 358 n.10 (3d Cir. 2004) ("*Rooker-Feldman* doctrine[] prohibits federal

courts from considering any claim 'inextricably intertwined' with a state court adjudication."). In *ITT Corp.*, the Third Circuit explained:

> State and federal claims are inextricably intertwined (1) when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or (2) when the federal court must take action that would render the state court's judgment ineffectual .... If the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling, then the issues are inextricably intertwined and the district court has no subject matter jurisdiction to hear the suit.

*ITT Corp.*, 382 F.3d at 211 (citations and internal marks omitted).

Here, because the issue of who owns the property at issue was actually litigated, this Court lacks subject matter jurisdiction to hear Pamela's claim. Accordingly, not only is Pamela not entitled to summary judgment, the Complaint should be dismissed.

### D. Amendment of the Complaint Would Be Futile

Apparently realizing that she is not truly entitled to summary judgment, Pamela also has asked that the Court allow her to amend her Complaint. Because the proposed amendment of the Complaint would not change the fact that Pamela's claim is barred by the prior adjudication and this Court lacks subject matter jurisdiction, amendment would be futile. *Balthazar v. Atlantic City Medical Center*, 279 F. Supp.2d 574 (D. N.J. 2003) (denying motion to amend complaint as futile because doctrine of *res judicata* and *Rooker-Feldman* doctrine applied).

Moreover, in the proposed amended Complaint, Pamela seeks to add Franchise Stores Realty Corp. as a defendant in an effort to cure at least one of her deficiencies. Because Pamela is suing based upon the lease for real property located in New York and Franchise Stores Realty Corp. is a New York corporation (*see* proposed amended Complaint), this Court has no personal jurisdiction over Franchise Stores Realty Corp. Accordingly, the amended Complaint would be subject to dismissal, and amendment is futile.

## V. CONCLUSION

For all the reasons stated above, this Court should strike Plaintiff's Motion for Summary Judgment or to Amend the Complaint (D.I. 9) and dismiss the Complaint (D.I. 1) with prejudice.

DATED: August 16, 2007

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen L. Pascale*

Karen L. Pascale (No. 2903) [kpascale@ycst.com]
Karen E. Keller (No. 4489) [kkeller@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6554

OF COUNSEL:

Anthony P. Ashton (admitted *pro hac vice*)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-3000

*Attorneys for Defendant Carvel Corp.*

## CERTIFICATE OF SERVICE

I, Karen L. Pascale, Esquire, hereby certify that on August 16, 2007, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

>Pamela Carvel
>28 Old Brompton Road, Suite 158
>London SW7 3SS England

Additionally, I hereby certify that on August 16, 2007, copies of the foregoing document were served via first class mail, postage pre-paid to the above party.

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>*/s/ Karen L. Pascale*
>
>Karen L. Pascale (No. 2903)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, DE 19801
>(302) 571-6554
>kpascale@ycst.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AGNES CARVEL ESTATE<br>by PAMELA CARVEL,<br><br>    Plaintiff,<br><br>v.<br><br>CARVEL CORP.,<br><br>    Defendant. | :<br>:<br>:<br>:<br>:   C.A. No. 07-237-JJF<br>:<br>:<br>:<br>:<br>: |

**ORDER**

Having considered the Plaintiff's Motion for Summary Judgment or to Amend the Complaint (D.I. 9) and Defendant's Opposition and Motion to Strike in response thereto (D.I. ___), it is this ___ day of _____, 2007, **ORDERED** that such Motion is hereby **[STRICKEN] [DENIED]**;

It is further **ORDERED** that the Complaint for Payment of Rent filed by Pamela Carvel on behalf of the Agnes Carvel Estate is hereby **DISMISSED, WITH PREJUDICE.**

 

_____
UNITED STATES DISTRICT JUDGE