IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
SEP -5 2007
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Agnes Carvel Estate, London, England )
   by Pamela Carvel, Executrix, )
      Plaintiff )
v. ) Case No 07CIV000237-JJF
    )
Carvel Corp. )
   a Delaware corporation )
      Defendant. )
    )

**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE**

Plaintiffs Agnes Carvel and her successors in interest, by Pamela Carvel as fiduciary, Delaware Ancillary Administrator for the Agnes Carvel Estate ("Estate") of London, England, and Agnes Carvel's executor and personal representative for the time in question (through April 30, 2007) (collectively referred to as "Plaintiffs"), with first hand knowledge of the facts and on information and belief as to the actions of others, hereby state:

1. Plaintiffs oppose Defendant Carvel Corporation's Motion to Strike Plaintiffs' Motion for Summary Judgment, or the alternative Motion for leave to file an Amended Complaint. Pursuant to *Federal Rules of Civil Procedure* ("*FRCP*") Rule 12 (f) the court may order stricken from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Nothing in Plaintiffs' Complaint or

1

Amended Complaint falls into any of these categories; nor does Defendant assert any of these reasons for striking the pleadings in their entirety.

2. Defendant seeks to strike Plaintiffs' pleadings allegedly because Plaintiffs' exhibits do not contain admissible evidence. Plaintiffs assert that all exhibits are relevant, public records, and business records, that Carvel Corp. does not deny it created or produced, and that the exhibits comply with *Federal Rules of Evidence* as demonstrated below.

3. Defendant seeks to strike Plaintiffs' pleading allegedly for failure to state a cause of action against Carvel Corp. Plaintiffs' Complaint asserted at page 1, 4 and 7, and in Motion for Summary Judgment, that Carvel Corp. owns 100% of Franchise Stores Realty Corp. and directly controlled the failure to comply with the terms of the Lease payable to Agnes Carvel and her successors in interest. Plaintiffs evidenced this assertion by exhibits produced or created by Carvel Corp.

4. Plaintiffs further assert that the elaborate manner in which Carvel Corp. seeks to excuse non-compliance by Franchise Stores Realty Corp. lifts the intended "corporate veil" by demonstrating the level of control Carvel Corp. retains over this matter, and therefore ultimate liability.

5. Pamela Carvel, appearing *pro se* on behalf of Plaintiffs, asserts that Carvel Corp. sufficiently demonstrated its control over Franchise Stores

Realty Corp. and thereby its liability under the Lease, despite failing to provide any answer to the initial Complaint. The omissions, actions and statements of Carvel Corp. are therefore sufficient to permit Summary Judgment for Lease enforcement for payment of rent, or alternatively, to allow discovery pursuant to the additional causes of action enumerated in the Amended Complaint.

6.  Carvel Corp. failed to provide a Disclosure Statement pursuant *FRCP* Rule 7.1 "with its first appearance". The Disclosure Statement showing Focus Brands Inc. owns 100% of Carvel Corp. was provided only after Plaintiffs' supplied documentary evidence demonstrating that the alter-egos of Focus Brands Inc., Carvel Corp., and Franchise Stores Realty Corp., all share the same addresses, and acted interchangeably over the Lease obligations in such a manner as to demonstrate that Lease liabilities cannot be concealed behind a corporate veil, or several corporate veils.

7.  The Amended Complaint requires similar Disclosure Statement as to the ownership of Franchise Stores Realty Corp, and discovery (as in the original complaint) that will further substantiate Plaintiffs' assertions that Carvel Corp. wholly controlled the Lease and Franchise Stores Realty Corp.; and that Carvel Corp. continues to control franchise location leases through Franchise Stores Realty Corp. within the "Carvel" licensing agreements.

3

8. Pursuant to the *FRCP* Rule 7, the pleadings allowed "shall be a complaint and an answer ... No other pleading shall be allowed ..." Carvel Corp. failed to submit an answer to Plaintiffs' initial Complaint although Carvel Corp. proceeds to argue though Motions (*FRCP* Rule 12(b)), on behalf of Franchise Stores Realty Corp., substantive Lease issues in Plaintiffs' Complaint.

9. Carvel Corp. did not deny (*FRCP* Rule 8) the substance of Plaintiffs' claim by which Carvel Corp. is named Defendant -- that Carvel Corp. was the controlling entity over non-payment of the Lease and is 100% owner of Franchise Stores Realty Corp. This basic, material, substantive, and essential fact making Carvel Corp. the <u>real</u> Defendant was not denied in any Carvel Corp.'s motions; however, it appears that by use of motions Defendant seeks to by-passed the "effect of failure to deny" whereby Plaintiffs' averments "are admitted when not denied in the responsive pleading" (*FRCP* Rule 8(d)).

10. Carvel Corp. proceeds to argued the substantive issues for non-compliance with the Lease on behalf of Franchise Stores Realty Corp., albeit disguised in motions (estoppel, jurisdiction, venue, etc.; *FRCP* Rule 12(b)), but nonetheless proving complete control, and thereby the liability, of Carvel Corp. that is asserted by Plaintiffs. Carvel Corp. does not deny control,

4

knowledge or information of the Lease sufficient to respond. Carvel Corp. astonishingly demonstrates the exact opposite – that Carvel Corp. controls and asserts knowledge on behalf of Franchise Stores Realty Corp. far beyond the scope of the Lease and Complaint.

**PLAINTIFFS' IRREFUTABLE DOCUMENTARY EVIDENCE**

11.   Plaintiffs demonstrated by relevant public records created or produced by Focus Brands Inc., Carvel Corp., and Franchise Stores Realty Corp., and by business records obtained from Carvel Corp. in the course of the Lease, that Carvel Corp. (not Franchise Stores Realty Corp.) exercised full control over compliance with the terms of the Lease. Carvel Corp. never denied ownership or control (*FRCP* Rule 8(d)).

12.   If Carvel Corp. seeks to evade the elementary issue, that it was the controlling entity over the Lease and controlled compliance by Franchise Stores Realty Corp., by prohibiting Plaintiffs documentary evidence then no valid determination on Defendant's motions could be made prior to the required Answer with admissions and denials by Carvel Corp., and discovery if no documentary evidence is produced by Carvel Corp. to refute Plaintiffs evidence.

13.   *Federal Rules of Evidence* Rule 104 provides, "Preliminary questions concerning the qualification of ... the admissibility of evidence

shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges"; "(b) When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

14. *Federal Rules of Evidence* Rule 301 states, "In all civil actions ... a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption..." Carvel Corp. did not refute or deny Plaintiffs' relevant public records and business documents that originated from Carvel Corp. Carvel Corp. provided no evidence to rebut those documents.

15. All Plaintiffs' evidence are relevant pursuant to *Federal Rules of Evidence* Rule 401 that states "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

## DEFENDANT'S "FACTS" ARE WHOLLY DISPUTED

16. Carvel Corp.'s Motion to Strike proffers untrue statements to further its position, whether by fabrication by Corp. Corp. and its co-

conspirators, or by deliberate misrepresentation of the whole facts at issue made by those co-conspirators to the courts. Plaintiffs' deny all these falsehoods, included but not limited to: footnote #2, page 4; the alleged "facts" concerning Realities; the alleged "facts" concerning Agnes' Will and U.K. proceedings; and the alleged interpretation of the default decision in the "Agreement" contract trial.

17. It must be noted that Carvel Corp. appears to assert the "Agreement" decision as if that decision can exist in isolation from, or in contradiction to, state statutes governing substantive material rights under the Constitution, tax fraud, contracts, creditors, priority of claims, abatement of interests, default decisions, beneficiaries, executors, administrators, and the expressed or implied intentions of a testator, grantor or charitable benefactor.

18. Carvel Corp.'s recitations of "undisputed facts" are wholly disputed for truthfulness, exactness, correctness, and erroneous conclusions. This misdirection by false statements is not part of the substance of Lease and this Complaint, but validate Plaintiffs' Amended Complaint assertions of conspiracy to defraud.

19. Carvel Corp. demonstrates the conspiracy asserted in Plaintiffs' Amended Complaint by seeking to use the unrelated United Kingdom

proceeding to discredit Pamela Carvel. *Federal Rules of Evidence* Rule 403 provides that "although relevant, evidence may be <u>excluded</u> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, ... or by considerations of undue delay, waste of time". Carvel Corp. was neither a party to any U.K. proceedings, nor was the subject matter of the Lease contained in the proceeding attached as a Carvel Corp. exhibit. Appeal of the High Court proceeding is being sought (*pro se*) for <u>errors of fact</u> and law.

20.   It is almost impossible for the Carvels to succeed as *pro se* litigants appearing without multi-million dollar funds to pay competent legal professionals with equal vigor as those lawyers paid multi-millions by the thieves who stole the Carvels' money. Every million spent in litigation is disbursed out of the Carvels' assets, even when spent by the Carvels' adverse litigants – assets withheld from the Carvels.

21.   Without being exhaustive over issues not part of this Complaint, Pamela Carvel put the foundation usurpers' involvement in illegal activities and their stated, written, conspiracy to defraud the Carvels before several law enforcement agencies, resulting thus far in three successful convictions and prison sentences for the felons, and the ouster of two foundation fraudsters. The successful end to these prosecutions was

always preceded by denial of the Carvels' right to equal indemnification as that given to other fiduciaries, or removal of Agnes Carvel and Pamela Carvel as fiduciaries, along with personal threats, intimidation, and extortion tactics denying Agnes Carvel the funds needed to live and pay for specialize medical treatment. The culprits' used these tactics to deny the Carvels' access to relevant evidence of continuing criminal activities such as money laundering, tax fraud, forgery, conversion, embezzlement, bribery of judges, etc. The Carvels' assertions irrefutably – the only ones to profit from Carvel money are strangers and their lawyers.

22.     Suffice it to say that despite the Carvels' almost impossible task in collecting evidence, these co-conspirators' continuing criminal activities remain under investigation, and are still before the United Kingdom Parliament, National Audit Department, and Inland Revenue Criminal Investigation Division, in addition to the United States F.B.I., Internal Revenue Service Criminal Investigation, New York Governor Spitzer, New York Attorney General Cuomo, Office of Court Administration, and Commission of Investigation.

23.     These particular continuing conspiracy matters are not yet before Delaware District Court in this Complaint; however, Carvel Corp. appears to be confirming its involvement with co-conspirators by the

intentional breach of the Lease, which validates the basis for Plaintiffs' Amended Complaint. While Carvel Corp. went to great lengths to assert on behalf of Franchise Stores Realty Corp. that the Lease is unenforceable by Plaintiffs, at no time did Carvel Corp. assert the elementary fact that the full amount of all unpaid sums due on under the Lease were paid to anyone at all. Carvel Corp. only infers payments to others.

### ROOKER-FELDMAN IS INAPPLICABLE

24. Carvel Corp. attempts to twist the Plaintiffs' positions in an attempt to invoke the *"Rooker-Feldman Doctrine"*. There is <u>not</u> a parallel proceeding in any state court. Plaintiffs and Defendant <u>never</u> litigated Lease enforcement in any state court. The Lease enforcement is <u>not</u> now and was <u>never</u> before any state court. Carvel Corp. or Franchise Stores Realty Corp. was <u>not</u> a party to the "Agreement" proceeding. Lease enforcement was <u>never</u> part of the Agreement proceeding.

25. It is an abuse of discretion to dismiss a declaratory judgment action in favor of a state court proceeding that does not exist (*Michigan Tech Fund v. Century Nat'l Bank of Broward*, 680 F.2d 736, 742 (11th Cir. 1982) (reversing discretionary dismissal of declaratory judgment complaint where there was "no pending state proceeding in which the issues in this case will necessarily be resolved")).

26. Lease enforcement is <u>not</u> currently before any court other than Delaware District Court. The Tenth and Eleventh Circuits have stated that dismissing a declaratory judgment action where there is no pending parallel state proceeding is an abuse of discretion (*Federal Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235 (11th Cir. 2000)). In *ARW Exploration Corp. v. Aguirre* (947 F.2d 450 (10th Cir. 1991)), the Tenth Circuit held that a district court abused its discretion when it dismissed a declaratory judgment action after a related state court proceeding had been dismissed. In that case the state court had not addressed the issues raised in the federal declaratory judgment action and those claims could no longer be adjudicated in state court because the state court proceeding had been dismissed.

27. Carvel Corp. wrongly states that Plaintiffs' controversy is over the ownership of real estate. It is <u>not</u>; although issues of ownership are preserved and not waived by the issues limited in this case. As noted in Plaintiffs Memorandum in support of motion for summary judgment or to amend Complaint, at #18, the "Agreement" contract decision (A-8) transferred real estate in "trust" and subject to <u>return of the assets</u> pursuant to Surrogate's Court Procedure Act 2215(3).

28. Plaintiffs DO NOT seek District Court to set aside the "Agreement" contract decision (but do not waive objections, as previously

11

asserted in Complaint at #19). Much to the contrary, Plaintiffs <u>demand</u> compliance with the "Agreement" contract decision (see Complaint at #21) for rent before and after the promised assignment of rent income in 1994, if Carvel Corp. continued to assert non-compliance on based on the default "Agreement" decision. Plaintiffs assert fraud exists if Carvel Corp. alleges the "Agreement" decision permits non-compliance with the Lease and denies income to Agnes Carvel and her successors in interest in Delaware (Complaint at #3, #4).

29.    Carvel Corp. does not deny or refute that it intervened to obstruct rent payments by Franchise Stores Realty Corp. to Agnes Carvel and her successors in interest <u>years</u> before any proceeding was commenced in New York; <u>years</u> before any decision was rendered in New York; and <u>years</u> before any alteration in title of the real estate.

30.    Carvel Corp. misstates the Plaintiffs demand for payments of rent as being only since 2001 when, in fact, the Complaint includes demand for discovery to determine <u>all sums</u> attributable as rent under the Lease for the full term (Complaint page 13). Carvel Corp. still does not explain for what reason it delayed and refused to pay full rent due Agnes Carvel and her successors in interest since 1991.

31. The Lease and the promised right to income under the Lease, assigned in 1994 <u>before</u> Agnes died, were <u>never</u> part of the decision rendered in Westchester. While Plaintiffs' assert a default decision in New York is not enforceable in Delaware, an assignment of income by Agnes Carvel in her lifetime is specifically contemplated by the decision stating, "the Agreement placed no restriction on the disposition of income and did not prevent either Thomas or Agnes from gifting <u>or otherwise disposing of any or all of their income</u> [Tr.630]."(emphasis added) (Complaint at #21).

32. The obstruction of the payment of such income to Agnes Carvel, or as directed by Agnes Carvel in her lifetime pursuant to Delaware statutes, demonstrates a long-standing intention to defraud the Carvels. Carvel Corp. by its own submissions demonstrates its complicity in such potentially criminal enterprise.

## DELAWARE DISTRICT COURT JURISDICTION

33. Agnes Carvel's English estate and its Delaware administrator are deemed foreign citizens. Pursuant to 28 U.S.C. 1391(d) "aliens" can sue in any jurisdiction.

34. In Delaware, the exercise of personal jurisdiction over an individual party need not be solely premised on the acts in Delaware of that individual party. Rather, jurisdiction over that individual party may be

13

appropriate based on the actions of other defendants involved in a civil conspiracy and when there is clear jurisdiction over those other parties. The conspiracy theory was first clarified as a basis for personal jurisdiction in Delaware by the case of *Instituto Bancario Italiano SpA v. Hunter Engineering Company. Inc.*, (449 A.2d 210 (Del. 1982)).

35. Carvel Corp. argued for Franchise Stores Realty Corp., by asserting lack of personal jurisdiction. This is another act demonstrating the undenied control that Carvel Corp. asserts over its wholly owned subsidiary.

36. On information and belief, based on internet-available documents, Franchise Stores Realty Corp. is included in all Carvel Corp. franchise agreements.

37. On information and belief, Carvel Corp. executed franchise agreements including Franchise Stores Realty Corp. in Delaware and conducts business through Delaware. Plaintiffs assert that discovery requested in the Complaint or Amended Complaint will confirm the information obtained by investigations thus far.

38. In *Burger King Corp. v. Rudzewicz* (471 U.S. 462 (1985)):

" "the facts of each case must [always] be weighed" in determining whether personal jurisdiction would comport with "fair play and substantial justice." *Kulko v. California Superior Court*, 436 U.S., at 92.

> Moreover, the parties' actual course of dealing repeatedly confirmed that decision making authority was vested in the ... headquarters [471 U.S. 462, 481]" Thus [471 U.S. 462, 477] courts in "appropriate case[s]" may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S., at 292.
>
> These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. See, e. g., *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 780 (1984); *Calder v. Jones*, 465 U.S. 783, 788-789 (1984); *McGee v. International Life Insurance Co.*, 355 U.S. 229, 223-224 (1957)."

39.  The continuing criminal enterprise asserted by Plaintiffs was and is intended to harm Agnes Carvel, and her successors in interest, in Delaware and other non-New York jurisdictions, who are not subject to New York jurisdiction, and against whom the "Agreement" decision is alleged by default.

40.  Defendant's reasoning behind seeking to dismiss the issue from Delaware could only be the ideas that: 1) Pamela Carvel as foreign fiduciary would be denied legal standing in New York; 2) the burden on the Plaintiffs (appearing *pro se* for lack of funds) for recommencing this action in New York might be so burdensome as to create an advantage for the Defendants; or 3) a New York court closer to the influence and money of the potential

co-conspirators would be more "friendly", for some undisclosed reasons, to the Defendants.

41. The District Court in Delaware is part of an interstate judicial system and the interest in remedy by applying the laws of the Federal and State governments is not beyond the ability or jurisdiction of the Delaware District Court. Delaware District Court has a shared interest of involved states in furthering public policy and upholding the Constitution and laws of the United States.

42. Delaware has jurisdiction over the shared interest of Plaintiffs, other State governments, and the Federal government, to prohibit criminal enterprises from defrauding the People through tax fraud, and other RICO activities.

43. Plaintiffs assert Delaware jurisdiction over Carvel Corp. and/or Franchise Stores Realty Corp. as Defendant because:

(1) a conspiracy to defraud [or other unlawful act] existed;

(2) Defendant was a member of that conspiracy;

(3) a substantial act or substantial effect in furtherance of the conspiracy occurred in Delaware;

(4) Defendant knew or had reason to know that acts outside Delaware would have an effect in Delaware; and

(5) the act in, or effect on, Delaware Plaintiffs was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

WHEREFORE, Plaintiffs request the Court

1)     reject Defendants Motions to Dismiss and Strike;

2)     grant Plaintiffs' Motion for Summary Judgment; or

3)     grant, alternatively, Plaintiffs' Motion for leave to file an Amended Complaint;

4)     other such relief to Plaintiffs as Court deems applicable.

August 31, 2007            Respectfully submitted,

*[signature]*

Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax fwd 1 954 524 1909

## CERTIFICATE OF SERVICE

I, Pamela Carvel, appearing *pro se*, hereby certify that on September 4, 2007, a true and correct copy of the foregoing document was sent by overnight delivery to be filed with the Clerk of the Court which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Keller
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> 302 571 6600
>
> Thomas Spillman
> Smith, Gambrell & Russell, LLP
> Suite 3100
> Promenade 11
> 1230 Peachtree Street N.E.
> Atlanta, GA 30309-3592

Additionally, I hereby certify that on September 4, 2007, copies of the foregoing document were served via first class, postage pre-paid, to the above parties.

_____
Pamela Carvel, appearing *pro se*
28 Old Brompton Road, Suite 158
London SW7 3SS England
US tel/fax fwd  1 954 524 1909